**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CLOVER COFFIE, ELIJAH SMITH, and
SHANTE LEGRAND, each individually and on
behalf of all others similarly situated,                    Case No. 9:19-cv-80730-RS-MM

       Plaintiffs,

v.

FLORIDA CRYSTALS CORPORATION et. al.,

       Defendants.

_____/

**DEFENDANTS FLORIDA CRYSTALS CORPORATION, OSCEOLA FARMS CO.,
OKEELANTA CORPORATION, AND TRUCANE SUGAR CORPORATION'S
MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)[1]**

_____

[1] In accordance with the Court's request, Defendants hereby join in Defendant U.S. Sugar Corporation's arguments that Plaintiffs lack Article III standing (Section I) and that Florida's Right to Farm Act bars Plaintiffs' claims (Section II).

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 2

THE AMENDED COMPLAINT ......................................................................................... 3

LEGAL STANDARD .......................................................................................................... 4

ARGUMENT ....................................................................................................................... 4

      I.    PLAINTIFFS' CLAIMS ARE BARRED BY FLORIDA'S DOCTRINE
           OF PRIMARY JURISDICTION. ................................................................. 4

      II.   COUNT III FAILS TO STATE A CLAIM AND SHOULD BE
           DISMISSED. ........................................................................................... 10

      III.  PLAINTIFFS' STRICT LIABILITY FOR ULTRAHAZARDOUS
           ACTIVITY CLAIM SHOULD BE DISMISSED. ........................................ 14

      IV.  THE COMPLAINT FAILS TO ESTABLISH A MEDICAL
           MONITORING PROGRAM CLAIM. ........................................................ 18

      V.   PLAINTIFFS' INJUNCTION CLAIM FAILS AS A MATTER OF LAW ....... 20

CONCLUSION ................................................................................................................. 20

## TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................4, 14

*Baptiste v. Bethlehem Landfill Co.,* 365 F. Supp. 3d 544, 549 (E.D. Pa. 2019) ............................8

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................4

*Jacobs v. Osmose, Inc.,* 2002 WL 34241682 (S.D. Fla. Jan. 3, 2002) ..........................................19

*Jerue v. Drummond Co., Inc.,* 2017 WL 10876737 (M.D. Fla. Aug. 17, 2017)...............15, 17, 18

*Klay v. United Healthgroup, Inc.*, 376 F.3d 1092 (11th Cir.2004).................................................20

*Lombardozzi v. Taminco US Inc.,* 2016 WL 4483856 (N.D. Fla. 2016) ............................5, 9, 10

*Martin v. Shell Oil Co.*, 180 F. Supp. 2d 313 (D. Conn. 2002) ....................................................16

*Mills v. Davis Oil Co.*, 11 F.3d 1298 (5th Cir. 1994) ......................................................6

*Rhodes v. E.I. du Pont de Nemours & Co.*, 657 F. Supp. 2d 751 (S.D. W. Va. 2009), *aff'd in part* 636 F.3d 88 (4th Cir. 2011)....................................................................8

*Sourcing Sols. USA, Inc. v. Kronos Am., LLC*, 2011 WL 13223514 (S.D. Fla. Jan. 26, 2011) ......................................................................................................20

*Swartout v. Raytheon Co.*, 2008 WL 2756577 (M.D. Fla. July 14, 2008) ................9, 10

STATE CASES

*Cities Serv. Co. v. State of Fla.*, 312 So. 2d 799 (Fla. 1st DCA 1975)..........................................14

*Cunningham v. Anchor Hocking*, 558 So. 2d 93 (Fla. 1st DCA 1990)..........................................12

*Flo–Sun, Inc. v. Kirk*, 783 So. 2d 1029 (Fla. 2001) ............................................................. passim

*Forsythe v. Longboat Key Beach Erosion Control Dist.*, 604 So. 2d 452 (Fla. 1992) ......................................................................................................................13

*Great Lakes Dredging & Dock Co. v. Sea Gull Operating Corp.*, 460 So. 2d 510 (Fla. 3d DCA 1984) ......................................................................................15, 16

*Key Haven Associated Ent. v. Bd. of Trustees*, 427 So. 2d 153 (Fla. 1982) ................6, 7

*Parks Hiway Enterprises, LLC v. CEM Leasing, Inc.,* 995 P.2d 657 (Alaska 2000) ..................16

*Petito v. A.H. Robins Co., Inc.*, 750 So. 2d 103 (Fla. 3d DCA 1999).......................................19, 20

*Willis v. Dept. of Gen. Serv.*, 344 So. 2d 580 (Fla. 1st DCA 1977)...............................................6, 7

**FEDERAL: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS**

Florida's Administrative Procedure Act ..........................................................................6

**STATE: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS**

Fla. Admin. Code § 5I-2.006 ..........................................................................17

Fla. Stat. § 376.301(13)..........................................................................12

Fla. Stat. § 376.301(37)..........................................................................11

Fla. Stat. § 376.313(3)..........................................................................10, 14

Fla. Stat. §§ 403.061(1), (9), (11), (28)........................................................5

Fla. Stat. § 590.125 ..........................................................................17

Fla. Stat. § 590.125(3)..........................................................................18

Fla. Admin Code § 62-204.800..........................................................................20

## SUMMARY OF ARGUMENT

Plaintiffs filed this putative class action on behalf of "those living in and around the areas south and east of Lake Okeechobee and the towns of Belle Glade, South Bay, Pahokee, Clewiston, Moore Haven, and others." Amended Complaint (Compl.) ¶ 1. Plaintiffs' claims should be dismissed for multiple reasons:

First, under the doctrine of primary jurisdiction, Plaintiffs' claims require the resolution of issues under a regulatory scheme that is within the special competence of Florida's administrative agencies and, therefore, Plaintiffs' claims should not be allowed to be brought in a judicial forum.

