**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CLOVER COFFIE, ELIJAH SMITH, and
SHANTE LEGRAND, each individually and
on behalf of all others similarly situated,

      Plaintiffs,

vs.

FLORIDA CRYSTALS CORPORATION,
*et al.*.

      Defendants.

_____/

Case No. 9:19-cv-80730-RS-MM
CLASS ACTION
Jury Trial Demanded

**RESPONSE IN OPPOSITION TO UNITED STATES SUGAR CORP.'S**
**MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW**

# TABLE OF CONTENTS

Introduction ...........................................................................................................................1

Plaintiffs' Response to Defendants' Misstatements of Background ....................................2

Memorandum of Law ...........................................................................................................4

I.     Defendants Impermissibly Attempt to Equate the "Fairly Traceable" Standing Prong to Proximate Cause .........................................................................................................5

II.    Florida's Right to Farm Act Expressly Disavows an Absolute Immunity, and Defendants Ignore the Bulk of Plaintiffs Actual Claims. ...................................................................11

III.   *Kirk's* Fairly Narrow Holding Does Not Preclude Plaintiff's Claims Here ....................15

     A.    Defendants' Motion, and the Actions of the Department of Agriculture, Demonstrate the Relevance of Plaintiffs' Political Influence Allegations ...........17

IV.   Alternatively, Plaintiffs Should Be Granted Leave to Amend ..........................................19

Conclusion and Prayer for Relief ......................................................................................20

# TABLE OF AUTHORITIES

CASES:

*Ashcroft  v. Iqbal*, 556 U.S. 662 (2009) ...................................................................................4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ......................................................................4

*Burger King Corp. v. Weaver*, 169 F.3d 1310 (11th Cir. 1999) .................................................19

*Day v. Taylor*, 400 F.3d 1272 (11th Cir. 2005) ........................................................................n.3

*Ehler v. LVDVD, L.C.*, 319 S.W.3d 817 (Tex. App. 2010) ........................................................14

*Erickson v. Pardus*, 551 U.S. 89 (2007) ....................................................................................4

*Fla. Power & Light Co. v. Allis Chalmers Corp.*, 85 F.3d 1514 (11th Cir. 1996) .......................19

*Fla. Pub. Interest Research Grp. Citizen Lobby, Inc. v. E.P.A.*,
    386 F.3d 1070 (11th Cir. 2004) .........................................................................................6

*Flo-Sun, Inc. v. Kirk*, 783 So. 2d 1029 (Fla. 2001) ............................................................... *passim*

*Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263 (11th Cir. 2003) ............6

*Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*
    204 F.3d 149 (4th Cir. 2000) ..........................................................................................6, 7

*Haddad v. Dudek*, 784 F. Supp. 2d 1308 (M.D. Fla. 2011) ........................................................3

*Himsel v. Himsel*, 122 N.E.3d 935 (Ind. Ct. App. 2019) ...........................................................14

*In re Takata Airbag Prods. Liab. Litig.*, 396 F. Supp. 3d 1101 (S.D. Fla. 2019) ..........................5

*Jones v. Trawick*, 75 So.2d 785 (Fla. 1954) .............................................................................n.8

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014) ..............................6

*Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990) ................................................................5, 6

*Me. People's All. v. Holtrachem Mfg. Co., L.L.C.*, 211 F. Supp. 2d 237 (D. Me. 2002) ................7

*Natural Res. Def. Council, Inc. v. Watkins*, 954 F.2d 974 (4th Cir. 1992) ...................................5

*Nicklaw v. Citimortgage, Inc.*, 839 F.3d 998 (11th Cir. 2016) ...............................................8, n.6

*Okaloosa County Gas Dist. V. Enzor*, 101 So.2d 406 (Fla. 1st DCA 1958) ...............................n.8

*Pasco Cty. v. Tampa Farm Serv.*, 573 So. 2d 909 (Fla. 2d DCA 1990) ......................................12

*Pope v. City of Clearwater*, 138 F.R.D. 141 (M.D. Fla. 1991) ..................................................10

*Prado-Steinman ex rel. Prado v. Bush*, 221 F.3d 1266 (11th Cir. 2000) .....................................9

*Public Interest Research Group of New Jersey, Inc. v. Powell Duffryn Terminals, Inc.*,
    913 F.2d 64 (3rd Cir. 1990), *cert. denied*, 498 U.S. 1109 (1991).......................................7

*Rancho Viejo v. Tres Amigos Viejos*, 123 Cal. Rptr. 2d 479 (2002) ..........................................14

*S.F. Baykeeper v. W. Bay Sanitary Dist.*, 791 F. Supp. 2d 719 (N.D. Cal. 2011) .....................7, 8

*Shamblin v. Obama for Am.*, 2015 WL 1754628 (M.D. Fla. Apr. 17, 2015) ...............................10

*Sher v. Raytheon Co.*,
    No. 8:08-CV-889-T-26TGW, 2008 WL 2756570 (M.D. Fla. July 14, 2008) ...................16

*Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26 (1976)...........................................................10

*Speaker v. U.S. Dept. of Health and Human Services*
    *Centers for Disease Control and Prevention*, 623 F.3d 1371 (11th Cir. 2010)..............4, 5

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) ..........................................................................8

*Stacy v. Dollar Tree Stores, Inc.*, 274 F. Supp. 3d 1355 (S.D. Fla. 2017)......................................8

*Stewart v. Bureaus Inv. Grp. #1, LLC*, 24 F. Supp. 3d 1142 (M.D. Ala. 2014) ..........................10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) ...........................................n.3

*Toback v. GNC Holdings, Inc.*, 2013 WL 5206103 (S.D. Fla. Sept. 13, 2013)............................11

*Watts v. Fla. Int'l Univ.*, 495 F.3d 1289 (11th Cir.2007) ................................................................5

STATUTES:

Cal. Civ. Code § 3482.5 ................................................................14
Fed.R.Civ.P. 15(a)(1) ................................................................19
*Fla. Stat*. § 823.14 ................................................................*passim*
*Fla. Stat*. § 823.14(2) ................................................................12
*Fla. Stat*. § 823.14(4)(a) ................................................................12, 14
*Fla. Stat*. § 823.14(5) ................................................................12
Ind. Code § 32-30-6-9 ................................................................14
Tex. Agric. Code § 251.004 ................................................................14

