## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 9:19-cv-80730-RS

CLOVER COFFIE, et al.,

        Plaintiffs,

vs.                            THE HONORABLE RODNEY SMITH

FLORIDA CRYSTALS CORPORATION,
a Delaware Corporation, et al.,

        Defendants.

_____/

### DEFENDANTS FLORIDA CRYSTALS CORPORATION, OSCEOLA FARMS CO., OKEELANTA CORPORATION, AND TRUCANE SUGAR CORPORATION'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

Defendants Florida Crystals Corporation, Osceola Farms Co., Okeelanta Corporation, and Trucane Sugar Corporation submit their Reply in support of their Motion to Dismiss Plaintiffs' Amended Complaint. Doc. # 84.

### ARGUMENT

### I.    PRIMARY JURISDICTION STILL BARS THIS CLAIM

Plaintiffs attempt to sidestep the precedent set by *Flo-Sun, Inc. v Kirk*,[1] arguing that their case is not a public nuisance but a private nuisance shared by tens of thousands of individuals simultaneously.  Plaintiffs seek the same relief as the plaintiffs in *Kirk*, but spend pages arguing that their case is not what it looks like.  As the Supreme Court of Florida said in *Kirk,* the issues raised are "aptly suited" for agency resolution.

---

[1] *Flo-Sun v. Kirk*, 783 So. 2d 1029 (Fla. 2001).

Plaintiffs repeatedly tell us that their preferred method of harvesting is "superior" to the agricultural harvesting methods used in Florida and, therefore, should be imposed on the agricultural industry:

> This is also not a case about enjoining the issuance of burn permits, or whether the FFS is allowed to issue them. It is a case about getting the Defendants to stop seeking the permits in the first place, causing Plaintiffs and the putative class harm, and instead switching to a superior, recognized, and non-damaging harvesting method.

Doc #105 at 5. Plaintiffs make it abundantly clear that they want this Court to impose a green harvesting requirement, supplanting agency authorizations to the contrary. *See* Doc. #104 at 4. Essentially, Plaintiffs want to do away with the legislative and executive branch authorizations for agricultural burning and judicially impose a specific manner of harvesting. However, "[t]he function of this Court is to interpret the law and is neither to legislate nor determine the wisdom of the policy of the Legislature." *State v. Walls*, 356 So.2d 294 (Fla. 1978). Since prescribed burning is permitted under Florida law, the district court "cannot substitute its judgment for that of the Legislature and create an exception" that would preclude pre-harvest sugarcane burning. *See id.* at 294; *Reilly v. Alcan Aluminum Corp*., 221 F.3d 1170 (11th Cir. 2000) ("[J]udicially created exceptions are not favored."). No matter how Plaintiffs label or spin it, Plaintiffs seek the same relief sought in *Kirk—to* supplant the administrative agencies and place this Court in the position of regulator, adjudicating whether one agricultural harvesting method is "superior" to another. *See* Doc. # 84 at 7-9.

Plaintiffs' casual dismissal of the administrative process, the role agencies play, and the availability of legislatively-crafted administrative remedies to address the fundamental claim presented only underscores the need for adherence to longstanding principles of comity among branches of government at the heart of the primary jurisdiction doctrine. *See Kirk*, 783 So. 2d at 1040. The Florida Forestry Service ("FFS") has adopted rules regulating agricultural burning

- 2 -

practices and the Florida Department of Environmental Protection ("FDEP") has adopted rules regulating air quality. There are administrative procedures in place to challenge those existing rules, or propose new rules, or challenge individual permits. There also are procedures for seeking judicial review of agency decisions concerning any of these processes.[2] These remedies are available and adequate to adjudicate the issue of whether agriculture in Florida should be forced to adopt Plaintiffs' preferred harvesting methods.

In deciding whether to invoke primary jurisdiction, Florida cases place the burden to show that administrative remedies are inadequate on the party that seeks to bypass them:

- "[T]he burden is on 'the party seeking to bypass usual administrative channels [to] demonstrate that no adequate remedy remains available under chapter 120.'" *Kirk*, 783 So. 2d at 1040, *quoting Gulf Pines Mem'l Park, Inc. v. Oaklawn Mem'l Park, Inc*., 361 So. 2d 695, 99 (Fla.1978); *see also, Communities Fin. Corp. v. Fla. Dep't of Envtl. Reg.,* 416 So. 2d 813, 816 (Fla. 1st DCA 1982) (complainant must demonstrate some compelling reason why the APA does not avail them in their grievance).

