**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CLOVER COFFIE, ELIJAH SMITH, and
SHANTE LEGRAND, each individually and
on behalf of all others similarly situated;   Case No. 19-cv-80730-RS

    Plaintiffs,   CLASS ACTION

vs.   Hon. Rodney Smith

FLORIDA CRYSTALS CORPORATION,
a Delaware corporation;
SUGAR CANE GROWERS COOPERATIVE OF FLORIDA,
a Florida not for profit corporation;
UNITED STATES SUGAR CORPORATION,
a Delaware corporation;
OKEELANTA CORPORATION, a Delaware corporation;
OSCEOLA FARMS CO., a Florida corporation;
SUGARLAND HARVESTING Co.,
a Florida not for profit corporation;
TRUCANE SUGAR CORPORATION,
a Florida corporation; INDEPENDENT
HARVESTING, INC., a Florida corporation;
J & J AG PRODUCTS, INC., a Florida corporation;
and Does 1-50;

    Defendants

---

**AMENDED REPLY (CLERICAL CORRECTION ONLY) IN SUPPORT OF
MOTION OF DEFENDANTS UNITED STATES SUGAR CORPORATION,
INDEPENDENT HARVESTING, INC., SUGARLAND HARVESTING CO., SUGAR
CANE GROWERS COOPERATIVE OF FLORIDA, TRUCANE SUGAR
CORPORATION, AND J & J AG PRODUCTS, INC.
TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiffs' opposition ("Opp.") fails to identify any legal basis to compel sugar growers to use Plaintiffs' preferred farming method instead of the longstanding practice of pre-harvest burning, which is authorized by the Florida legislature and strictly regulated by the Florida Forest Service. Plaintiffs confirm that they made little effort to plausibly trace their alleged injuries to any particular Defendant(s) but instead filed suit against anyone they identified as performing burns anywhere in, around, or adjacent to the so-called "Affected Area." Plaintiffs seek to avoid the Right to Farm Act ("RTFA") based primarily on an inapplicable exception that applies to sanitary nuisances involving human and animal waste. Plaintiffs also offer no principled basis to distinguish *Flo-Sun, Inc. v. Kirk*, 783 So.2d 1029 (Fla. 2001), which makes clear that Plaintiffs' claim for injunctive relief is barred by the primary jurisdiction doctrine.[1]

## ARGUMENT

### I.     Plaintiffs Lack Article III Standing.

Plaintiffs concede that Article III standing requires that "'there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant.'" Opp. at 5 (quoting *In re Takata Airbag Prods. Liab. Litig.*, 396 F. Supp. 3d 1101, 1119 (S.D. Fla. 2019)). Plaintiffs also do not dispute that they must trace *their* alleged injuries to each Defendant and cannot rely on absent class members. In their response, Plaintiffs primarily argue that Defendants are attempting to equate Article III standing with the tort concept of proximate causation, which they are not required to prove at the pleading stage. Opp. at 1, 5-7. That is false. Defendants challenge Article III standing, not proximate causation. Even at the pleading stage, Plaintiffs are required to allege sufficient facts (taken as true) to plausibly trace their alleged injuries to each Defendant. *See*, *e.g.*, *Spokeo, Inc. v. Robins*, 136 S.

---

[1] The undersigned Defendants also join in Parts III and IV of Florida Crystal's reply brief.

Ct. 1540, 1547 (2016) ("Where, as here, a case is at the pleading stage, the plaintiff must 'clearly … allege facts demonstrating' each element [of Article III standing].").

As Defendants' Motion demonstrated, Plaintiffs fail to allege facts tracing their alleged injuries to each Defendant. Plaintiffs allege that they own property or reside in "close proximity to *many* of Defendants' sugarcane fields." Am. Compl. ¶¶ 7-9 (emphasis added). They make no effort to trace alleged injuries to any particular Defendant(s), let alone all of them. For example, Plaintiffs do not identify the location of a single pre-harvest burn by any Defendant and its proximity to their properties (let alone the weather/wind conditions that day). Plaintiffs offer these sparse allegations despite the fact that information on every pre-harvest burn is readily available through the Florida Forest Service, which issues permits for each individual burn. Plaintiffs appear to concede that they have that information through FOIA requests. Opp. at 6. Yet Plaintiffs make no allegations concerning any particular burns by any particular Defendant(s).