Second, Count III fails to state a cause of action because Plaintiffs have failed to allege any facts establishing a "discharge or other condition of pollution" under section 373.376. Instead, Plaintiffs' claims are based on atmospheric emissions from burning vegetation, which is neither a "discharge" nor "pollution" as defined in chapter 376.

Third, Plaintiffs do not allege facts to support a claim for strict liability of ultrahazardous activity (Count II). Plaintiffs have not alleged that any danger associated with pre-harvest burning cannot be mitigated where reasonable care is exercised. Count II also fails because pre-harvest sugarcane burning is in "common usage" in Florida.

Fourth, Plaintiffs' medical monitoring claim (Count VI) should be dismissed because Plaintiffs have failed to allege the elements required.

Finally, Plaintiffs' stand-alone claim for injunctive relief should be dismissed because it is not a recognized stand-alone cause of action and because it is redundant of the relief Plaintiffs seek as part of other causes of action.

## INTRODUCTION

The present case is, in many ways, the echo of an unsuccessful case brought nearly 20 years ago against many of the same defendants, raising similar claims, and brought on behalf of the people that worked and lived in the farming communities of the Everglades Agricultural Area (EAA).  *See Flo–Sun, Inc. v. Kirk*, 783 So. 2d 1029, 1037 (Fla. 2001) ("*Kirk*").  There, the unsuccessful plaintiffs, also on behalf of residents in the EAA, raised similar vague claims about the longstanding practice of agricultural burning. The Florida Supreme Court found it "abundantly clear that the comprehensive legislative scheme established to deal with environmental concerns is aptly suited to address the complex technical issues" of pollutant discharge, air and water quality standards and Everglades restoration. *Id.* at 1040.

Absent from the Amended Complaint are necessary allegations that Plaintiffs have exercised any of their administrative remedies under state law.  Also absent are allegations that any Plaintiffs suffered medical harm or that there is anything to differentiate this case from the nearly identical public nuisance action that was previously rejected by the Florida Supreme Court.  Instead, Plaintiffs present their "wish list" and ask this Court to abolish the present regulatory scheme created by the legislative and executive branches of state government and replace it with a judicially-crafted plan.  But the courts are not the forum for redress of such claims.  The legislative and executive branches have extensive experience and authority in this area, and there exist established procedures to address any alleged concerns of the state's residents, which Plaintiffs may not simply ignore.

## THE AMENDED COMPLAINT

The Amended Complaint purports to raise claims based on air quality concerning a large section of the state: "the areas south and east of Lake Okeechobee and the towns of Belle Glade, South Bay, Pahokee, Clewiston, Moore Haven, and others."   Compl. ¶ 1. The "affected area" has a population of over 40,000, and a "substantial majority" of that population is allegedly impacted by the farm practices Plaintiffs seek to enjoin.  *Id.* ¶ 125. Thus, in practical effect, Plaintiffs attempt to bring an air quality environmental claim against an entire industry, on behalf of the entire population of a region of the state, all while bypassing the administrative agencies with jurisdiction over air quality issues and pre-harvest burns. And, Plaintiffs seek to avoid *Kirk's* binding precedent by claiming that the 40,000 claimants are pursuing "private" as opposed to "public" nuisance claims.

Plaintiffs admit that an agency of the state of Florida regulates and approves the agricultural practices at issue.  *Id.* ¶¶ 47, 57.  Yet, there is no allegation that they have made any attempt to seek administrative redress, through either challenge of agency approvals, challenge to rules or statutes allowing the activity, or a petition for new rulemaking.  Nor is there any allegation attempting to demonstrate why the available administrative remedies are inadequate.

In the Amended Complaint, Plaintiffs admit Defendants' farms have been operating for decades and the agricultural practice in question is longstanding and widespread.  *Id.* ¶¶ 30, 39, 41.  Plaintiffs nonetheless persist that this Court should displace the jurisdiction of the legislature and state agencies that have expressly approved and directly regulate the farming practices at issue.  Plaintiffs offer this Court the opportunity to cherry-pick techniques from other places in the world, with much different agricultural features and

3

climates, as well as different practices and regulatory structures, while bypassing state law and agencies. *Id.* ¶¶ 5, 59-60. Plaintiffs' arguments boil down to the view that the legislative and executive branches of government are unable or unwilling to make the regulatory changes that the Plaintiffs desire, that foreign governments know better, and that Plaintiffs can, with this Court's imprimatur, better dictate how to conduct and regulate farming operations in the state. *See id.* ¶¶ 5, 59-62, 120.