NOW COME Plaintiffs, CLOVER COFFIE, ELIJAH SMITH, and SHANTE LEGRAND (collectively, "Named Plaintiffs" or "Plaintiffs"), by and through undersigned counsel, and pursuant to Fed.R.Civ.P. 12(b)(6),  hereby file their Response in Opposition to the Motion to Dismiss, [DE 81] ("the Motion"), filed by Defendants United States Sugar Corporation ("U.S. Sugar"), Independent Harvesting, Inc. ("Independent"),  Sugarland Harvesting Co. ("Sugarland"), Sugar Cane Growers Cooperative of Florida (the "Cooperative"), Trucane Sugar Corporation ("Trucane"), King Ranch, Inc. ("King Ranch"), and J & J Ag Products, Inc. ("J & J"), (collectively the "U.S. Sugar Motion Defendants" or "Defendants"),[1][2] and further state:

## INTRODUCTION

At its heart, Defendants' Motion ignores the simple fact that they could employ proven green methods of harvesting sugarcane — instead of methods that cause the toxic "black snow" to rain down on Plaintiffs and the putative class members — and they simply choose not to. There is nothing that would prevent it, other than, as Plaintiffs allege, Defendants' choice to put their profits ahead of the impacted communities and the environment.  Defendants' arguments as to standing are premature and impermissibly attempt to equate the standing pre-requisite with the tort standard of proximate cause.  Defendants' arguments as to the Right to Farm Act ignore the exceptions written into the Act, and that there has been no decision barring Plaintiffs' claims

---

[1] Three Motions to Dismiss were filed in response to the Amended Complaint.  This memorandum of law is in opposition to Docket Entry 81.  A separate response by Named Plaintiffs will be filed in response to the Florida Crystals group response.  [DE 84].  Plaintiffs have voluntarily dismissed Defendant King Ranch and thus, no response is required to their Motion.

[2] Any reference to "Defendants" herein shall mean these named Defendants, with the exception of King Ranch, Inc., who Plaintiffs have voluntarily dismissed concurrent to this filing. When referencing the Amended Complaint herein, Plaintiffs will use just "Complaint" or "Compl."

1

here.  Defendants' arguments as to "primary jurisdiction" ignore the fact that Plaintiffs have not pursued a public nuisance claim and misplace reliance on *Flo-Sun, Inc. v. Kirk*, 783 So. 2d 1029 (Fla. 2001), which was actually a narrow holding.  This is not a case about enjoining permits to burn sugarcane fields; rather it is a case about getting Defendants to stop seeking the burn permits in the first place.

## DEFENDANTS MISSTATE THE ALLEGATIONS

Defendants misstate and misconstrue the allegations of the Amended Complaint in the "Background" section of their Motion.  The fact that sugarcane burning goes back to "at least the early 1930s," (Motion at 7), only highlights the fact that the method is archaic.  Plaintiffs have clearly alleged that green methods have been proven in other sugarcane producing countries to improve profits and yields and protect the soil for future crops.  (Compl. ¶¶ 26, 58–62). Plaintiffs in no way have alleged or conceded that there are acceptable benefits to sugarcane burning.  (Motion at 7).  Instead, Plaintiffs clearly allege that any purported benefits that Defendants cling to are substantially outweighed by the harm that is caused to the surrounding communities.  (Compl., *e.g.*, ¶¶ 27, 48–52, 54–56).

Indeed, as the Complaint alleges, no one, not even the Forest Service, prevents Defendants from using green harvesting methods, as Defendants are sometimes forced to use such measures on those occasions when the wind is blowing into eastern Palm Beach County. (Compl. ¶ 57).  Moreover, when it comes to the wind, and Defendants' claims that Plaintiffs cannot link their harms to any particular defendant, they ignore maps and the studies that

Plaintiffs cite to and rely on in the Complaint.[3]  Defendants' sugarcane fields cover hundreds of thousands of acres, 90% of which are in Palm Beach County.  (Compl. ¶ 43).

Any readily available Florida Forest Service ("FFS") map of the county shows that, apart from the eastern sliver of wealthy developed communities along the I-95 corridor, most of the county is agricultural land and sugarcane fields, and that the communities in the Affected Area are surrounded by those fields.  None of the Defendants deny burning in their Motion, nor do they deny burning in or near the Affected Area.  (*See* Motion, generally).  Plaintiffs have alleged that the toxic ash plumes from *all* Defendants "are discharged, blown through, and deposited onto Plaintiffs' real properties," (Compl. ¶ 56), and that the "toxic smoke and ash emitted from the pre-harvest fires (referred to as "black snow") travels through and gets deposited onto properties in the Affected Area." (Compl. ¶ 52).  And studies Plaintiffs cited to and incorporated into the Amended Complaint demonstrate that a small burn area can have an impact tens of miles away, *i.e.*, the effects of one burn are very widespread.  (*E.g.*, Ex. A to this Response).  As the Amended Complaint alleges, contrary to Defendants' citations to FFS regulations, and the "new" regulations they attached, about restricting burns due to wind direction, only support Plaintiffs' allegations that the primary restriction is when the wind is blowing towards the wealthy areas of the eastern part of the County, (Compl. ¶ 56), a point also raised in a study referenced in the Complaint.[4] (Compl. ¶¶ 49, 54, n. 4).

---

[3] A complaint should be considered in its entirety at the motion to dismiss stage, including documents that have been incorporated by reference into the complaint. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see also Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) ("[A] document need not be physically attached to a pleading to be incorporated by reference into it.").

[4] Orhan Sevimoglua and Wolfgang F. Rogge, *Seasonal size-segregated $PM_{10}$ and PAH concentrations in a rural area of sugarcane agriculture versus a coastal urban area in Southeastern Florida, USA*, PARTICUOLOGY, Vol. 28, pp. 52–59, at p. 58 (2016) (attached hereto as Exhibit A). "[T]the Court may take judicial notice of and consider documents which are

Defendants' arguments about FFS regulations — which Defendants use to go factually outside the four corners — imply:  1) that FFS uniformly enforces the regulations as stated; 2) that Defendants uniformly follow the regulations; and 3) improperly, and misleadingly, conflate the State of Florida's prescribed burn regulatory scheme with Defendants' pre-harvest sugarcane burning. But the the former is an FFS land management tool intended to reduce wildfires and keep everyone safer, whereas the latter is a business decision that serves only to inflate Defendants' profits. Defendants' conflation of sugarcane burning with prescribed burning suggests that sugarcane burning is somehow endorsed, or even required, by the State of Florida, which is just not the case. Florida merely provides Defendants the opportunity to request authorization for a burn within a larger state-wide burn permitting program.  *See Fla. Stat.* § 590.125(3)(a) (West 2019) (legislative purpose) ("The application of prescribed burning is a land management tool that benefits the safety of the public, the environment, and the economy of the state. . . . reduc[ing] the risk and severity of wildfire.").   Moreover, taking the Complaint's world-view perspective, green harvesting is an acceptable and preferred agriculture practice, (Compl. ¶¶ 26, 57–62), and no FFS regulation would stop Defendants from employing it.