- Florida court jurisdiction is limited by "judicial restrictions ... which require prior resort to and exhaustion of administrative remedies when they are available and adequate," which can be bypassed only if the complaint demonstrates that the APA cannot provide a remedy. *Willis*, 344 So. 2d at 591; *see also, Bal Harbour Village v. City of Miami*, 678 So. 2d 356, 364 (Fla. 3d DCA 1996) (same).

- Allegations regarding the timeliness, efficacy, and propriety of agency action are, without more, insufficient to justify trial court intervention into matters regulated by agencies; where administrative remedies have not been pursued, it cannot be concluded that those remedies are inadequate. *Communities Fin.*, 416 So. 2d at 816-17; *Fla. Soc. of Newspaper Editors v. Fla. Pub. Serv. Comm'n*, 543 So. 2d 1262, 1266 (Fla. 1st DCA 1989), *rev. denied*, 551 So. 2d 461 (Fla. 1989); *Dep't of Envt'l. Prot. v. PZ Constr*., 633 So. 2d 76, 78-79 (Fla. 3d DCA 1994).

---

[2] The Florida APA "subjects every agency action to immediate or potential scrutiny; which assures notice and opportunity to be heard on virtually every important question before an agency; [] provides independent hearing officers as fact finders in the formulation of particularly sensitive administrative decisions; [] requires written findings and conclusions on impact issues; which assures prompt administrative action; and [] provides judicial review of final, even of interlocutory, orders affecting a party's interest."  *Kirk*, 783 So.2d at 1040, *quoting State ex rel. Dep't of General Services v. Willis,* 344 So.2d 580, 590 (Fla. 1st DCA 1977).

Turning to the present case, in the context of nearly identical allegations, *Kirk* found that the same factual claim, and the same relief sought (requiring farmers to abandon pre-harvest burning), were best addressed by the administrative system and its "varied and abundant" remedies:

> In this case it is abundantly apparent that the comprehensive legislative scheme established to deal with environmental concerns is aptly suited to address the complex technical issues which may arise in this case. Specifically, the scheme now in force extensively controls pollutant discharge, requires comprehensive permitting, establishes air and water quality standards, and sets forth a detailed plan for the restoration of the Everglades through the Everglades Forever Act and the Everglades Construction Project. This legislative scheme is implemented by numerous volumes of regulations containing extensively detailed, scientific criteria and is enforced by agencies having the required experience and expertise, such as the DEP. These are not simple, routine matters which may be easily understood by trial judges and juries.

*Kirk*, 783 So. 2d at 1040.

Given this express finding as to the very regulatory programs and conduct at issue here, cases finding primary jurisdiction inapplicable based on district court findings that some *other* matter was not within the special competence of agencies, are unavailing.

- *Sher v. Raytheon,* involved "damages resulting from the toxic plume of groundwater contaminants." 2008 WL 2756570, 1 (M.D. Fla.2008). The case was "predominantly one for damages suffered by one adjacent landowner at the hands of another," stemming from a discrete water event. This is a far cry from the present case and *Kirk*, both of which involve attempts to supersede a regulatory program via area-wide injunctive relief against an entire industry. *Sher* itself recognizes this difference: "the particular facts of the [*Kirk*] case dictated that the issues reached 'beyond the ordinary experience of judges and juries' and fell within the special competence attributed to the administrative agency."

- 4 -

- *Lombardozzi v. Taminco US* distinguished *Kirk* on the basis that odor-related claims were not within special agency expertise.  2016 WL 4483856 *4 (N.D. Fla. 2016). *Kirk*, in contrast, expressly holds the same factual claims presented here are squarely within both agency jurisdiction and technical expertise.

The distinctions drawn in *Sher* and *Lombardozzi* are simply not applicable here in light of the express finding by the Florida Supreme Court that claims related to the same agricultural activity, seeking the same general, area-wide prohibition on agricultural burning raise technical concerns within agency expertise, that the agencies are "aptly suited to address."  *See Kirk*, 783 So. 2d at 1040.

Plaintiffs also ask the Court to ignore primary jurisdiction based on their dissatisfaction with the administrative process or past agency action. Florida law sets out the test for such a showing:

> (1) the complaint must demonstrate some compelling reason why the APA (Chapter 120, Florida Statutes) does not avail the complainants in their grievance against the agency; or (2) the complaint must allege a lack of general authority in the agency and, if it is shown, that the APA has no remedy for it; or (3) illegal conduct by the agency must be shown and, if that is the case, that the APA cannot remedy that illegality; or (4) agency ignorance of the law, the facts, or public good must be shown and, if any of that is the case, that the Act provides no remedy; or (5) a claim must be made that the agency ignores or refuses to recognize related or substantial interests and refuses to afford a hearing or otherwise refuses to recognize that the complainants' grievance is cognizable administratively.