To meet the traceability requirement, Plaintiffs largely rely on a vague allegation that "'black snow' is known to travel for miles." Am. Compl. ¶ 52; Opp. at 7-8. Plaintiffs allege no facts concerning what "is known" or by whom, but in any event, the so-called "Affected Area" covers approximately ***675 square miles***, including "the towns of Belle Glade, South Bay, Pahokee, Clewiston, Moore Haven, and others." Am. Compl. ¶¶ 1, 6; *see* Ex. 1 (map illustrating areas at issue).[2] By their own admission, Plaintiffs sued everyone who they identified performing pre-harvest sugarcane burns not only in the "Affected Area," but "around[] and adjacent" to it as well. Opp. at 6. Plaintiffs have not come close to alleging facts that plausibly trace their alleged injuries to each Defendant's actions over that vast (and uncertain) area. A conclusory, boilerplate allegation

---

[2] The Court may take judicial notice of the map on a Rule 12(b)(6) motion, which plots the township and range areas identified in the Amended Complaint (at ¶ 6). *Tesoro Refining & Mktg. Co. v. City of Long Beach*, 334 F. Supp. 3d 1031, 1042 (C.D. Cal. 2017) (collecting cases).

that all Defendants are responsible (Compl. ¶ 56) is insufficient.[3]

Plaintiffs contend that any traceability problem is cured because they attempted to sue everyone engaged in pre-harvest burning and, therefore, their alleged injuries are purportedly "not the result of the independent action of some third party not before the court." Opp. at 6 (citing *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 162 (4th Cir. 2000)).[4] But Defendants are aware of no authority (and Plaintiffs cite none) allowing a plaintiff to sue an entire industry only to sort out later who actually is connected to their injuries. *See, e.g., Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007) ("a complaint must allege facts" stating a claim "before proceeding to discovery"); *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997) ("'Discovery … is not a device to enable a plaintiff to make a case when his complaint has failed to state a claim'"). And Plaintiffs simply ignore the confounding effect of wildfires and of permitted, prescribed burns not associated with sugar harvesting.

Plaintiffs' reliance on *S.F. Baykeeper v. W. Bay Sanitary Dist.*, 791 F. Supp. 2d 719, 748-49 (N.D. Cal. 2011), and *Maine People's Alliance v. Holtrachem Mfg. Co., L.L.C.*, 211 F. Supp. 2d 237, 253 (D. Me. 2002), is misplaced. Each of those cases involved discharges into water bodies where plaintiffs' members used downstream waters. It was in that context that those courts held

---

[3] Plaintiffs now assert that a pre-harvest burn has effects "tens of miles away." Opp. at 3. Plaintiffs attach a study that purports to have analyzed some air monitoring data in Belle Glade (within the "Affected Area") and Delray Beach ("at least 40 miles away"). *Id.* at 8 n.5. While Defendants do not endorse the study or its findings, on its face, the study undercuts Plaintiffs' assertion. *See* Opp. Ex. A at 55 (finding a "typically negative" "correlation between particle levels measured at Belle Glades and Delray Beach," "indicating that the sources of the [particulate matter] at the two sites were indeed different").