## LEGAL STANDARD

Courts insist upon "specificity in pleading" to "avoid the potentially enormous expense of discovery" in cases with no "reasonably founded hope" of success. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558-59 (2007). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (quotation omitted). "A claim has facial plausibility only when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

## ARGUMENT

**I.    PLAINTIFFS' CLAIMS ARE BARRED BY FLORIDA'S DOCTRINE OF PRIMARY JURISDICTION.**

Plaintiffs' claims should be dismissed under Florida's doctrine of primary jurisdiction. As there is administrative jurisdiction over the matters raised in the Amended Complaint, Plaintiffs were bound to follow and exhaust their administrative remedies. *See*

*Kirk*, 783 So. 2d at 1037.  Only then, and after showing the administrative remedies are inadequate, could Plaintiffs bring these claims in a judicial forum.  *See id.*

The claims in the Amended Complaint all relate to the pre-harvest burning of agricultural fields, which Plaintiffs admit is a longstanding agricultural practice regulated by the Florida Department of Agriculture and Consumer Services, Florida Forest Service (FFS).  *See* Compl. ¶¶ 46-47, 57.  Plaintiffs also admit that the FFS authorizes, and at times denies approval for, agricultural burns.  *Id.* ¶¶ 47, 57; *see also* Fla. Admin. Code R. 5I-2.006.  Moreover, air quality in Florida is monitored and regulated by the Florida Department of Environmental Protection (FDEP), which sets standards for air quality pursuant to sections 403.804 and 403.8055.[2]  Ultimately, Plaintiffs seek to enjoin regulated activity and have asked this Court to overrule the state's regulatory powers. Primary jurisdiction under Florida law precludes such claims from bypassing the agencies, particularly when available administrative relief has not been sought.

"In actions predicated on diversity jurisdiction . . .  the court must follow the substantive law of the forum state, in this case, Florida, regarding the applicability of the primary jurisdiction doctrine." *Lombardozzi v. Taminco US Inc.,* 2016 WL 4483856, at *1 (N.D. Fla. 2016), *citing Kendra Oil & Gas, Inc. v. Homco, Ltd.*, 879 F.2d 240, 242 (7th Cir. 1989) (federal courts "defer to the primary jurisdiction of a state agency under the

---

[2] *See*, *e.g.*, Fla. Admin. Code R. 62-204.800(1)(a) (adopting National Primary and Secondary Ambient Air Quality Standards); *see also* Fla. Stat. §§ 403.061(1), (9), (11), (28) (describing the FDEP's powers and duties to establish ambient air quality standards and other measures to control air pollution).

principles established by *Erie*, if state courts would defer."); *Mills v. Davis Oil Co.*, 11 F.3d 1298, 1304 (5th Cir. 1994).

Primary jurisdiction is a prudential doctrine that requires judicial restraint and abstention from jurisdiction over matters for which there exists administrative jurisdiction. Thus, "when a party seeks to invoke the original jurisdiction of a trial court by asserting an issue which is beyond the ordinary experience of judges and juries, but within an administrative agency's special competence, the court should refrain from exercising its jurisdiction over that issue until such time as the issue has been ruled upon by the agency." *Kirk*, 783 So. 2d at 1037.

Florida's Administrative Procedure Act (APA) sets out the administrative remedies. Recognizing that all agency action, or inaction, may be subject to administrative hearing procedures and judicial review under the APA,[3] Florida law does not allow claims like those presented here to bypass administrative remedies. *See Kirk*, 783 So. 2d at 1037; *see also*, *Key Haven Assoc. Ent. v. Bd. of Trustees*, 427 So. 2d 153, 157 (Fla. 1982); *Willis,* 344 So. 2d at 591.  Ignoring these principles, Plaintiffs allege no prior attempt to seek available administrative remedies, nor do they allege a "compelling reason" for finding those remedies to be inadequate.  *See Willis*, 344 So. 2d at 591. The refusal to

---

[3] As the seminal case in this area explains, with the passage of the current Florida APA, *all* agency actions, decisions, rules or other exercises of discretion are subject to available remedies.  The APA "independently serves the public interest by providing a forum to expose, inform and challenge agency policy and discretion." *Willis v. Dept. of Gen. Serv.*, 344 So. 2d 580, 591 (Fla. 1st DCA 1977).

6

even attempt to invoke administrative jurisdiction, much less to show that its remedies are unavailing, is fatal to the claims presented. *Id.*

Florida precedent mandates this result—most notably *Kirk*—which is most instructive due to its factual similarity to the present action. *See also Key Haven*, 427 So. 2d 153, 157; *Willis*, 344 So. 2d at 591.[4]  *Kirk* involved many of the same defendants, challenged the same farming practices, and was brought on behalf of the same general class of persons – the residents of the farming communities in the EAA.  Kirk Compl. at ¶¶ 4, 6.  The *Kirk* plaintiffs were described as "residents of the unincorporated area of Palm Beach County, Florida, immediately outside the City of Belle Glade and [who] live in close proximity to and surrounded by land on which the various Defendants cultivate, harvest and process sugar cane."  *Kirk, sub. nom.;* Kirk Compl. at ¶ 4.