## MEMORANDUM OF LAW

Plaintiffs do not disagree with the motion to dismiss standard articulated in *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). However, "[s]pecific facts are not necessary; the [allegations] need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555). As the Eleventh Circuit noted in

---

public records, that are attached to the motion to dismiss, without converting the motion to dismiss into a motion for summary judgment. *Haddad v. Dudek*, 784 F. Supp. 2d 1308, 1324 (M.D. Fla. 2011).

overruling a dismissal under Rule 12(b)(6) in *Speaker v. U.S. Dept. of Health and Human Services Centers for Disease Control and Prevention*, in *Twombly*,

> The Supreme Court distinguished "plausible" claims from allegations that were merely "conceivable," and stated that the Court "[did] not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." . . . Furthermore, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." . . . [*S]ee also Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295–96 (11th Cir. 2007) ("The Court has instructed us that the rule 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary element.") (quoting *Twombly*).

623 F.3d 1371, 1380 (11th Cir. 2010). In sum, the Supreme Court and the Eleventh Circuit have directed this Court to deny Defendants' motion to dismiss under the detailed allegations here. meets this standard.

## I.     Defendants Impermissibly Attempt to Equate the "Fairly Traceable" Standing Prong to Proximate Cause.

Defendants' attack on Plaintiffs' Article III standing is both premature and without merit.

Constitutional standing requires:

> (1) that the plaintiff suffered an injury in fact—an invasion of a legally protected interest, which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*In re Takata Airbag Prods. Liab. Litig.*, 396 F. Supp. 3d 1101, 1119 (S.D. Fla. 2019) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)). Defendants' Motion primarily argues that Plaintiffs do not meet the second prong, and that they cannot fairly trace their allegations to any Defendants. (Motion at 8). First, this is simply untrue. Plaintiffs' allegations more than sufficiently plead the required relationship between the alleged conduct of all Defendants and

Plaintiffs, as addressed above and *infra*.  Second, the "fairly traceable" standard *is not equivalent to a requirement of tort causation*. *Natural Res. Def. Council, Inc. v. Watkins*, 954 F.2d 974, 980 n.7 (4th Cir. 1992).  The "fairly traceable" requirement "is in large part designed to ensure that the injury complained of is 'not the result of the independent action of some third party not before the court.'"  *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 162 (4th Cir. 2000) (quoting [*Lujan v.*] *Defenders of Wildlife*, 504 U.S. [555, 560 (1992)]).

Both the U.S. Supreme Court and the Eleventh Circuit have agreed that "fairly traceable" does not mean proximate causation. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 (2014); *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1273 (11th Cir. 2003). At the motion to dismiss stage standing may be found where plaintiffs connect injury to defendants' conduct with "general factual allegations." *Fla. Pub. Interest Research Grp. Citizen Lobby, Inc. v. E.P.A.*, 386 F.3d 1070, 1083 (11th Cir. 2004).

Defendants are attempting to equate standing's causal connection requirement with proximate cause and the law renders this impermissible.  The injuries complained of here are "not the result of the independent action of some third party not before the court."  Defendants have not denied burning sugarcane, or denied burning sugarcane in the Affected Area.  Indeed, the Docket reflects that Plaintiffs voluntarily dismissed Flo-Sun, American Sugar Refining and King Ranch, after each made declarations that they do not burn.   [DEs 74, 102].  No other Defendant here has stepped forward. Plaintiffs' allegations against these remaining Defendants, (*e.g.*, Compl. ¶¶ 2, 49), relied on documents published by FFS, and provided under a FOIA request, that identified each of the Defendants as burning in, around, and adjacent to the Affected Area and the named communities.

Defendants focus on Named Plaintiffs only alleging to be adjacent to "many" of Defendants' fields, or a lack of linking dates and times of specific burns to Defendants completely misses the point.  (Motion at 4–5).  It would not matter if a Named Plaintiff only lived next to one field.  The issue is, as has been pled, that all Defendants burn, and the burning goes on for six months of the year, and plumes of toxic particulate matter carry for miles and miles.

*Even at the trial level*, in pollutant related cases courts have widely held that in relation to the fairly traceable prong, "plaintiffs need not prove to a scientific certainty that a defendant's waste caused the precise harm suffered by the plaintiffs." *Me. People's All. v. Holtrachem Mfg. Co., L.L.C.*, 211 F. Supp. 2d 237, 253 (D. Me. 2002) (citing *Public Interest Research Group of New Jersey, Inc. v. Powell Duffryn Terminals, Inc.*, 913 F.2d 64, 72 (3rd Cir. 1990), *cert. denied*, 498 U.S. 1109 (1991).  "A plaintiff's injury is 'fairly traceable' to the defendant's conduct when there is a 'substantial likelihood' that the conduct caused the harm,"  but traceability "does not mean that plaintiffs must show to a scientific certainty that defendant's effluent . . .caused the precise harm suffered by the plaintiffs.  *Me. People's All*, at 253 (citing *Gaston*, *supra*, 204 F.3d at 161).  "The 'fairly traceable' standard is not equivalent to a requirement of tort causation, a plaintiff must merely show that a defendant discharges a pollutant that causes or contributes to the kinds of injuries alleged in the area of concern.  *Id.* (quotations omitted).  *See also S.F. Baykeeper v. W. Bay Sanitary Dist.*, 791 F. Supp. 2d 719, 748 (N.D. Cal. 2011) (quoting the same passage from *Gaston* as well as the Ninth Circuit *in determining a motion for summary judgment*).  The case law demonstrates that plaintiffs are allowed the leeway to prove their allegations related to standing, and that Defendants' arguments are premature here.