*Kirk*, 582 So. 2d at 1038, *quoting, Communities Fin. Corp.,* 416 So. 2d at 816.

None of these factors are met. There has been no attempt to pursue administrative remedies, and no showing that such remedies cannot address the argument that burning should be banned in favor of alternative harvesting methods.  There is no claim that the agency lacks the authority to provide the prohibition on burning that Plaintiffs seek.  There is no claim that any agency has engaged in "illegality" or that the APA, which provides for judicial review of all agency decisions,

could not provide a remedy even were that the case.  There is likewise no claim that any agency lacks technical competence to resolve the issues raised.  And, there is certainly no claim that an agency has refused to hear any claim, given that none has ever been presented.

What the Court is left with is a group of Plaintiffs that argue administrative remedies must be inadequate because their preferred harvesting method has not previously been mandated.  The argument that administrative remedies can be ignored simply because the Plaintiffs disagree with (but never challenged) past agency actions or because rules have not changed for a long period of time rings particularly hollow. There are administrative remedies for each of these complaints, which Plaintiffs do not claim to have ever attempted.  *See supra* at 2-3; *Communities Fin. Corp.,* 416 So. 2d at 816-17 ("where administrative remedies have not been pursued, it cannot be concluded that those remedies are inadequate."). Plaintiffs' complaints about past administrative decisions call out for application of primary jurisdiction, not avoidance of it, so that those issues can be properly presented under the APA.

## II.    PLAINTIFFS FAILED TO STATE A CLAIM UNDER SECTION 376.313 FOR DAMAGES FROM A DISCHARGE OR OTHER CONDITION OF POLLUTION

Plaintiffs' claim under Section 376.313 fails because they have not alleged any "pollutant" affects their land.  The crux of Plaintiffs' argument is that despite the fact that they have not shown that any "pollutant" affects their lands or waters, the definition of "discharge" also references "hazardous substances" and, therefore, their claim should survive.[3] Their reading would give no effect to the legislative restriction of certain claims to those stemming from pollution and pollutants.  *See Forsythe v. Longboat Key Beach Erosion Control Dist.*, 604 So. 2d 452, 455 (Fla.

---

[3] Implicitly conceding that they have not stated a claim for "pollutants" plaintiffs try to shift the claim by arguing that they "have sufficiently alleged emission of, and damage caused by, hazardous substances from Defendants' pre-harvest burning." Doc. #105 at 8.

1992) ("courts must give full effect to all statutory provisions and construe related statutory provisions in harmony with one another.").

What Plaintiffs wish this Court to ignore is that the provision of chapter 376 upon which their action is based requires a discharge "of pollution" not of the broader category of "hazardous substances."  Section 376.313(3), includes two key sentences:

> … nothing contained in ss. 376.30-376.317 prohibits any person from bringing a cause of action in a court of competent jurisdiction for all damages **resulting from a discharge or other condition of pollution covered by ss. 376.30-376.317 and which was not authorized pursuant to chapter 403**. Nothing in this chapter shall prohibit or diminish a party's right to contribution from other parties jointly or severally liable for a **prohibited discharge of pollutants or hazardous substances or other pollution conditions**….

Fla. Stat. §376.313(3) (emphasis added).  These two sentences address two separate and distinct issues. The first sentence, and the operative one here, provides for "damages resulting from a discharge or other condition of pollution covered by ss. 376.30-376.317...."  This sentence that the action (1) relate to "pollution," as defined, and (2) that the pollution be covered by 376.30-376.313. As explained in Defendants' Motion to Dismiss, Plaintiffs' claim in this action fails on both fronts. There has been no claim of damage from "pollution," nor is there any claim stated for pollution "covered by [sections] 376.30-376.317," Florida Statutes, which relate to pollution of lands or waters.  Doc # 84 at 13-14.

Rather than address this point, Plaintiffs attempt to confuse the issue by going into a long discussion on the meaning of "hazardous substance."  However, it is the second sentence in section 376.313(3) that uses that term, but only in relation to an action for contribution by parties "jointly or severally liable for a prohibited discharge of pollutants or hazardous substances." [4]   This

---

[4] This sentence provides a state law parallel to a federal CERCLA "contribution action," which provides a mechanism for cleanup of administratively designated contaminated sites, and allows a party responsible for cleanup costs to seek "contribution" for the fair share of other parties.  See

sentence shows that there is a distinction between "pollution" and "hazardous substances," as it preserves contribution claims based on either pollution **or** hazardous substance, whereas the sentence upon which the Plaintiffs' claims are based is limited to only pollution.