[4] Although Plaintiffs claim to have named every entity engaged in pre-harvest cane burning (Opp. at 6), the Amended Complaint alleges otherwise. *See* Am. Compl. ¶ 22 ("Defendants DOES 1-50 include as of yet unknown entities that at all relevant times have conducted … burning of sugarcane fields and sugarcane waste material, that damaged Named Plaintiffs and Class Members"). Moreover, Plaintiffs do not purport to have named every entity that has performed a prescribed burn around the "Affected Area" (of which pre-harvest sugarcane burning is only a subset).

that organizational plaintiffs were not required to "'pinpoint the origins of particular molecules'" but instead could "show that a defendant discharges a pollutant that causes or contributes to the kinds of injuries alleged in the specific geographic area of concern." *S.F. Baykeeper*, 791 F. Supp. 2d at 749. But as Plaintiffs concede, they still must demonstrate "'a 'substantial likelihood' that the [Defendants'] conduct caused the harm.'" Opp. at 7 (citing *Maine People's Alliance*, 211 F. Supp. 2d at 253). Here, Plaintiffs' "specific geographic area of concern" covers approximately 675 square miles and the delivery system is variant winds—not a confined water body with a unidirectional flow. Plaintiffs have not alleged any facts to demonstrate a "substantial likelihood" that *everyone* who engages in pre-harvest burning anywhere in, around, or adjacent to that "Affected Area" caused or contributed to their alleged injuries.

## II.   All Of Plaintiffs' Claims Are Barred By Florida's Right To Farm Act.

Even if Plaintiffs have Article III standing, all of their claims are barred by Florida's RTFA, which protects longtime farm operations from nuisance and similar claims like those asserted here. Plaintiffs have not identified any basis for piercing the RTFA's protections.

### A.   The RTFA's Exceptions Do Not Apply.

Plaintiffs primarily argue that the RTFA does not provide "absolute immunity" and that their claims are exempt. Opp. at 11-12. Plaintiffs cite the RTFA's exceptions for some particular nuisances, particularly subpart (1)'s reference to "dangerous waste materials, or gases":

> 1.  The presence of untreated or improperly treated human waste, garbage, offal, dead animals, dangerous waste materials, or gases which are harmful to human health or animal life.
>
> 2.  The presence of improperly built or improperly maintained septic tanks, water closets, or privies.
>
> 3.  The keeping of diseased animals which are dangerous to human health, unless such animals are kept in accordance with a current state or federal disease control program.

> 4. The presence of unsanitary places where animals are slaughtered, which may give rise to diseases which are harmful to human or animal life.

Fla. Stat. § 823.14(4)(a)(1)-(4).

Nothing in section 823.14(4)(a) purports to carve out smoke or other air emissions from the RTFA. To the contrary, "farm operations" covered by the RTFA expressly *include* "the generation of noise, odors, dust, and fumes," as well as "the application of chemical fertilizers, conditioners, insecticides, pesticides, and herbicides." Fla. Stat. § 823.14(3)(b); *see* Am. Compl. ¶¶ 64-70 (alleging that "pesticides … migrate as part of the 'black snow'").

While section 823.14(4)(a)(1) refers to "dangerous waste materials, or gases," all four exceptions in section 823.14(4)(a) plainly focus on sanitary issues related to improper handling of human and animal waste. The phrase "dangerous waste materials, or gases" must be interpreted in that context. *See, e.g., Fl. Dep't of Revenue v. James B. Pirtle Const. Co.*, 690 So.2d 709, 711 (Fla. Ct. App. 1997) (explaining the "familiar tenet of statutory construction" *ejusdem generis*: "where the enumeration of specific things is followed by a more general word or phrase, the general phrase is construed to refer to a thing of the same nature as the preceding specific things").

The RTFA's legislative history confirms that the legislature modeled these exceptions after Fla. Stat. § 386, which addresses "Sanitary Nuisances." SB 547, Senate Staff Analysis and Economic Impact Statement at 2 (Feb. 4, 1982) ("Provisions of chapter 386, F.S. … which create a public nuisance for sanitary reasons are specifically enumerated….") (Ex. 2). Indeed, Fla. Stat. § 386.041(1)(a)-(d) contains a nearly identical list of sanitary nuisances.

There is one critical difference between the RTFA exceptions and Chapter 386. Chapter 386 expressly includes "air pollutants" and "noisesome odors" as sanitary nuisances:

> (1) The following conditions … shall constitute prima facie evidence of maintaining a nuisance injurious to health:

5

>   (a)   Untreated or improperly treated human waste, garbage, offal, dead animals, or dangerous waste materials from manufacturing processes harmful to human or animal life and *air pollutants*, gases, and *noisesome odors* which are harmful to human or animal life.