The harm alleged in both cases is also nearly identical, described in *Kirk* as "diminution in value of real and/or personal property; and/or … Respiratory distress…," which the *Kirk* complaint alleged resulted from agricultural burning.  *Id.* at ¶¶ 6(c), 7.  Like the current Plaintiffs, *Kirk* sought to enjoin that longstanding practice, alleging:

- That farming introduced "into the environment a variety of toxins and pollutants in the form of chemical fertilizers which negatively impact upon the quality of air and water extending substantially beyond the boundaries of Defendants' own land"; and

- That agricultural burning "includes the use of intentionally set fires releasing vast quantities of smoke, cinders, soot, and other particulate matter into the

---

[4] In *Kirk,* a former governor of Florida brought a public nuisance action purportedly on behalf of the residents of the EAA, raising claims over agricultural burning nearly identical to those presented in this case.  Similar claims were also brought privately by residents of the EAA.  *See Kirk v. United States Sugar Corporation, et al.*, Second Amended Complaint ("Kirk Compl."), attached in Appendix 1.

air, which also negatively impacts upon the quality of air extending substantially beyond the boundaries of Defendants own land."

*Id.* at ¶ 6.

Affirming the trial court's dismissal of these claims, the Florida Supreme Court held that under Florida's doctrine of primary jurisdiction, the *Kirk* plaintiffs' claims could not be brought without prior exhaustion of administrative remedies.  *See Kirk*, 783 So. 2d at 1037.  Although the present case is ostensibly for a "private" nuisance, there is no functional difference between a public nuisance claim on behalf of the general public and a purported private action putatively brought on behalf of the entire population of a region of the state (in this case over 40,000 persons) and seeking the same relief.[5]  The fact that Plaintiffs styled this case as a private nuisance is a transparent and ineffectual attempt to plead their way around *Kirk*. It is a distinction without a difference.

In yet another parallel to *Kirk*, the Amended Complaint makes various allegations of political influence and campaign contributions, all despite failing to make any allegation of ever having attempted administrative redress.[6]  This is the shadow of *Kirk's* allegation

_____

[5] *See, e.g., Baptiste v. Bethlehem Landfill Co.,* 365 F. Supp. 3d 544, 549 (E.D. Pa. 2019) (A putative class action brought on behalf of 8400 households in a 1.6 mile radius from a landfill in which "improper operation or maintenance of a landfill resulting in odors 'inconvenience or troublesome offense that annoys the whole community in general,' and not 'some particular person,'" constituted a public nuisance rather than a private nuisance."); *Rhodes v. E.I. du Pont de Nemours & Co.,* 657 F. Supp. 2d 751, 767 (S.D. W. Va. 2009), *aff'd in part* 636 F.3d 88 (4th Cir. 2011) ("a private nuisance 'injures one person or a limited number of persons only.'") (citations omitted).

[6] *E.g.,* "The extensive contributions from the sugar industry, including Defendants, to elected officials and candidates for public office, as well as their pervasive and well-funded lobbying operations, have made it very difficult to hold Big Sugar responsible for their rampant pollution and damaging conduct." Compl. ¶ 120.

that "[g]overnment from the local municipal level to the Federal level has aided and abetted in the creation and maintenance of the nuisance."  Kirk Compl. at ¶ 8; see *Kirk*, 783 So. 2d at 1039 (rejecting "allegations that political contributions equate to political corruption").[7]

*Kirk* recognizes that primary jurisdiction does not bar certain individual tort actions for damages. In fact, the court allowed the parties to replead any claims they might have for "an individual, private right of action for personal injury or property damage."  *Kirk*, 783 So. 2d at 1033 n.2. Certain other cases have allowed discrete tort claims along these lines.  *See Swartout v. Raytheon Co.*, 2008 WL 2756577, at *3 (M.D. Fla. July 14, 2008); *Lombardozzi*, 2016 WL 4483856 at *3. However, in the present case, Plaintiffs package the same broad, large-scale pollution claims rejected in *Kirk* as "private" in an ineffectual attempt to do an end run around the Florida Supreme Court's holding.

While primary jurisdiction may not preclude individual claims for particular injuries or property damage, here Plaintiffs' claims cover almost the entire population of the EAA, based on the same impacts alleged in *Kirk*, and against the same agricultural activity that was at issue in *Kirk*, and thus they should be dismissed.  The same courts that have distinguished *Kirk* to allow other narrower tort claims have acknowledged it is this set of facts concerning "large scale pollutant discharge" claims that triggered primary

---

[7] As discussed above, in a diversity case where the administrative jurisdiction is that of a state agency, primary jurisdiction as defined under state law controls. Although certain cases involving federal regulatory schemes look to whether there is "a particularly complicated issue that Congress has committed to a regulatory agency," Florida law, following *Key Haven* and *Kirk,* requires prior use of administrative remedies or a showing that those remedies are inadequate.

9

jurisdiction. *See Swartout*, 2008 WL 2756577, at *3 ("The particular facts of the Flo-Sun case dictated that the issues reached 'beyond the ordinary experience of judges and juries' and fell within the special competence attributed to the administrative agency."); *Lombardozzi*, 2016 WL 4483856, at *3. The "particular facts" and the broad "large scale" claims set out in the Amended Complaint are no different than those in *Kirk*, and primary jurisdiction bars those claims.