We are at the motion to dismiss stage, where the allegations are taken as true, and this is precisely what Plaintiffs have sufficiently alleged: all of the Defendants' burning activity discharges pollutants that cause or contribute to the injuries alleged by each Named Plaintiff; that each of them burns in the area the Complaint is concerned with and affect the Named Plaintiffs, and we have incorporated information that one burn can have a widespread impact for many miles. (Compl. ¶¶ 54, n.4).[5] The causal connection for standing "need not be so airtight at this [summary judgment] stage of the litigation as to demonstrate that the plaintiffs would succeed on the merits." *Id.* at 748–49 (citing the Third Circuit). If it need not be so airtight at summary judgment, it need not be so airtight at this stage, although Plaintiffs argue that it is still sufficiently pled. "Where more than one potential discharger is part of the same system, a plaintiff need not show that the discharge came from a specific user." *Id.* Defendants' collective burning activities which are almost entirely in one geographic area and emit injurious particulate matter into the air that rains down on Plaintiffs are part of the same "system" of burns during the harvesting season.

Finally, Defendants' reliance on *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), is misplaced. *Spokeo* very squarely addressed the "concrete and particularized" prong of standing, and not the "fairly traceable" prong. *See id.*, at 1547–48. The question of "fairly traceable" did not factor in *Spokeo's* decision other than in the recitation of the elements of standing. *See generally, id.* But the Complaint more than satisfies all prongs of Article III standing. A "concrete" injury is one that is *de facto*, that is, it actually exists. *Nicklaw v. Citimortgage, Inc.*, 839 F.3d 998, 1002 (11th Cir. 2016). A "particularized injury" is one that affects the plaintiff in a

---

[5] *See* Note 4, supra. The study cited is focused on elevated levels of Belle Glade and Delray Beach, from the same burning activity, yet they are at least 40 miles away from each other, demonstrating the wide-spread impact, albeit to a much lesser extent in the wealthier community.

personal or individual way. *Stacy v. Dollar Tree Stores, Inc.*, 274 F. Supp. 3d 1355, 1361 (S.D. Fla. 2017). Plaintiffs have alleged a concrete injury and particularized injury. For example, Plaintiffs have alleged that Defendants' burns produce numerous hazardous substances that get deposited on Plaintiffs' properties. (Compl. at ¶¶ 3, 50, 51, 56). Plaintiffs have alleged that the "black snow" produced by Defendants' burning contains "pollutants, pesticides, fungicides and contaminants" and that this prohibited discharge of "black snow" migrates onto Plaintiffs' properties. (Compl. at ¶¶ 153-54). Plaintiffs' allegations of both particulate and chemical contamination of their real property establish a concrete, particularized, and actual injury. For her medical monitoring claim, Plaintiff has alleged a concrete, particularized, actual injury of exposure to greater than normal background levels of hazardous substances leading to a significantly increased risk of serious disease as a result of Defendants' conduct.[6] (Compl. at ¶¶ 9, 54, 174).

The prong of redressability is also clearly met:  money damages would redress the past harms to Plaintiffs' property values, injunctive relief would address the imminent future claims of the property owner Plaintiffs, and medical monitoring would address the medical monitoring Plaintiff's significantly increased risk of serious disease. A favorable decision would almost certainly, not just "likely," provide redress for the harm alleged.

Defendants other case law is equally unavailing.  *Prado-Steinman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279–80 (11th Cir. 2000), but *Prado* is not a motion to dismiss decision.  *Prado* was an interlocutory appeal from class certification, and the court was looking at narrow areas of disagreement between the parties. *Id.* at 1280, 1282. It ultimately remanded to the district court

---

[6] Even if the Court were inclined to view exposure to hazardous substances leading to a significantly increased risk of serious disease as an "intangible" injury, intangible injuries still satisfy the Article III "concrete" requirement. *Nicklaw*, 839 F.3d at 1002.

to more fully establish the factual record, with instructions to ensure that at least one named representative for the class or subclass had standing for each proffered class or subclass claim. *Id.* at 1280.  In the instant case, Plaintiffs have listed two named plaintiffs who would satisfy that requirement for the proposed property damage class, and one named plaintiff who would satisfy that requirement for the medical monitoring class.  (Compl. ¶¶ 7–9, 122–23).

*Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26 (1976), which Defendants cite for the unremarkable proposition that standing of putative class representatives is relevant in class action, is significantly different from the instant case. *Simon* is a case where plaintiffs failed to trace their injury to defendants' actions, because the defendants were not the parties who wronged them, and also failed to show that the relief requested would redress the harms. *Id.* at 26.  That is not the case here.

*Stewart v. Bureaus Inv. Grp. #1, LLC*, 24 F. Supp. 3d 1142, 1154 (M.D. Ala. 2014) differs significantly from the instant case it was decided with the benefit of discovery, and the dismissed defendants, with whom plaintiff had no interaction, were non-existent entities and mere "d/b/a's" for other entities.  *Id.* at 1150, 1152.  Here, there has been no discovery, and no Defendant has claimed Plaintiffs have sued a non-existent entity.

*Shamblin v. Obama for Am.*, 2015 WL 1754628, at *4 (M.D. Fla. Apr. 17, 2015) differs from the instant case in that it was decided at the summary judgment stage. *Id.* at. *2.  *Shamblin* also supports the unremarkable statement that a party must assert their own legal interests and not rest their standing on the legal interests of a third party. *Id.* at *4.

*Pope v. City of Clearwater*, 138 F.R.D. 141 (M.D. Fla. 1991) is inapplicable here because: 1) it was decided at the class certification stage; and 2) its named plaintiff, who was also a partner in the law firm representing him in the action, attempted to represent three

different classes, while bringing claims against a proposed defendant class composed of "all governmental entities" within a federal judicial district. *Id.* at 141-45.

*Toback v. GNC Holdings, Inc.*, 2013 WL 5206103 (S.D. Fla. Sept. 13, 2013) differs from the instant case in that its plaintiff asserted claims against a supplement seller under the Florida Deceptive and Unfair Trade Practices Act, and was bringing claims against defendants based on products that he did not actually purchase. *Id.* at *3-4. Again, this is not the instant situation.