While there is no dispute that a "discharge" can include a release of hazardous substances (where the other conditions of the term discharge are met), the claim presented here is limited to a discharge or other condition "of pollution." Plaintiffs have not set out allegations to show that the listed "pollutants" in Fla. Stat. § 376.301(36) have impacted any land or water. And, the definition of discharge requires a release that "affects lands and the surface and ground waters of the state." *Id* § 301(13). Therefore, to state a claim, Plaintiffs would need to allege a release of a listed "pollutant" and state how that pollutant adversely "affects lands and waters" of a Plaintiff in a manner "covered by ss. 376.30-376.317." *See id.* The Amended Complaint falls far short of these requirements. It is not enough to simply claim that there is some pollutant, much less some other substance, in smoke.

## III.   PLAINTIFFS' ULTRAHAZARDOUS ACTIVITY CLAIM SHOULD BE DISMISSED

Plaintiffs' claim based on ultrahazardous activity should be dismissed. While Plaintiffs point to their allegations regarding the hazardous characteristics of the sugarcane burning, that is not enough. The mere fact that fire has dangerous properties is insufficient to permit the imposition of strict liability for at least two separate and independent reasons. The activity of prescribed burning regulated by state statute and agency cannot support an ultrahazardous activity claim, and

---

42 U.S.C. §9613(f)(1); *see also, Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1513 (11th Cir. 1996). Plaintiffs rely heavily on the federal definition of hazardous substance related to such claims. Doc. #105 at 7 (discussing 42 U.S.C § 9602(a)). This type of action is not, however, presented here; there is no designated contaminated site at issue, much less any claim by a party held responsible for cleaning up such a site seeking contribution from others.

Plaintiffs' own factual allegations undercut the notion that this case involves an ultrahazardous activity. [5]

Under Florida law, and as Plaintiffs concede, one of the central questions for strict liability for ultrahazardous activity is whether the activity involves "a risk of serious harm to the person, land, or chattels of others *which cannot be eliminated by the exercise of the utmost care*." *Old Island Fumigation, Inc*., 604 So. 2d at 1247 (emphasis added). The question is whether the activity itself, not any possible negligence, is so risky that strict liability is warranted.

Although Plaintiffs offer the boilerplate allegation that Defendants' activities create a risk of harm that "cannot be eliminated by the exercise of reasonable or utmost care in the burning process," Compl. ¶ 142(c), elsewhere they allege: "Defendants exercised exclusive control over their operations and the handling, storage, and disposal of contaminants and other hazardous materials produced by their burning process. In the normal course of events, contaminants would not escape from Defendants' property if Defendants had used *reasonable care*." Compl. ¶ 138 (emphasis added). These inconsistent allegations undermine any claim that the risk posed from sugarcane burning cannot be eliminated by reasonable care. *See, e.g., Jerue v. Drummond Co., Inc.*, 2017 WL 10876737 (M.D. Fla. Aug. 17, 2017). The absence of an impermissible risk is further demonstrated by the comprehensive regulatory scheme under which Defendants' pre-harvest sugarcane burning has been managed and approved for over 20 years. *See id.* at *14 ("[I]t is implausible that the State of Florida would have put its imprimatur on the reclamation of the properties at issue if it believed such use constituted an 'abnormally dangerous activity.'").

Finally, Plaintiffs Coffie's and Smith's claim for strict liability also fails because they only allege economic harm: "property damage, diminution of their value of their real estate, and

---

[5] *See, e.g.*, Restatement (Second) of Torts §§ 519, 520.  Please note the Restatement (Second) of Torts refers to abnormally hazardous activities rather than ultrahazardous activity.

property stigma damages," for which strict liability for an abnormally dangerous activity is not available. Am. Compl. ¶ 147; *See Great Lakes Dredging & Dock Co. v. Sea Gull Operating Corp*., 460 So. 2d 510, 513 (Fla. 3d DCA 1984) (hotel owner could not state a claim for strict liability for abnormally dangerous activities where his only complaint was that he lost business); *St. Joe Co. v. Leslie*, 912 So. 2d 21, 24 n.1 (Fla. 1st DCA 2005) (plaintiffs' failure to allege anything more than diminution of value doomed their claim because strict liability requires physical harm).  The Court should dismiss Plaintiffs Coffie's and Smith's ultrahazardous activity claim.