Fla. Stat. § 386.041(1)(a) (emphasis added). This same language is conspicuously absent from the RTFA exception. *Id.* § 823.14(4)(a)(1). Because the RTFA's exceptions are based on Chapter 386, the inclusion of "air pollutants" and "noisesome odors" as nuisances in Chapter 386 but *not* the RTFA must be given effect. *See Headley v. City of Miami*, 215 So.3d 1, 9 (Fla. 2017) ("[U]nder the principle of *expressio unius, est exclusion alterius*, … 'the mention of one thing implies the exclusion of another.'"); *In re K.B.L.V.*, 176 So.3d 297, 300-01 (Fla. Ct. App. 2015) (explaining that "statutes must be read as a whole" and that "'the judicial interpreter [is] to consider the entire text, in view of its structure and of the physical and logical relation of its many parts'").

Accordingly, Plaintiffs have not shown that their claims are exempt from the RTFA. Like all prescribed burning, pre-harvest sugarcane burning is statutorily authorized by the Florida legislature under Fla. Stat. § 590.125 and administered by the Florida Forest Service under Fla. Admin. Code § 5I.2.006. If the legislature wished to exempt smoke and any air emissions from prescribed burning from the RTFA, they certainly knew how to do so. They did not.

### B.   All Of The RTFA's Elements Are Satisfied.

Defendants' Motion (at 9-10) demonstrated that the RTFA applies and that the Amended Complaint makes no attempt to allege otherwise. In particular: (i) pre-harvest burning is a "farm operation"; (ii) pre-harvest burning is a "generally accepted agricultural and management practice"; and (iii) there is no allegation that pre-harvest burning was a nuisance to Plaintiffs or anyone else at the time of any Defendant's established date of operations. Fla. Stat. § 823.14(4)(a).

Plaintiffs do not dispute that pre-harvest burning is a "farm operation" covered by the

6

RTFA. *See* Fla. Stat. § 823.14(3)(b) (defining "farm operation").

Plaintiffs say pre-harvest burning is not "generally accepted" because it falls under the RTFA's exceptions. Opp. at 12-13. As shown above, however, pre-harvest burning is *not* exempt from the RTFA. Otherwise, Plaintiffs merely assert that "green harvesting" is "superior." Opp. at 17-18. But even accepting Plaintiffs' allegations as true (and they are not),[5] the RTFA does not require farmers to use whatever method plaintiffs deem "superior." *See, e.g., State v. Walls*, 356 So. 2d 294, 296 (Fla. 1978) ("The function of this Court is to interpret the law and is neither to legislate nor determine the wisdom of the policy of the Legislature"). The RTFA only requires that farmers use generally accepted methods, and pre-harvest burning easily qualifies. Pre-harvest burning even pre-dates the RTFA. Plaintiffs cannot escape their own allegations that pre-harvest burning dates back to at least the 1930s, has various benefits, and is authorized by statute and regulated by the Forest Service. Br. at 9-10; Am. Compl. ¶¶ 44-47.

Finally, Plaintiffs do not allege that pre-harvest burning was a nuisance to anyone at the time of any Defendant's established date of operations. Plaintiffs ask the Court to infer from their allegations about today's practices that pre-harvest burning "has been and would always be" a nuisance (Opp. at 13), but Plaintiffs ignore that States enacted right to farm laws "'to protect agricultural producers from nuisance actions that result from the encroachment of residential development onto traditionally agricultural lands.'" *Riddle v. Lanser*, 421 P.3d 35, 46 (Alaska 2018). As a result, it is improper to simply assume—with no supporting factual allegations—that a condition that is an alleged nuisance today was necessarily also a nuisance decades ago.