This Court should acknowledge and maintain the primary jurisdiction of Florida administrative agencies in these matters by dismissing Plaintiffs' claims.

## II.  COUNT III FAILS TO STATE A CLAIM AND SHOULD BE DISMISSED.

Count III seeks relief pursuant to section 376.313(3). However, it fails to state a claim under that statute. Other than a conclusory allegation in paragraph 153, Plaintiffs fail to show that there has been any discharge or pollution covered by section 376.313. From a plain reading of the statute, Count III of the Amended Complaint fails to state a claim.

Section 376.313(3) provides:

(3) Except as provided in s. 376.313(3) and (11), nothing contained in ss. 376.30-376.317 prohibits any person from bringing a cause of action in a court of competent jurisdiction for all damages resulting from a *discharge or other condition of pollution covered by ss. 376.30-376.317 and which was not authorized pursuant to chapter 403.*

Fla. Stat. § 376.313(3) (emphasis added). An action for damages under section 376.313 is expressly limited to a "discharge or other condition of pollution" and further only to the extent that it is of the type "covered by ss. 376.30-303.317."

A court must then look to the legislative definitions of those terms:

- "Pollution" is defined as the presence of a "pollutant," as defined in the statute, "on the land or in the waters of the state" and at levels

10

that "are or may be potentially harmful or injurious to human health or welfare, animal or plant life, or property or which may unreasonably interfere with the enjoyment of life or property."  Fla. Stat. § 376.301(37).

- "Pollutant" is defined under section 376.301(36) as "any 'product' as defined in s. 377.19, pesticides, ammonia, chlorine, and derivatives thereof, excluding liquefied petroleum gas."

- "Product" is defined in section 377.19(23) as "a commodity made from oil or gas and includes refined crude oil, crude tops, topped crude, processed crude petroleum, residue from crude petroleum, cracking stock, uncracked fuel oil, fuel oil, treated crude oil, residuum, gas oil, casinghead gasoline, natural gas gasoline, naphtha, distillate, condensate, gasoline, waste oil, kerosene, benzine, wash oil, blended gasoline, lubricating oil, blends or mixtures of oil with one or more liquid products or byproducts derived from oil or gas, and blends or mixtures of two or more liquid products or byproducts derived from oil or gas, whether hereinabove enumerated or not."

Beyond a passing reference to ammonia in a laundry list of constituents that Plaintiffs' allege are emitted into the atmosphere, there is no allegation of a discharge of any "pollutant" at levels that "are or may be potentially harmful or injurious to human health or welfare . . . ."  Plaintiffs' do not allege a "pollutant" claim under section 376.313 for "damages resulting from a discharge or other condition of pollution…"[8]  Plaintiffs' claim under section 376.313 fails to state a cause of action.

_____

[8] While the Florida Legislature used a limited and specific definition of "pollution" and "pollutant" when setting out the terms of the private right of action under section 376.313, the Florida Legislature employed a much broader definition in section 403.031(7) when it delegated regulatory powers to the FDEP.  The Florida Legislature certainly knows how to define pollution to include air emissions and a broad class of constituents, and the Legislature chose to vest broad powers over air emissions and the wider class of pollution in the state's principal environmental protection agency.

11

The definition of discharge is also instructive as it is expressly limited to a release onto lands or waters:

> "Discharge" includes, but is not limited to, any spilling, leaking, seeping, pouring, misapplying, emitting, emptying, releasing, or dumping of any pollutant or hazardous substance which occurs and which affects lands and the surface and ground waters of the state not regulated by ss. 376.011-376.21.

Fla. Stat. § 376.301(13).  Thus, "discharge" applies to a release on lands or waters, but does not include air emissions, a significant distinction.[9]

This reading of section 376.313 as applying to discharges to water or lands, but not to air emissions, is consistent with the terms and structure of the statute.  Subsections 376.30-.317 all expressly relate to water, or releases to land impacting water.  Section 376.30 is the general legislative intent statement for chapter 376, and speaks only to ground and surface waters or to lands.

The "prohibited acts" under chapter 376 are set out in section 376.302 and similarly apply to "discharge [of] pollutants or hazardous substances into or upon the surface water

---

[9] There is one reported case, *Cunningham v. Anchor Hocking*, 558 So. 2d 93 (Fla. 1st DCA 1990), that allowed a claim based on intentional indoor air exposure to employees of the specific pollutants listed in the statute. But *Cunningham* involved the presence of specifically listed pollutants (ammonia and chlorine) in an enclosed factory space, which the complaint claimed were known to be at levels that would injure workers in a manufacturing plant. *Id.* at 97-99. *Cunningham* did not sanction a claim based on general atmospheric emissions, and its analysis rested heavily on the fact that ammonia and chlorine are specifically listed in the definition of "pollutant" and that those substances were stored in tanks at the plant. *See id.* at 97-98. The court found the intentional release of these chemicals and their exposure to workers on the premises "permit[ed] pollutants to discharge upon the land and premises" and thus qualified. *Id.* at 99. This scenario is unlike the present one because the Amended Complaint does not allege the presence of the specific pollutants at a level known to injure anyone, and does not allege that listed pollutants were released into a contained premises.

or ground waters of the state or lands, which discharge violates any departmental 'standard' as defined in s. 403.803(13)."[10]  Wherever possible, "all parts of a statute must be read together in order to achieve a consistent whole," and courts should "construe related statutory provisions in harmony with one another," and consider the statutory scheme in its "entirety, in order to effectuate the legislative intent." *See Forsythe v. Longboat Key Beach Erosion Cont. Dist.*, 604 So. 2d 452, 455 (Fla. 1992).  Such an approach demonstrates that chapter 376 was not intended to create a cause of action for Plaintiffs' allegations regarding the air emissions from the burning of vegetation.