Defendants' standing claims are premature and impermissibly equate the causal connection of the "fairly traceable" prong with tort causation, and their Motion to Dismiss should be denied.

## II.   Florida's Right to Farm Act Expressly Disavows an Absolute Immunity, and Defendants Ignore the Bulk of Plaintiffs Actual Claims.

Accepting Defendants' Right to Farm Act arguments on their face would lead this Court into clear error, as the Act does not provide an absolute immunity from suit. Quite to the contrary, the express language of the statute creates several exceptions, and does not allow a farm operation to become a nuisance:

> **(4) Farm operation not to be or *become* a nuisance. —**
>
> (a) No farm operation which has been in operation for 1 year or more since its established date of operation and which was not a nuisance at the time of its established date of operation shall be a public or private nuisance if the farm operation conforms to generally accepted agricultural and management practices, ***except that the following conditions shall constitute evidence of a nuisance***:
>
> 1. The presence of untreated or improperly treated human waste, garbage, offal, dead animals, ***dangerous waste materials, or gases which are harmful to human or animal life***.
> 2**.** The presence of improperly built or improperly maintained septic tanks, water closets, or privies.
> 3. The keeping of diseased animals which are dangerous to human health, unless such animals are kept in accordance with a current state or federal disease control program.

4. The presence of unsanitary places where animals are slaughtered, which may give rise to diseases which are harmful to human or animal life.

**(5) When expansion of operation not permitted. —** This act shall not be construed to permit an existing farm operation to change to a more excessive farm operation with regard to noise, odor, dust, or fumes where the existing farm operation is adjacent to an established homestead or business on March 15, 1982.

*Fla. Stat*. § 823.14 (LexisNexis 2019) (emphasis supplied).

The Florida case relied on by Defendants for support even recognizes that the four exceptions of § 823.14(4)(a) "involve activities which would ***rarely, if ever, be regarded as acceptable agricultural practices*.*" Pasco Cty. v. Tampa Farm Serv.*, 573 So. 2d 909, 911 (Fla. 2d DCA 1990) (emphasis supplied).  Indeed, as Defendants' themselves concede, it was the intent of the legislature "to protect ***reasonable*** agricultural activities . . ." (Motion at 9 (quoting *Fla. Stat.* § 823.14(2) (emphasis supplied)).  While *Pasco* was a decision based on the exception found under § 823.14(5), it still stands for the proposition that the Act does not provide absolute immunity, and that court reversed the defense verdict and remanded for a new trial to determine if defendant's activities ran afoul of § 823.14(5).  *Pasco*, at 912.  Defendants rely on no other case for their suggestion of absolute immunity under the Act, other than inapposite out of state decisions, which are distinguished *infra*.

Plaintiffs in no way concede that sugarcane burning, as conducted by Defendants, is an acceptable agricultural practice, and in fact allege the exact opposite.  Plaintiffs' allegations, which must be taken as true, clearly and amply set forth, while being founded in scientific studies, that the "black snow" created by the burning contains, as the exception to the Act prohibits, "dangerous waste materials, or gases which are harmful to human or animal life." (*See* Compl. ¶¶ 64–70, 76–110).  The Complaint's allegations detail the harmful and dangerous components to the ash, including carcinogens and Volatile Organic Compounds, and note that

"[d]uring the sugarcane harvest burning, 70% of the particles are in the $PM_{2.5}$ range and 82% of the PAHs are in the fine fraction, which increases the risk of respiratory illness because the $PM_{2.5}$ can penetrate deeper into the lungs."[7]   (Compl. ¶ 105).   Plaintiffs expect their experts to establish, scientifically, that the fine particulate matter generated by sugarcane burning, apart from the widespread property damage it causes, also poses significant health risks over the entire area, and are a danger to human life.   It is not the public policy of Florida that an agricultural practice should be a danger to human life, and the legislature codified exactly that in the plain and express language of § 823.14.

Moreover, even if *arguendo*, the Act could apply to Plaintiff's nuisance claims — which Plaintiffs deny — it still would not prohibit Plaintiffs' general negligence, strict liability, statutory, medical monitoring, and injunctive relief claims (Compl. Counts I–III, VI, VII). Further, Defendants' claims that the Complaint contains no allegations of sugarcane burning being a nuisance prior to the founding of Defendants' operations are hollow.   (Motion at 14).   A plain reading of the Complaint clearly demonstrates that Plaintiffs do not concede any benefits to the "cheap" practice, and believe that sugarcane burning has been and would always be "a constant nuisance," and Plaintiffs have simply lacked the economic or legislative clout to do anything about it.   (Compl. ¶¶ 27, 46, 48, 111–20).   More interestingly, Defendants make no attempt to discredit green harvesting as an ***un***-acceptable harvesting practice.   They just do not want to spend any of their substantial and subsidized profits on converting to a practice that would eliminate the toxic ash (and still benefit them in the long run by providing higher yields and richer soil).

---

[7] Particulate matter is denoted as "PM" with a subscript indicating the diameter of the particles, such as $PM_{2.5}$ (particulate matter with a diameter of less than 2.5 micrometers), $PM_{10}$ (diameter of less than 10 micrometers), or $PM_{0.5}$ (diameter of less than 0.5 micrometers).

Defendants' citations to out of state and non-binding decisions regarding Right to Farm Acts are easily distinguishable, and ignore Plaintiffs' statutory, strict liability claims, and medical monitoring claims. First, in *Himsel v. Himsel*, 122 N.E. 3d 935 (Ind. Ct. App. 2019), the court was interpreting a right to farm statute that does not have the exceptions expressly set forth in § 823.14(4)(a) and (5). *See Himsel*, at 942; *compare* Ind. Code § 32-30-6-9 (LexisNexis 2019) *with Fla. Stat*. § 823.14. Thus, the "harmful gases" that the plaintiffs were complaining about were not exempted by the Indiana legislature, as is the case here. *See Himsel*, at 945; *compare* § 32-30-6-9 *with* § 823.14. Moreover, in reaching their decision, the court made much of the fact that the plaintiffs had lived on the adjacent land for decades, and had been provided with an opportunity to seek judicial review of the defendants' long process of obtaining rezoning permission for their re-purposing of their adjacent land to construct a pig feeding operation, as well as the permits needed, and chose not to. *Himsel*, at 943–44 ("The Plaintiffs were provided ample due process to challenge the size and/or placement of the [feeding] buildings on the Farm, yet they decided instead to wait and file a nuisance action more than two years later."). Finally, the negligence the plaintiffs alleged was described as "negligent siting" of the operation, a claim not at issue here. *See id.* at 945.