## IV.    PLAINTIFFS' MEDICAL MONITORING CLAIM FAILS.

Plaintiffs do not dispute that the elements required for alleging a medical monitoring cause of action are set forth in Defendants' Motion. *See* Doc. # 84 at 18-20. Nonetheless, Plaintiffs argue they need only allege they "have been exposed to contaminants through the negligence of Defendants and those exposures have increased the risk of contracting serious latent diseases for which means of early detection are available." *Id*. at 18. But this conclusory allegation is insufficient to demonstrate Defendants' agricultural practices could plausibly be the cause of any deterioration of air quality in violation of applicable regulatory levels, much less at levels that would create an increased risk of any particular health condition. Nor do Plaintiffs account for the several other elements lacking in their Am. Complaint. *See Id*. at 18-20. Plaintiffs do not allege what medical procedures they seek, whether any procedure exists to permit early detection of the unidentified "respiratory conditions," or whether any scientific principle of any kind necessitates any procedures at all. Compl. ¶¶ 76-77. Florida law requires more. *See Hoyte v. Stauffer Chem. Co*., 2002 WL 31892830, at *51 (Fla. Cir. Ct. Nov. 6, 2002) ("medical monitoring is not just a form of relief, it is a separate cause of action with seven specific elements ...").

Similarly, Plaintiffs generically allege that they "have been exposed to hazardous substances, and thereby suffer, and will continue to suffer, a significantly increased risk of serious

injury and diseases as compared to the public."—but without factual allegations to show how this is so. Am. Compl. ¶ 174. A medical monitoring claim does not exist for any and every claimed exposure, however limited. *See Hoyte*, 2002 WL 31892830, at *50; *Perez v. Metabolife Int'l, Inc.*, 218 F.R.D 262, 271 (S.D. Fla. 2003); *cf. Rink v. Cheminova, Inc.*, 203 F.R.D. 648, 660 (M.D. Fla. 2001) (allegation of "exposure" in support of medical monitoring claim was vague). Instead, Plaintiffs must allege facts to show that they "absorbed a toxicologically sufficient dose to be at a significantly increased risk of contracting serious latent disease years after the exposure" *See Hoyte*, 2002 WL 31892830, at *50. Plaintiffs' failure to do so requires dismissal of this cause of action.

## CONCLUSION

For the reasons set forth in Defendants' Motion, Plaintiffs' claims should be dismissed.

[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]

Dated: December 6, 2019

RASCO KLOCK PEREZ NIETO P.L.

/s/ Joseph P. Klock Jr.
Joseph P. Klock, Jr. Esq.
Florida Bar No. 156678
Gabriel E. Nieto, P.A.
Florida Bar No. 147559
2555 Ponce de Leon Blvd., Suite 600
Coral Gables, Florida 33134
Ph:  (305) 467-7100
Fax: (305) 675-7707
jklock@rascoklock.com
gnieto@rascoklock.com


GARDNER, BIST, BOWDEN, BUSH,
  DEE, LAVIA & WRIGHT, P.A.

/s/ David S. Dee
David S. Dee, Esq.
Florida Bar No. 281999
1300 Thomaswood Drive
Tallahassee, Florida 32308
Ph:  (850) 385-0070
Fax: (850) 385-5416
ddee@gbwlegal.com

Respectfully submitted:

SHOOK, HARDY & BACON L.L.P.

/s/ Mark D. Anstoetter
Jennifer A. McLoone, Esq.
Florida Bar No. 029234
Citigroup Center, Suite 3200
201 S. Biscayne Blvd.
Miami, Florida 33131
Ph:  (305) 358-5171
Fax: (305) 358-7470
jmcloone@shb.com

Mark D. Anstoetter, Esq. (*Pro Hac Vice*)
Brent Dwerlkotte, Esq. (*Pro Hac Vice*)
2555 Grand Blvd.
Kansas City, MO 64108
Ph:  (816) 474 6550
Fax: (816) 421-5547
manstoetter@shb.com
dbwerlkotte@shb.com

*Counsel for Defendants Florida Crystals*
*Corporation, Osceola Farms Co., and*
*Okeelanta Corporation*


LYDECKER DIAZ, LLC

/s/ Mark A. Hendricks
Mark A. Hendricks, Esq.
Florida Bar No. 768146
Forrest L. Andrews, Esq.
Florida Bar No.: 17782
1221 Brickell Avenue, 19th Floor
Miami, Florida 33131
Ph:  (305) 416-3180
Fax: (305) 416-3190
mah@lydeckerdiaz.com
fla@lydeckerdiaz.com

*Counsel for Defendant Trucane Sugar*
 *Corporation*