---

[5] Plaintiffs find it "interesting[]" that "Defendants make no attempt to discredit green harvesting as an ***un-*** acceptable practice." Opp. at 13. Of course, as Plaintiffs certainly know, a motion to dismiss is not the time and place for factual disputes. Defendants strongly dispute that so-called "green harvesting" is a viable or beneficial harvesting technique in South Florida.

### C. The RTFA Applies To All Of Plaintiffs' Claims.

Courts consistently reject attempts to plead around right to farm laws by creatively pleading nuisance claims as other causes of action. Br. at 10 (citing *Himsel v. Himsel*, 122 N.E.3d 935, 945 (Ind. Ct. App. 2019), *Ehler v. LVDVD, L.C.*, 319 S.W.3d 817, 823-24 (Tex. Ct. App. 2010), *Rancho Viejo LLC v. Tres. Amigos Viejos LLC*, 123 Cal. Rptr. 479, 488 (Cal. Ct. App. 2002)). Plaintiffs argue this case is different because they were *really* creative by pleading "far more diverse claims" than *Himsel*, *Ehler*, and *Rancho Viejo*. Opp. at 14. That argument should be rejected. Just like in those cases, the RTFA's protections would be "eviscerate[d]" if Plaintiffs' relabeled claims were allowed to proceed. *Ehler*, 319 S.W.3d at 823-24.

### III. Plaintiffs' Claim For Injunctive Relief Must Be Dismissed Because It Is Subject To The Florida Forest Service's Primary Jurisdiction Over Pre-Harvest Burn Permits.

The undersigned Defendants limited their primary jurisdiction argument to Plaintiffs' request to enjoin pre-harvest burning in the "Affected Area"—as opposed to claims for monetary damages. Br. at 2-3, 11-15. That was the distinction made in *Kirk*, 783 So. 2d at 1033 n.2, *Lombardozzi v. Taminco US Inc.*, 2016 WL 4483856, at *1-4 (N.D. Fla. Aug. 24, 2016), and *Swartout v. Raytheon*, 2008 WL 2756577, at *3 (M.D. Fla. July 14, 2008)). Plaintiffs have not established any basis for a different result here.

Plaintiffs devote most of their opposition to a strawman argument that the undersigned Defendants are not making—*e.g.*, that Plaintiffs' damages claims are barred by the primary jurisdiction doctrine. For example, Plaintiffs argue that *Kirk* allowed "'private damages claims, *which were not stayed*.'" Opp. at 16 (emphasis added by Plaintiffs). Plaintiffs also quote at length from *Sher v. Raytheon Corp.*, 2008 WL 2756570, at *3 (M.D. Fla. July 14, 2018), a companion case to *Swartout*, which rejected a primary jurisdiction challenge to claims seeking "damages for the loss of use and decrease in property value caused by the contaminants." The court explained

8

that the Florida Department of Environmental Protection "does not possess the authority to *determine damages* in a private right of action" and declined to "defer *determination of damages*" to the FDEP. *Id.* at \*2-3 (emphasis added); *accord Swartout*, 2008 WL 2756577, at \*2-3. While these cases may support private damages claims, they confirm that Plaintiffs' broad request for injunctive relief improperly encroaches on the role of state regulators.

Plaintiffs' attempts to distinguish *Kirk* are unavailing. Plaintiffs repeatedly assert that they are not attempting to enjoin the Florida Forest Service from *issuing* burn permits, but rather seeking to enjoin Defendants from *seeking* permits in the first place. Opp. at 2, 17. But the same was true in *Kirk*. Like here, the *Kirk* plaintiffs brought suit against companies engaged in sugar cane cultivation, harvesting, and processing, not against state regulators. *Kirk*, 783 So. 2d at 1032. Like here, the *Kirk* plaintiffs sought injunctive relief enjoining all pre-harvest burning (among other practices). Br. Ex. D at p. 6. The Florida Supreme Court rejected the *Kirk* plaintiffs' claims for injunctive relief, finding that "it is abundantly apparent that the comprehensive legislative scheme established to deal with environmental concerns is aptly suited to address the complex technical issues that may arise in this case" and that "[t]hese are not simple, routine matters which may be easily understood by trial judges and juries." *Kirk*, 783 So. 2d at 1040.