The only references to a "pollutant" are in paragraphs 3, 50, and 82 which recite a list of air pollutants that are claimed to be in the smoke from burning, including ammonia and nine other substances.  There is no further discussion of what basis Plaintiffs have to conclude that burning vegetation releases ammonia, in sharp contrast to their detailed discussion of other pollutants that are outside the scope of chapter 376.  There is also no claim that any of the "black snow" that allegedly fell on Plaintiffs' property contained ammonia, much less that Plaintiffs have suffered any harm related to any "discharge" of ammonia.  All of the other substances listed in the Amended Complaint are not "pollutants" for purposes of chapter 376.

---

[10] Section 403.803(13) is the general definition of "standard," which includes both air and water quality standards, but the chapter 376 language referencing it speaks only to water or land, not air.  Discharges to land or water can, and very often do, affect water quality standards, so the only way to read those provisions coherently is to read the statute as applying to discharges to either water or land that affect surface water or groundwater at levels that violate state water quality standards.

All the claims in the Amended Complaint stem from dispersion in the atmosphere of smoke from burning vegetation, which is not "a discharge or other condition of pollution covered by ss. 376.30-376.317." Fla. Stat. § 376.313(3).   There are no allegations of water discharges, water pollution or pollutants on land affecting surface or groundwater with any listed pollutant in the Amended Complaint.   The Amended Complaint does not allege any "discharge" nor is there is a claim that the air emissions at issue contain any of the "pollutants" (other than a vague, passing reference to ammonia) that are defined to constitute pollution under chapter 376 in any significant levels.

Count III therefore fails—on multiple fronts—to state a claim and should be dismissed.

## III.   PLAINTIFFS' STRICT LIABILITY FOR ULTRAHAZARDOUS ACTIVITY CLAIM SHOULD BE DISMISSED.

Plaintiffs do not allege facts to support a claim for strict liability of ultrahazardous activity.   The Amended Complaint summarily lists the elements for that claim without alleging facts regarding Defendants' conduct that gives rise to any single element.   This provides little more than "[t]hreadbare recitals of the elements of a cause of action", and falls far short of the pleading standard.   *See Ashcroft,* 556 U.S. at 678.   Moreover, there are no allegations to demonstrate how or why activity that is regulated by a state agency and specifically authorized pursuant to such oversight, by both legislation and administrative regulation, could be deemed ultrahazardous under state law – particularly where there is no claim that any particular agricultural burn deviated from its FFS permit or FFS regulations.

Florida law recognizes the concept of strict liability for "ultrahazardous" or "abnormally dangerous" activities. *See, e.g., Cities Serv. Co. v. State of Fla.*, 312 So. 2d

14

799, 803 (Fla. 1st DCA 1975) (holding that the "impounding of billions of gallons of phosphatic slime behind earthen walls which are subject to breaking even with the exercise of the best care" constitutes "a non-natural use of the land such as to invoke the doctrine of strict liability."). "An activity is abnormally dangerous if (1) the activity creates a foreseeable and highly efficient risk of physical harm even when reasonable care is exercised by all actors; and (2) the activity is not one of common usage." *Jerue v. Drummond Co., Inc.*, 2017 WL 10876737, at *13 (M.D. Fla. Aug. 17, 2017); *Great Lakes Dredging & Dock Co. v. Sea Gull Operating Corp.*, 460 So. 2d 510, 513 (Fla. 3d DCA 1984).

For an activity to be abnormally dangerous it must have the potential to cause immediate physical injury even when performed carefully. *See Great Lakes*, 460 So. 2d at 512. Thus, "[f]or an activity to be abnormally dangerous, not only must it create a danger of physical harm to others but the danger must be an abnormal one." *Id.* To state a claim for injury from such an activity, one must allege a physical injury and it must relate to the harm at issue, as "[t]he rule of strict liability ... applies only to harm that is within the scope of the abnormal risk that is the basis of the liability." *Id.*

For this reason, all claimed impacts from a "dangerous activity" are not subject to strict liability, only those that stem from the abnormal danger of injury. Florida courts have rejected attempts to cast a nuisance claim as an ultrahazardous activity claim, where the purported harm had nothing to do with the supposed abnormal danger. *See id.* (rejecting noise claim under theory that rock crushing machine was ultrahazardous). Other states,

applying the same restatement of torts,[11] have similarly found that while direct injury from fire and explosion may qualify, pollution claims from those same activities are not within the ambit of "ultrahazardous activity claims."  *See Parks Hiway Enterprises, LLC v. CEM Leasing, Inc.,* 995 P.2d 657, 665 (Alaska 2000) ("transporting fuel was deemed ultrahazardous due solely to gasoline's inherent volatility," this does not extend to liability "for environmental damage resulting from the fuel's delivery."); *Martin v. Shell Oil Co.*, 180 F. Supp. 2d 313, 325 (D. Conn. 2002) (rejecting "ultrahazardous activity" claims related to pollution from underground storage tanks).