In *Ehler v. LVDVD, L.C.*, 319 S.W.3d 817 (Tex. App. 2010), again, the statute at issue provided none of the express exceptions in Florida's statute. *See generally id; compare* Tex. Agric. Code § 251.004 *with Fla. Stat*. § 823.14. Furthermore, it limited its finding to a trespass claim, *see Ehler*, at 824, and there are far more diverse claims at issue here. The third case Defendants rely on, *Rancho Viejo v. Tres Amigos Viejos*, 123 Cal. Rptr. 2d 479 (2002), is similarly inapposite. The statute in question, Cal. Civ. Code § 3482.5, contains no express carve

outs as to its application.  *Compare id. with* § 823.14.  And the court was only comparing nuisance and trespass, and not the claims asserted here.  *See Rancho Viejo*, at 562.

     While Plaintiffs clearly object to a finding of an equivalency between nuisance and trespass based on out of state decisions and out of state statutes that do not expressly provide carve outs, even if *arguendo*, the Court agreed with Defendants, Plaintiffs have alleged far more than nuisance and trespass.[8]  Florida's Right to Farm Act does not create an absolute immunity for agricultural producers, and Defendants' arguments should be rejected, and their Motion should be denied.

**III.**    *Kirk's* **Fairly Narrow Holding Does Not Preclude Plaintiff's Claims Here.**

     Defendants' reliance on *Kirk, supra*, 783 So. 2d at 1029 is unavailing.  A plain reading of that complaint reveals that the case was a one count complaint based on *public* nuisance.  [*See* DE 84, Exhibit 1].[9]  The Florida Supreme Court's decision is thus necessarily limited to a finding of primary jurisdiction based on a claim of public nuisance.  As Defendants admit, Plaintiffs do not make a claim for public nuisance.  (Motion at 14).  Yet, Defendants go on for nearly five pages arguing points that are irrelevant to the *private* nuisance claims at issue here, and  concede as much, pointing out that the *Kirk* court had distinguished between "claims for **public** nuisance seeking injunctive relief, which were stayed by the primary jurisdiction doctrine, and  private

---

[8] Furthermore, Florida has codified a right to a private nuisance claim to enjoin under *Fla. Stat.* § 60.05 (LexisNexis 2019), and Florida law recognizes the distinct difference between nuisance and trespass: A nuisance is "[a]nything which annoys or disturbs one in the free use, possession, or enjoyment of his property, or which renders its ordinary use or occupation physically uncomfortable." *Jones v. Trawick*, 75 So. 2d 785, 787 (Fla. 1954).  By contrast, the fundamental requirements for a claim of trespass are that the plaintiff is the owner or in possession of land and that land was invaded by defendant. *Okaloosa County Gas Dist. v. Enzor*, 101 So.2d 406, 407 (Fla. 1st DCA 1958).  The injured party has control over the entry in a trespass; not in nuisance.

[9] The *Kirk* complaint is an exhibit to the Florida Crystals group of Defendants' Motion to Dismiss on grounds other than those here, and which the U.S. Sugar Motion Defendants have expressly joined.  (Motion at 1).

damage claims, **which were not stayed**." (Motion at 13 (citing *Kirk*, at n.2) (emphasis supplied)).[10] Defendants even helpfully cite other Florida decisions supporting Plaintiffs' arguments and claims. (Motion at 13).

A case related to and decided on the same day as one of those supporting cases, *Sher v. Raytheon Co.*, even details how Florida courts have recognized the narrowness of *Kirk* and how it does not apply to claims such as those here:

> Raytheon relies primarily on *Flo-Sun, Inc. v. Kirk,* 783 So.2d 1029 (Fla.2001), which describes the doctrine of primary jurisdiction as one of judicial deference. [*Kirk*]*,* 783 So.2d at 1036 n. 4 & 1039. The particular facts of the [*Kirk*] case dictated that the issues reached "beyond the ordinary experience of judges and juries" and fell within the special competence attributed to the administrative agency. The case at hand, however, does not dictate the same result because it is distinguishable from [*Kirk*]. Although [*Kirk*] involved an environmental action, the case turned on technical questions requiring the expertise of the agency, specifically a claim for public nuisance. In [*Kirk*], sugar producers had polluted the community at large by the harvesting and processing of sugar cane by disposing of furfural in deep wells without a permit from the [Florida Department of Environmental Protection]. *In contrast, the instant case seeks damages for the loss of use and decrease in property value caused by the contaminants*, not the general enforcement of the state's pollution laws in the form of an adjudication of a public nuisance. Hence, this Court will not defer determination of damages to the FDEP in this case.

No. 8:08-CV-889-T-26TGW, 2008 WL 2756570, at *3 (M.D. Fla. July 14, 2008). So, in essence, Section III of the Motion is of no application here, no matter how Defendants try to twist it. Count VII of the Complaint plainly does not seek to enjoin activity based on a public nuisance, but very clearly a private nuisance and the other "private damages" claims raised by Plaintiffs. Thus, the primary jurisdiction doctrine does not preclude Plaintiffs from seeking to prevent those damages.

Moreover, even if, *arguendo*, primary jurisdiction did apply here, Defendants are incorrect in stating that an agency's "egregious or devastating" conduct is the only exception to

---

[10] Moreover, *see* Note 8.

the application of the primary jurisdiction doctrine.  (Motion at 14).  *Kirk* very clearly observes that because "the doctrine of primary agency jurisdiction *may* apply does not necessarily mean that it *must* be applied[,]" and that it "does not serve to divest the circuit court of jurisdiction; it merely counsels that when issues arise which have been placed within the special competence of an administrative body, the court should practice judicial restraint."  783 So. 2d at 1039, 1041.  A court can retain its jurisdiction in the face of the existence of an agency's administrative scheme, if there is reason to.  *See id.*  Plaintiffs allegations that the toxic ash raining down on their properties, which, again, must be taken as true at this stage, set forth the existence of conditions that are harmful, dangerous, and injurious to Plaintiffs and the putative class, and which the FFS only allows as part of its land management prescriptive burn program to prevent wildfires.  This would not be a case for judicial restraint if primary jurisdiction could apply.