Plaintiffs also place heavy reliance on the fact that *Kirk* involved *public* nuisance claims. Opp. at 5. Tellingly, however, Plaintiffs never explain why *Kirk*'s primary jurisdiction analysis would not apply to their putative class action seeking to enjoin all pre-harvest burning—the exact relief at issue in *Kirk*. The primary jurisdiction doctrine applies "when a party seeks to invoke the original jurisdiction of a trial court by asserting an issue which is beyond the ordinary experience of judges and juries, but within an administrative agency's special competence." *Kirk*, 783 So. 2d at 1037. *Kirk*'s analysis does not change simply because Plaintiffs chose to label their nuisance

9

claims "private" rather than "public" but seek the same injunctive relief.

Indeed, Plaintiffs mislabeled their nuisance claims. "As a rule, [public] nuisance affects the public at large, or such of them as may come into contact with it, while a private nuisance affects *the individual or a limited number of individuals only*." 38 Fl. Jur. 2d Nuisances § 5 (1982) (emphasis added); *accord State v. SCM Glidco Organics Corp.*, 592 So. 2d 710, 717 (Fla. Ct. App. 1991), *abrogated on other grounds by Kirk*, 783 So. 2d at 1031-32 (same); *Prior v. White*, 180 So. 347, 355 (Fla. 1938) ("[P]ublic nuisance affects the public. It is such an inconvenience or troublesome offense as annoys the whole community, in general, and not merely some particular person. A private nuisance is a private wrong done to an individual and must be redressed by private action."). Here, Plaintiffs allege that the population of the "Affected Area" exceeds 40,000 people across three counties and that "a substantial majority of those people have been affected by Defendants' wrongful conduct" (Am. Compl. ¶ 125)—which is a public nuisance claim.

Plaintiffs question (at 17) whether the Forest Service has expertise in pre-harvest burning, suggesting its burn program is aimed at preventing wildfires. But the Forest Service is responsible for the safety of pre-harvest burning and protecting any nearby residents. The Service has long plotted proposed burns before issuing permits "to protect public health and safety" and avoid any "potential problems with the smoke" (Br. Ex. A), and recently issued regulations for pre-harvest burning confirm that goal. Br. Exs. B-C. If Plaintiffs believe the Service is not performing its job correctly, Plaintiffs must exhaust their administrative remedies with the Service. *Kirk*, 783 So. 2d at 1038. Plaintiffs' request for injunctive relief should be dismissed, as *Kirk* requires.

## CONCLUSION

The Amended Complaint should be dismissed with prejudice.

Dated: December 11, 2019          Respectfully submitted,

By: /s/ Gregor J. Schwinghammer, Jr.
Gregor J. Schwinghammer, Jr.
Florida Bar No. 90158
Brian M. McPherson
Florida Bar No. 735541
GUNSTER, YOAKLEY & STEWART, P.A.
777 South Flagler Drive, Suite 500 East
West Palm Beach, FL 33401
Telephone:  (561) 655-1980
Facsimile:  (561) 655-5677
gschwinghammer@gunster.com
bmcpherson@gunster.com

By: /s/ Eugene K. Pettis
Eugene K. Pettis
Florida Bar No. 508454
HALICZER PETTIS & SCHWAMM, P.A.
100 SE 3rd Avenue
Seventh Floor,
Fort Lauderdale, FL 33394
Telephone: (954) 523-9922
Facsimile:  (954) 522-2512
service@hpslegal.com

Mark Ter Molen
Timothy S. Bishop
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL  60606
Telephone:  (312) 782-0600
Facsimile:  (312) 701-7711
mtermolen@mayerbrown.com
tbishop@mayerbrown.com

*Counsel for Defendants U.S. Sugar Corporation, Independent Harvesting, Inc., and Sugarland Harvesting Co.*