Here, there is no allegation that anyone has suffered a physical injury. Nor is there any allegation that any danger associated with pre-harvest burning cannot be mitigated where reasonable care is exercised. All that is presented in the Amended Complaint is the possibility of some latent harm, which is similar to that caused by all air constituents and outside the ambit of harm from an abnormally dangerous activity, as it fails to set forth any "harm that is within the scope of the abnormal risk that is the basis of the liability." *Great Lakes*, 460 So. 2d at 512.

The Amended Complaint also fails to recognize that an activity conducted pursuant to a state regulatory approval, and which no one claims failed to follow the conditions of that approval, is not subject to a finding that it is ultrahazardous.  Ruling on this issue, the *Jerue* court held that reclamation of a former phosphate mine could not be an abnormally dangerous activity because the State of Florida, through its regulatory agencies, approved the activity and regulated the methods used to "mitigate any potential adverse

---

[11] Restatement (Third) of Torts § 20.

impacts." *Id.* at *13. The adoption of state standards demonstrated "that the reclamation of land used for phosphate mining for residential use can be accomplished safely 'when reasonable care is exercised by all actors.'" In dismissing the claim, the court found "it is implausible that the State of Florida would have put its imprimatur on the reclamation of the properties at issue if it believed such use constituted an 'abnormally dangerous activity.'" *Id.* at *6.

The same is true here. Pre-harvest burns are appropriate and reasonable when conducted pursuant to FFS's authorizations.   Plaintiffs admit pre-harvest burns are regulated by the FFS (Compl. ¶¶ 47), which issues permits for each burn pursuant to section 590.125.  Each pre-harvest burn is performed under FFS approval and oversight. *See* Fla. Stat. § 590.125; Fla. Admin. Code § 5I-2.006. The FFS establishes "special requirements" when necessary to "protect public health and safety." Fla. Admin. Code § 5I-2.006. These include onsite inspections, limiting burn periods, and setting conditions for personnel and equipment onsite. *Id.*  If conditions are not appropriate, FFS will deny the burn permit.  Compl. ¶ 57.  Moreover, if, during a burn, FFS "determines that there is a threat to life, public safety or property," it will require the "immediate suppression" of the fire.  Fla. Admin. Code R. § 5I-2.006(1).

As in *Jerue*, it is implausible that the State of Florida would have put its imprimatur on pre-harvest burning of agricultural fields if the Legislature believed such activity constituted an "abnormally dangerous activity." *Id.* at *14.  The Legislature specifically allowed agricultural burning and delegated authority to FFS to grant burn permits and oversee the activity. *See* Fla. Stat. § 590.125. This approval has been implemented by

17

the formal adoption of rules by FFS.[12]  Thus, both the legislative and executive branches of Florida have authorized the activity at issue in this case.

Plaintiffs' claim also fails because the activity here—agricultural burning—is one of common usage.  *Jerue,* 2017 WL 10876737, at \*13. Indeed, Plaintiffs allege that pre-harvest burning of sugarcane is a longstanding practice in Palm Beach County and elsewhere in Florida that, among other things, (i) facilitates harvesting by quickly and cheaply removing excess biomass; (ii) reduces dangers from snakes and insects; and (iii) increases the sugar content of the stalk by evaporating water. Compl. ¶¶ 44-47; *see also* Fla. Stat. § 590.125(3).  Plaintiffs' claim for strict liability for ultrahazardous activity should be dismissed.

## IV.   THE COMPLAINT FAILS TO ESTABLISH A MEDICAL MONITORING PROGRAM CLAIM.

Plaintiffs have not and cannot allege the elements required to prove a medical monitoring claim. Compl. ¶ 123. Although Plaintiffs cite various studies regarding sugar cane burning and respiratory illness, Plaintiffs fail to connect any named Plaintiff or purported class member to a respiratory disease allegedly caused by burning activity in the Affected Area. *Id.* ¶¶ 94 – 107.

Florida recognizes a cause of action for a pre-injury claim for future expenses of medical diagnosis, but only under narrow circumstances that are not presented in the Amended Complaint. A claim for medical monitoring is not a common law tort, but rather an equitable remedy that a court may implement only when there is no adequate common

---

[12] *See* Fla. Admin. Code R. § 5I.2.006; Compl. ¶¶ 47, 57.

law remedy. *Petito v. A.H. Robins Co., Inc.*, 750 So. 2d 103 (Fla. 3d DCA 1999). Plaintiffs

raising a medical monitoring claim must allege and prove each of the following elements:

> (1) exposure greater than normal background levels; (2) to a proven hazardous substance; (3) caused by the defendant's negligence; (4) as a proximate result of the exposure, plaintiff has a significantly increased risk of contracting a serious latent disease; (5) a monitoring procedure exists that makes the early detection of the disease possible; (6) the prescribed monitoring regime is different from that normally recommended in the absence of the exposure; and (7) the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles.