As stated in the introduction, this is also not a case about enjoining the issuance of burn permits, or whether the Forest Service is allowed to issue them.  It is a case about getting the Defendants to stop seeking the permits in the first place, causing Plaintiffs and the putative class harm, and instead switching to a superior, recognized, and non-damaging harvesting method.[11]

## A.     Defendants' Motion, and the Actions of the Department of Agriculture, Demonstrate the Relevance of Plaintiffs' Political Influence Allegations.

The recent actions by the Department of Agriculture on FFS regulations only further support Plaintiffs' claims that the communities in the Affected Area are not protected by them; that they chiefly serve the wealthier parts of the County; and that a review of their history would

---

[11] The Florida Crystals group of Defendants also attempt to argue that injunctive relief cannot stand on its own.  That is not the case.  *See Klay v. United Healthgroup, Inc.*, 376 F.3d 1092 (11th Cir. 2004) (a separate claim for the relief is allowed so long as it is based in or tied to another underlying cause of action, as it is here).

17

counsel against deference to the FFS.[12]  (*See* Motion at 13, its Exs. B and C).  First, Commission

Fried's October 1, 2019 press release did not extol the virtues of Florida's *sugarcane burning*

scheme as a "national model" and "scientifically sound practice." (*See* Mot. Ex. C).  It extolled

the virtues of its *wildfire prevention*/land management scheme.  (*See id.*).  Although, Plaintiffs

would posit, with all due respect to Commissioner Fried, that where Florida is consistently "the

top contributor" to carbon emissions nationwide, "largely due to the harvesting activities," and

that "Florida is responsible for annually producing 17% of the total national $CO_2$, CO and

$PM_{2.5}$[13] burn emissions, 12% of the  $PM_{10}$ burn emissions, and 9.5% of the $CH_4$ burn emissions,"

burning may not always be a great national model.  (Compl. 53).  Moreover, Defendants

conveniently forget Plaintiffs' extensive and detailed allegations of scientific findings that green

harvesting is environmentally superior, while burning releases dangerous substances into the air

that pollute and can embed deeply in the lungs, and which are taken as true.  Florida's *sugarcane*

burning is actually a national model of toxicity and scientifically unsound practices.

It should also be noted that the new regulations — the first in thirty years according to

Commissioner Fried — really do little more than add some "Wildlands Areas" protections, an

issue of little relevance to Plaintiffs' and the putative class's claims.  (Motion, Ex. B at 3).  Next,

when you match up the prohibitions on burns in specific sugarcane field zones based on wind

direction, with the provided zone map, they very clearly state that *prohibitions* occur when the

winds are blowing from the westerly directions, or *towards* the wealthy sections of Palm Beach

---

[12] Defendants take a mocking approach to Plaintiffs' allegations of Defendants' huge political clout within the state, however, it is at least *curious* that within a month of the service of the Complaint, the Department of Agriculture announced the first (and still only minor) changes to the regulations *in almost thirty years*.  (*See* Commissioner Fried's statement, Ex. C).

[13] Particulate matter is denoted as "PM" with a subscript indicating the diameter of the particles, such as $PM_{2.5}$ (particulate matter with a diameter of less than 2.5 micrometers), $PM_{10}$ (diameter of less than 10 micrometers), or $PM_{0.5}$ (diameter of less than 0.5 micrometers).

County, and *not* when the winds are blowing from the easterly directions, or *away* from those wealthier areas, and *towards* the communities inhabited by Plaintiffs and the putative class. (Motion, Ex. B at 5–7, 9).   Again, even if primary jurisdiction could apply here — which it should not — this is very much a time when the Court should retain its jurisdiction, as *Kirk* allows, since the FFS regulations, relatively unchanged for thirty years, do not address the issues in this Complaint.  For all of the foregoing reasons, Defendants' Motion should be denied.

## IV.    Alternatively, Plaintiffs Should Be Granted Leave to Amend.

In the event that the Court should agree with Defendants, even in part, the Court should grant Plaintiffs leave to amend because leave to amend should be freely given when justice so requires. Fed.R.Civ.P. 15(e). "[L]eave to amend should be liberally granted." *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1318 (11th Cir. 1999). "[U]nless a substantial reason exists to deny leave to amend, the discretion of the district court is not broad enough to permit denial." *Fla. Power & Light Co. v. Allis Chalmers Corp.*, 85 F.3d 1514, 1520 (11th Cir. 1996) (quotation omitted).  Some reasons that may support a denial of leave to amend include undue delay, bad faith, dilatory motive, repeated failures to cure deficiencies, undue prejudice to the opposing party, or futility. *Id.* (citation omitted). However, none of those characteristics are present here. The case is still in its very early stages, and discovery has not even begun, thus there can be no undue delay nor any prejudice to Defendants, nor is there any bad faith or dilatory motive. Though Plaintiffs have filed one amended complaint, pursuant to Fed.R.Civ.P. 15(a)(1), it was prior to service of any complaint, and this request to amend does not qualify as a repeated failure to cure deficiencies, nor would the amendments be futile, as amply argued above.

Since the filing of the Complaint, Plaintiffs have identified additional potential named plaintiffs from other communities within the Affected Area.   Furthermore, more recent air

modeling that has been conducted visually demonstrates Plaintiff's allegations that the plume from even one burn from a remote Defendant can impact entire miles wide swaths of the Affected Area.  Moreover, Plaintiffs can easily clarify their position that there is no such thing as a good sugarcane burn, and that has always been the case.  Also, Plaintiffs can further clarify that the injunctive relief they are seeking is not to enjoin FFS or any other agency, but to have Defendants embrace a green harvesting alternative that is fully allowed and that would not cause the injuries complained of here.

## CONCLUSION

For all of the foregoing reasons, Defendants have failed to argue any grounds warranting dismissal, either with or without prejudice, and their Motion should be denied.  However, should the Court disagree, Plaintiffs should be granted leave to amend the Complaint.

WHEREFORE, for the foregoing reasons, Named Plaintiffs respectfully request that the Court deny the U.S. Sugar Motion Defendants' Motion to Dismiss, or in the alternative, grant Named Plaintiffs leave to Amend, and for such other relief as the Court deems just and proper.

Dated this 22nd day of November, 2019.