By: /s/ Gary V. Perko
Gary K. Hunter
Florida Bar No. 949779
Gary V. Perko
Florida Bar No. 855898
Mohammad O. Jazil
Florida Bar No. 72556
HOPPING GREEN & SAMS, P.A.
119 S. Monroe Street, Suite 300
Tallahassee, FL 32301
Telephone: (850) 222-7500
Facsimile: (850) 224-8551
garyh@hgslaw.com
garyp@hgslaw.com
mjazil@hgslaw.com

David J. Abbey
Florida Bar No. 228222
Jennifer J. Kennedy
Florida Bar No. 517267
ABBEY, ADAMS, BYELICK & MUELLER, LLP
3201 U.S. Highway 19 South, 9th Floor
St. Petersburg, Florida 333711
Telephone: (727) 821-2080
Facsimile: (727) 822-3970
dabbey@abbeyadams.com
kennedy@abbeyadams.com

*Counsel for Defendant Sugar Cane Growers Cooperative of Florida*

By: /s/ Forrest L. Andrews
Mark A. Hendricks
Florida Bar No. 768146
Forrest L. Andrews
Florida Bar No. 17782
LYDECKER DIAZ
1221 Brickell Avenue, 19th Floor
Miami, Florida 33131
Telephone: (305) 416-3180
Facsimile: (305) 416-3190
mah@lydeckerdiaz.com
fla@lydeckerdiaz.com

*Counsel for Defendant*

12

*Trucane Sugar Corporation*

By: /s/ Andrew S. Connell, Jr.
Andrew S. Connell, Jr.,
Florida Bar No. 038430
LITCHFIELD CAVO, LLP
600 Corporate Drive Suite 600
Ft. Lauderdale, Florida 33334
Telephone: 954/689-3000
Facsimile: 954/689-3001
connell@litchfieldcavo.com

*Counsel for Defendant J & J Ag Products, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system sending a notice of electronic filing to counsel on the attached service list on December 11, 2019.

/s/ Gregor J. Schwinghammer, Jr.
GREGOR J. SCHWINGHAMMER

**SERVICE LIST**
*Coffie, et al. v. Florida Crystals Corporation, et al.*
Case No. 19-CV-80730-RS

Joseph C. Schultz, Esq.
The Berman Law Group
P.O. Box 272789
Boca Raton, FL  33427
Telephone: (561) 826-5200
Facsimile: (561) 826-5201
Email: service@thebermanlawgroup.com;
jschulz@thebermanlawgroup.com
***Attorneys for Plaintiffs***

Zachary West, Esq.
The Berman Law Group
P.O. Box 272789
Boca Raton, FL  33427
Telephone: (352) 514-3791
Email: service@thebermanlawgroup.com;
zwest@thebermanlawgroup.com
***Attorneys for Plaintiffs***

Matthew T. Moore, Esq.
The Berman Law Group
P.O. Box 27289
Boca Raton, FL  33427
Telephone: (561) 826-5200
Facsimile: (561) 826-5201
Email: mmoore@thebermanlawgroup.com;
service@thebermanlawgroup.com
***Additional Counsel for Plaintiffs***

Mark R. Ter Molen, Esq.
Timothy S. Bishop, Esq.
Mayer Brown LLP
71 South Wacker Drive
Chicago, IL  60606
Telephone: (312) 701-7307
Facsimile: (312) 706-9115
Email: mtermolen@mayerbrown.com;
tbishop@mayerbrown.com
***Attorneys for Defendants United States Sugar Corporation, Sugarland Harvesting Co., and Independent Harvesting, Inc.***
*Pro Hac Vice*

Gregor J. Schwinghammer, Jr., Esq.
Brian M. McPherson, Esq.
Gunster Yoakley & Stewart, P.A.
777 South Flagler Drive, Suite 500 East
West Palm Beach, FL 33401
Telephone: (561) 655-1980
Facsimile: (561) 655-5677
Email: gschwinghammer@gunster.com,
bmcpherson@gunster.com
***Attorneys for Defendants United States Sugar Corporation, Sugarland Harvesting Co., and Independent Harvesting, Inc.***