*Id.* at 106–07, *citing Barnes v. The American Tobacco Co.*, 161 F.3d 127, 138–39 (3d

Cir.1998).

Plaintiffs have failed to allege any exposure that would raise their claim beyond the

level of speculation. The Amended Complaint alleges "Plaintiff and the Class Members

have been exposed to hazardous substances, and thereby suffer, and will continue to

suffer, a significantly increased risk of serious injury and diseases as compared to the

general public." Compl. ¶ 174. But this conclusory allegation is insufficient as Plaintiffs fail

to demonstrate Defendants' agricultural practices are the cause of any significant

increase in pollution concentrations (*i.e.*, above general background) or in violation of any

air quality standards set by FDEP—nor could they.  *See Jacobs v. Osmose, Inc.*, 2002

WL 34241682 (S.D. Fla. Jan. 3, 2002) (dismissing claim for medical monitoring where

plaintiff alleged nothing more than the use of flooring products in his deck, and the

conclusory presumption that he was exposed to harmful chemicals).

Plaintiffs fail to sufficiently plead several other elements. Plaintiffs do not allege

facts demonstrating Defendants' activities caused air levels in the area to rise to a point

that would create an increased risk of any health condition, when compared to the risk

19

shared by the general public.  Indeed, many of the constituents at issue have air quality levels set by the FDEP, and there is no allegation that those air quality standards have been exceeded.  *See, e.g.,* FDEP Rule 62-204.800, F.A.C.  Nor are there any allegations that any person has any latent condition requiring monitoring, or that any of Defendants' actions have caused exposure to a hazardous substance at elevated levels that increase the risk of such a condition.

Plaintiffs also fail to allege that "a monitoring procedure exists" that "is different from that normally recommended" and "is reasonably necessary" under "contemporary scientific principles" (fifth, sixth, and seventh elements). *See Petito*, 750 So. 2d at 105. Lacking any supporting allegations as to exposure, background levels, or causation beyond a conclusory recitation of the legal elements of a claim, Plaintiffs have failed to state a claim for medical monitoring.

## V.   PLAINTIFFS' INJUNCTION CLAIM FAILS AS A MATTER OF LAW.

Count VII of the Amended Complaint alleges a stand-alone count for injunction. But "[t]here is no such thing as a suit for a traditional injunction in the abstract." *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir.2004).  Courts have therefore dismissed stand-alone claims for injunctive relief as improper. *See Sourcing Sols. USA, Inc. v. Kronos Am., LLC*, 2011 WL 13223514, at *4 (S.D. Fla. Jan. 26, 2011).  Plaintiffs have already sought injunctive relief in their other counts.  Count VII is both improper and redundant, and should be dismissed.

## <u>CONCLUSION</u>

For the reasons stated above, the Court should grant Defendants' motion to dismiss.

Dated: October 18, 2019

/s/ Joseph P. Klock Jr.
RASCO KLOCK PEREZ NIETO P.L.
Joseph P. Klock, Jr. Esq.
Florida Bar No. 156678
Gabriel E. Nieto, P.A.
Florida Bar No. 147559
2555 Ponce de Leon Blvd., Suite 600
Coral Gables, Florida 333134
Ph:  (305) 467-7100
Fax: (305) 675-7707
jklock@rascoklock.com
gnieto@rascoklock.com

/s/ David S. Dee
GARDNER, BIST, BOWDEN, BUSH,
DEE, LAVIA & WRIGHT, P.A.
David S. Dee, Esq.
Florida Bar No. 281999
1300 Thomaswood Drive
Tallahassee, Florida 32308
Ph:  (850) 385-0070
Fax: (850) 385-5416
ddee@gbwlegal.com

SHOOK, HARDY & BACON L.L.P.

/s/  Mark D. Anstoetter_____
Jennifer A. McLoone, Esq.
Florida Bar No. 29234
Citigroup Center, Suite 3200
201 S. Biscayne Blvd.
Miami, Florida 33131
Ph: (305) 358-5171
Fax: (305) 358-7470
jmcloone@shb.com

Mark D. Anstoetter, Esq.
(Pro hac vice)
Brent Dwerlkotte, Esq.
(Pro hac vice)
2555 Grand Blvd.
Kansas City, MO 64108
Ph:   (816) 474 6550
Fax: (816) 421-5547
manstoetter@shb.com
dbdwerlkotte@shb.com

*Counsel for Defendants Florida Crystals
Corporation, Osceola Farms Co., and
Okeelanta Corporation*

LYDECKER DIAZ

/s/ Mark Hendricks_____
MARK A. HENDRICKS, ESQ.
Florida Bar No. 768146
Email: *mah@lydeckerdiaz.com
        ih@lydeckerdiaz.com*
FORREST L. ANDREWS, ESQ.
Florida Bar No.: 17782
Email*: fla@lydeckerdiaz.com
        adl@lydeckerdiaz.com*

*Counsel for Defendant Trucane Sugar
Corporation*

21

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this the 18th day of October 2019, the above and foregoing document was filed electronically through the CM/ECF system which sent notification of such filing to all known counsel of record.

<u>/s/ Jennifer McLoone</u>

22