Respectfully Submitted,

*/s Matthew T. Moore*

Matthew T. Moore, Esq.
Florida Bar No. 70034
Zachary West, Esq.
Florida Bar No. 71134
Joseph Schulz, Esq.
Florida Bar No. 660620

20

THE BERMAN LAW GROUP
Post Office Box 272789
Boca Raton, Florida 33427
Ph: (561) 826-5200
Fax: (561) 826-5201
service@thebermanlawgroup.com
mmoore@thebermanlawgroup.com
zwest@thebermanlawgroup.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 22nd day of November, 2019, a true copy of the foregoing has been electronically filed with the Clerk of Court by using the CM/ECF system, and copies of the foregoing were served on all those listed on the attached Service List via the Court's CM/ECF service.

*/s Matthew T. Moore*
Matthew T. Moore, Esq.
Fla. Bar No. 70034

**SERVICE LIST**
**Case # 9:19-cv-80730-RS**
*Coffie, et al. v. King Ranch, et al.*

| | |
|---|---|
| ***Attorneys for Plaintiffs***<br>Matthew T. Moore, Esq.<br>Joseph C. Schultz, Esq.<br>Zachary West, Esq.<br>The Berman Law Group<br>PO Box 272789<br>Boca Raton, FL 33427<br>T: 561-826-5200<br>F: 561-826-5201<br>Primary<br>Email:service@thebermanlawgroup.com<br>Secondary Email:<br>mmoore@thebermanlawgroup.com<br>jschulz@thebermanlawgroup.com<br>zwest@thebermanlawgroup.com | ***Attorneys for J &J Ag Products, Inc.***<br>Andrew S. Connell, Jr., Esq.<br>Litchfield Cavo LLP<br>600 Corporate Drive, Suite 600<br>Ft. Lauderdale, FL 33334<br>T: 954-689-3000<br>F: 954-689-3001<br>Email: Connell@litchfieldcavo.com;<br>deatley@litchfieldcavo.com |
| ***Attorneys for Defendant,***<br>***Sugar Cane Growers Cooperative of Florida***<br>Jennifer J. Kennedy, Esq.<br>Abbey, Adams, Byelick & Mueller, LLP<br>360 Central Avenue, 11th Floor<br>St. Petersburg, FL 33711<br>T: 727-821-2080<br>F: 727-822-3970<br>Email: jkennedy@abbeyadams.com<br>ServiceJKennedy@AbbeyAdams.com<br>David J. Abbey, Esq.<br>Abbey, Adams, Byelick & Mueller, LLP<br>3201 US Highway 19 South, 9th Floor<br>St. Petersburg, FL 33711<br>T: 727-821-2080<br>Email: servicedabbey@abbeyadams.com<br>PRO HAC VICE | ***Attorneys for Defendants United States Sugar***<br>***Corporation, Sugarland Harvesting Co., and***<br>***Independent Harvesting, Inc.***<br>Brian M. McPherson, Esq.<br>Gregor J. Schwinghammer, Jr., Esq.<br>Gunster, Yoakley & Stewart, PA<br>777 S. Flagler Drive, Suite 500 East<br>West Palm Beach, FL 33401<br>T: 561-655-1980<br>F: 561-655-5677<br>Primary Email: bmcpherson@gunster.com<br>gschwinghammer@gunster.com<br>Secondary Emails: eservice@gunster.com<br>jhoppel@gunster.com<br>Mark R. Ter Molen, Esq.<br>Timothy S. Bishop, Esq.<br>Mayer Brown, LLP<br>71 South Wacker Drive<br>Chicago, IL 60606<br>Ter Molen - T: 312-701-7307<br>Bishop – T: 312-701-7829<br>Email: mtermolen@mayerbrown.com<br>tbishop@mayerbrown.com<br>PRO HAC VICE |

| | |
|---|---|
| ***Attorneys for Florida Crystals Corporation, Flo Sun Incorporated, American Sugar Refining, Inc., Okeelanta Corporation, and Osceola Farms***<br>Jennifer Ann McLoone, Esq.<br>Shook, Hardy & Bacon, LLP<br>201 South Biscayne Blvd., Suite 3200<br>Miami, FL 33131<br>T: 305-358-5171<br>F: 305-358-7470<br>Email: jmcloone@shb.com | ***Attorneys for Florida Crystals Corporation, Flo Sun Incorporated, American Sugar Refining, Inc., Okeelanta Corporation, and Osceola Farms***<br>David Brent Dwerlkotte, Esq.<br>Mark D. Anstoetter, Esq.<br>Shook, Hardy & Bacon, LLP<br>2555 Grand Boulevard<br>Kansas City, MO 64108<br>T: 816-474-6550<br>Email: dbdwerlkotte@shb.com<br>manstoetter@shb.com<br>PRO HAC VICE |
| ***Attorneys for King Ranch, Inc.***<br>J. Jeffrey Deery, Esq.<br>Timothy J. Kiley, Esq.<br>Heidi M. Mitchell, Esq.<br>Winderweedle, Haines, Ward & Woodman, PA<br>329 Park Avenue South, 2nd Floor<br>Winter Park, FL 32789<br>T: 407-423-4246<br>F: 407-645-3728<br>Email: jdeery@whww.com; tkiley@whww.com; hmitchell@whww.com<br>Secondary Email: acothran@whww.com; thiggens@whww.com | ***Attorneys for Trucane Sugar Corporation***<br>Mark A. Hendricks, Esq.<br>Forrest L. Andrews, Esq.<br>Lydecker Diaz<br>1221 Brickell Avenue, 19th Floor<br>Miami, FL 33131<br>T: 305-416-3180<br>F: 305-416-3190<br>Email: mah@lydeckerdiaz.com; fla@lydeckerdiaz.com<br>Secondary Email: ih@lydeckerdiaz.com; adl@lydeckerdiaz.com |
| ***Co-Counsel for US Sugar Corporation, Sugarland Harvesting Co., and Independent Harvesting, Inc.***<br>Eugene K. Pettis, Esq.<br>Haliczer Pettis & Schwamm, PA<br>One Financial Plaza, 7th Floor<br>100 SE 3rd Avenue<br>Fort Lauderdale, FL 33394<br>T: 954-523-9922<br>F: 954-522-2512<br>Email: Service@hpslegal.com | |