Eugene K. Pettis, Esq.
Haliczer Pettis & Schwamm, P.A.
One Financial Plaza, Seventh Floor
100 SE 3rd Avenue
Fort Lauderdale, FL  33394
Telephone: (954) 523-9922
Facsimile: (954) 522-2512
service@hpslegal.com
cmarr@hpslegal.com
***Co-Counsel for Defendants United States Sugar Corporation, Sugarland Harvesting Co., and Independent Harvesting, Inc.***

Jennifer J. Kennedy, Esq.
Abbey, Adams, Byelick & Mueller, L.L.P.
3201 U.S. Highway 19 South, 9th Floor
St. Petersburg, FL 33711
Telephone: (727) 821-2080
Facsimile: (727) 822-3970
Email: ServiceJKennedy@AbbeyAdams.com
***Attorneys for Defendant Sugar Cane Growers Cooperative of Florida***

Gary K. Hunter, Esq.
Gary V. Perko, Esq.
Mohammad O. Jazil, Esq.
Hopping Green & Sams, P.A.
119 S. Monroe Street, Suite 300
Tallahassee, FL 32301
Telephone: (850) 222-7500
Facsimile: (850) 224-8551
Email: ghunter@hgslaw.com;
gperko@hgslaw.com; mjazil@hgslaw.com;
angelinan@hgslaw.com;
jenniferm@hgslaw.com;
mandyf@hgslaw.com
***Attorneys for Defendant Sugar Cane Growers Cooperative of Florida***

Jennifer A. McLoone, Esq.
Shook, Hardy & Bacon L.L.P.
Citigroup Center, Suite 3200
201 S. Biscayne Blvd.
Miami, FL 33131
Telephone: (305) 358-5171
Facsimile: (305) 358-7470
Email: jmcloone@shb.com
***Attorneys for Defendants Florida Crystals Corporation, Osceola Farms Co., and Okeelanta Corporation***

Mark D. Anstoetter, Esq.
David Brent Dwerlkotte, Esq.
Shook, Hardy & Bacon L.L.P.
2555 Grand Blvd.
Kansas City, MO 64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547
Email; manstoetter@shb.com;
dbdwerlkotte@shb.com
***Attorneys for Defendants Florida Crystals Corporation, Osceola Farms Co., and Okeelanta Corporation***
*Pro Hac Vice*

Joseph P. Klock, Jr., Esq.
Rasco Klock Perez Nieto PL
2555 Ponce de Leon Blvd., Suite 600
Coral Gables, FL 33134
Telephone: (305) 467-7100
Facsimile: (305) 675-7707
Email: jklock@rascoklock.com
***Attorneys for Defendants Florida Crystals Corporation, Osceola Farms Co., and Okeelanta Corporation***

David S. Dee, Esq.
Gardner, Bist, Bowden, Bush, Dee, LaVia & Wright, P.A.
1300 Thomaswood Drive
Tallahassee, FL 32308
Telephone: (850) 385-0070
Facsimile: (850) 385-5416
Email: ddee@gbwlegal.com
***Attorneys for Defendants Florida Crystals Corporation, Osceola Farms Co., and Okeelanta Corporation***

Mark A. Hendricks, Esq.
Forrest L. Andrews, Esq.
Lydecker Diaz, LLC
1221 Brickell Avenue, 19th Floor
Miami, FL 33131
Telephone: (305) 416-3180
Facsimile: (305) 416-3190
Email: mah@lydeckerdiaz.com;
fla@lydeckerdiaz.com; ih@lydeckerdiaz.com; adl@lydeckerdiaz.com
***Attorneys for Trucane Sugar Corporation***

Andrew S. Connell, Jr., Esq.
Litchfield Cavo, LLP
600 Corporate Drive, Suite 600
Fort Lauderdale, FL 33334
Telephone: (954) 689-3000
Facsimile: (954) 689-3001
Email: Connell@litchfieldcavo.com;
deatley@litchfieldcavo.com
***Attorneys for Defendant J & J AG Products, Inc.***