# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## CASE NO. 19-80730-CIV-SMITH

CLOVER COFFIE, et al.,

        Plaintiffs,

vs.

FLORIDA CRYSTALS CORPORATION, et al.,

        Defendants.

_____/

## ORDER GRANTING IN PART DEFENDANTS' MOTIONS TO DISMISS

This matter is before the Court on Defendants United States Sugar Corporation, Independent Harvesting, Inc., Sugarland Harvesting Co., Sugar Cane Growers Cooperative of Florida, Trucane Sugar Corporation, King Ranch, Inc. and J & J AG Products, Inc.'s (jointly "U.S. Sugar Defendants" or "U.S. Sugar") Motion to Dismiss Plaintiffs' First Amended Class Action Complaint [DE 81], Plaintiffs' response [DE 104], and U.S. Sugar's amended reply [DE 109]. Also before the Court is Defendants Florida Crystals Corporation, Osceola Farms Co., Okeelanta Corporation, and Trucane Sugar Corporation's (jointly "Florida Crystals Defendants" or "Florida Crystals") Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6) [DE 84], Plaintiffs' response [DE 105], and Florida Crystals' reply [DE 108]. Plaintiffs' Amended Complaint [DE 10], brought pursuant to the Class Action Fairness Act of 2005, seeks damages, medical monitoring, and injunctive relief on behalf of themselves and two putative classes for damages caused by Defendants' preharvest sugarcane burning. For the reasons set forth below, Defendants' motions are granted in part and denied in part.

## I.        THE AMENDED COMPLAINT

Defendants farm sugarcane on approximately 400,000 acres in the areas south and southeast of Lake Okeechobee and around the towns of Belle Glade, South Bay, Pahokee, Clewiston, Moore Haven, and others (the "Affected Area").[1]  (Am. Compl. ¶¶ 5-6.)  Defendants use a method for harvesting sugarcane that burns off the outer leaves of the sugarcane prior to harvesting.  (*Id.* at ¶¶ 1, 45.)  The preharvest burns generally occur during the six-month period from October through March.  (*Id.* at ¶ 46.)  The burns are done on 40 to 80 acre tracts of land at a time and are regulated by the Florida Forest Service.  (*Id.* at ¶ 47.)

This preharvest burning causes smoke, particulate matter ("PM"), dioxins, polycyclic aromatic hydrocarbons ("PAHs"), volatile organic compounds ("VOCs"), carbon monoxide, sulfur oxides, nitrogen oxides, ammonia, elemental carbon and organic carbon to migrate onto, to be deposited upon, and to contaminate Plaintiffs' and the proposed class members' land and to expose Plaintiffs and the proposed class members to these pollutants.  (*Id.* at ¶¶ 3, 50.)  The burning produces many hazardous compounds, including benzo[*a*]pyrene (classified by the International Agency for Research on Cancer ("IARC") as a confirmed human carcinogen), naphthalene (classified by IARC as a possible human carcinogen), acenaphthylene, acenaphthene, flourene, phenanthrene, anthracene, flouranthene, pyrene, benzo[*a*]anthracene (classified by IARC as a possible human carcinogen), benzo[*k*]flouranthene (classified by IARC as a possible human carcinogen), indenol[1,2,3-*cd*]pyrene (classified by IARC as a possible human carcinogen), benzol[*g,h,i*]perylene, formaldehyde, acetaldehyde, propionaldehyde, benzene, toluene, ethylbenzene, styrene, and *o,m,p*-xylene.  (*Id.* at ¶ 51.)  The smoke and ash (referred to as "black

---

[1] The Affected Area is more clearly defined in the Amended Complaint.  *See* Am. Compl. ¶ 6.

snow") from the preharvest burning travels through and gets deposited onto properties in the Affected Area, causing property damage, such as discoloration of buildings and cars, and causes medical conditions, such as respiratory problems, within the affected communities. (*Id.* at ¶ 52.) The burning also results in Plaintiffs being exposed to the pesticides used by Defendants. (*Id.* at ¶ 70.) Plaintiffs allege that there are green alternatives to preharvest burning that Defendants refuse to adopt. (*Id.* at ¶¶ 57-62.)

Plaintiff Coffie resides in and owns property in Belle Glade, Florida, which is in close proximity to many of Defendants' sugarcane fields. (*Id.* at ¶ 7.) Plaintiff Smith is a resident of and owns property in Clewiston, Florida, which is also in close proximity to many of Defendants' sugarcane fields. (*Id.* at ¶ 8.) Plaintiff Legrand resides in Belle Glade, Florida, also in close proximity to many of Defendants' sugarcane fields. (*Id.* at ¶ 9.) Legrand has been exposed to hazardous and dangerous pollutants from Defendants' sugarcane agriculture activities. (*Id.*)

Plaintiffs allege that the burning has led to a diminution of their property values and that they have suffered and continue to suffer damage to their property, unnecessary and substantial nuisance, and long-term health effects. (*Id.* at ¶¶ 56, 63.) Plaintiffs also allege that as a result of Defendants' burning activity the Affected Area has been prevented from growing economically and has been denied equal chance of benefitting from overall economic growth and from stimulus programs. (*Id.* at ¶ 75.) Plaintiffs allege that residents of the Affected Area are at a higher risk than the rest of the population for developing various diseases, including respiratory conditions, because of the increase in particulate matter as well as other compounds. (*Id.* at ¶¶ 76-83.)

Plaintiffs seek to certify two classes: (1) a Property Owner's Class consisting of "[a]ll persons and legal entities (past or present) who own or have owned real property located within the Affected Area during the applicable statute of limitations period, including the period

3

following the filing date of this action" and (2) a Medical Monitoring Class consisting of "[a]ll persons (past or present) who have resided in the Affected Area for at least one pre-harvest sugarcane burn season during the applicable statute of limitations period, including the period following the filing date of this action." (*Id.* at ¶¶ 122, 123.)

The Amended Complaint alleges seven counts against all Defendants: (1) negligence on behalf of the Property Owner Class; (2) strict liability for ultrahazardous activity on behalf of the Property Owner Class; (3) strict liability pursuant to section 376.313, Florida Statutes, on behalf of the Property Owner Class; (4) trespass on behalf of the Property Owner Class; (5) nuisance on behalf of the Property Owner Class; (6) medical monitoring on behalf of the Medical Monitoring Class; and (7) injunctive relief on behalf of both classes.

## II.   MOTION TO DISMISS STANDARD

The purpose of a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the facial sufficiency of a complaint. The rule permits dismissal of a complaint that fails to state a claim upon which relief can be granted. It should be read alongside Federal Rule of Civil Procedure 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although a complaint challenged by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff is still obligated to provide the "grounds" for his entitlement to relief, and a "formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

When a complaint is challenged under Rule 12(b)(6), a court will presume that all well-pleaded allegations are true and view the pleadings in the light most favorable to the plaintiff. *American United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1066 (11th Cir. 2007). However, once a court "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to

the assumption of truth," it must determine whether the well-pled facts "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). A complaint can only survive a 12(b)(6) motion to dismiss if it contains factual allegations that are "enough to raise a right to relief above the speculative level, on the assumption that all the [factual] allegations in the complaint are true." *Twombly*, 550 U.S. at 555. However, a well-pled complaint survives a motion to dismiss "even if it strikes a savvy judge that actual proof of these facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556.

## III.   DISCUSSION

U.S. Sugar makes three arguments in support of dismissal: (1) Plaintiffs lack Article III standing; (2) all of Plaintiffs' claims are barred by Florida's Right to Farm Act ("RTFA" or "Act"), Fla. Stat. § 823.14; and (3) Plaintiffs' claim for injunctive relief is barred by the primary jurisdiction doctrine. Florida Crystals joins in U.S. Sugar's standing and RTFA arguments and also makes five additional arguments: (1) all of Plaintiffs' claims are barred by Florida's primary jurisdiction doctrine; (2) Count III, for violation of section 376.313, Florida Statutes fails to state a claim; (3) Count II fails to state a claim because preharvest burning is not an ultrahazardous activity; (4) Count VI for medical monitoring fails to state a claim; and (5) Count VII for injunctive relief fails to state a claim. U.S. Sugar has joined in Florida Crystals' arguments regarding ultrahazardous activity and medical monitoring.

### A.   Standing

Defendants maintain that Plaintiffs lack standing because the Amended Complaint lacks any allegations establishing that at least one of the named Plaintiffs has standing to sue each of the named Defendants. More specifically, Defendants argue that the Amended Complaint lacks any plausible allegations to trace Plaintiffs' alleged injuries to all Defendants or to any particular

Defendant.

Article III standing requires that a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, -- U.S. --, 136 S. Ct. 1540, 1547 (2016). At the pleading stage, a "plaintiff must clearly allege facts demonstrating each element." *Id.* (internal quotation marks omitted).

Defendants argue that Plaintiffs have not shown that their injuries are fairly traceable to the challenged conduct of Defendants. Specifically, Plaintiffs Coffie and Smith, as representatives of the Property Owner Class, have failed to allege facts demonstrating that their alleged property damage is due to any particular Defendant or to all Defendants. Defendants maintain that the proximity of Coffie's and Smith's properties to Defendants' fields is insufficient to establish that either Plaintiff was harmed by the actions of any specific Defendant or all Defendants. Plaintiff Legrand, as representative of the Medical Monitoring Class, has failed to allege that he was exposed to pollutants from preharvest burning by any particular Defendant, let alone all Defendants. Thus, Defendants argue that Plaintiffs have failed to allege sufficient facts to plausibly trace their alleged property damage and exposure to each particular Defendant.

In response, Plaintiffs argue that Defendants have impermissibly attempted to equate standing's "fairly traceable" prong to proximate cause. While Plaintiffs are correct that the two are not the same, *see Loggerhead Turtle v. Cty. Council of Volusia Cty., Fla.*, 148 F.3d 1231, 1251 n.23 (11th Cir. 1998) (stating that "no authority even remotely suggests that proximate causation applies to the doctrine of standing"), Plaintiffs must still show that the injuries they allege are fairly traceable to each Defendant. Thus, Plaintiff Legrand, as the representative of the Medical Monitoring Class, must plead that he was exposed to pollutants from every Defendant and

Plaintiffs Coffie and Smith, as the representatives of the Property Owner Class, must plead that between the two of them their properties were damaged by smoke and ash from all of the Defendants' preharvest burning activities.

Plaintiffs argue that case law does not require them to prove to a scientific certainty that a defendant's waste caused the precise harm suffered by Plaintiffs. Plaintiffs argue that they need only show that a defendant discharges a pollutant that causes or contributes to the kinds of injuries alleged in the area of concern. However, the cases Plaintiffs rely upon for this proposition are not binding on this Court and all concern the discharge by one or two defendants of pollutants into waterways. *See Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 161 (4th Cir. 2000) (involving harm to a waterway within the acknowledged range of defendant's discharge); *San Francisco Baykeeper v. W. Bay Sanitary Dist.*, 791 F. Supp. 2d 719, 748 (N.D. Cal. 2011) (involving harm to San Francisco Bay); *Maine People's All. v. Holtrachem Mfg. Co., LLC.*, 211 F. Supp. 2d 237, 253 (D. Me. 2002) (involving harm to a waterway by the type of waste released by defendant). As discussed below, these cases are inapplicable because of the significant factual differences from the instant case.

There is nothing in the Amended Complaint showing that each of the Plaintiffs has been harmed by all of the Defendants. While Plaintiffs argue that the smoke and ash produced by Defendants travels for miles, there are no such allegations in the Amended Complaint. Nor are there any allegations as to which direction the smoke and ash travel.[2] Further, there is nothing in

---

[2] While the Court recognizes that wind patterns change, it does not seem unreasonable that certain wind patterns are more common than others. Thus, it seems just as reasonable to assume that, due to the combination of geography and wind patterns, some properties in the Affected Area might never be affected by smoke from a particular farm as it would be to assume that all properties in the Affected Area have been affected by a particular farm.

the Amended Complaint that indicates that between Coffie and Smith their properties have been harmed by all Defendants. Nor is there anything in the Amended Complaint that would indicate that Legrand has been exposed to pollutants from burning by all Defendants. Unlike the plaintiffs in the cases cited by Plaintiffs, who sued one or two defendants, Plaintiffs here have sued virtually an entire industry involving what amounts to dozens of actual sugarcane growers.[3] Additionally, the cases cited by Plaintiff all involved waterways which have a unidirectional flow, unlike wind patterns, which change. There is nothing in the Amended Complaint alleging that Plaintiffs have been exposed to smoke and ash from all of these dozens of sugarcane producers.[4]

Thus, Plaintiffs have failed to adequately allege standing to sue each Defendant. Plaintiffs may be able to correct this pleading deficit through amendment and the Court will grant them leave to do so. Consequently, Defendants' motions are granted as to standing but Plaintiffs are granted leave to replead.

### B. Florida's Right to Farm Act

Next, the Defendants argue that all of Plaintiffs' claims are barred by the RTFA, which protects longtime farm operations, including preharvest sugarcane burning, from nuisance and similar claims. Defendants argue that Plaintiffs have attempted to repackage their claims to avoid the RTFA by labeling all but one of the claims as something other than nuisance claims. In response, Plaintiffs argue that Defendants ignore the plain language of the Act that creates

---

[3] According to the Amended Complaint, Defendant Sugar Cane Growers Cooperative of Florida is composed of about 44 member farms that grow sugarcane in the area south of Lake Okeechobee.

[4] In its response, Plaintiffs argue that they have "sufficiently alleged: all of the Defendants' burning activity discharges pollutants that cause or contribute to the injuries alleged by each Named Plaintiff; that each of them burns in the area the Complaint is concerned with and affect the Named Plaintiffs . . ." (Resp. at 8.) The Amended Complaint, however, does not contain such clear allegations.

exceptions to the RTFA's protections.

The RTFA states that its purpose is to "protect reasonable agricultural activities conducted on farm land from nuisance suits." Fla. Stat. § 823.14(2).  The RTFA further states:

**(4) Farm operation not to be or become a nuisance.—**

(a) No farm operation which has been in operation for 1 year or more since its established date of operation and which was not a nuisance at the time of its established date of operation shall be a public or private nuisance if the farm operation conforms to generally accepted agricultural and management practices, except that the following conditions shall constitute evidence of a nuisance:

1. The presence of untreated or improperly treated human waste, garbage, offal, dead animals, dangerous waste materials, or gases which are harmful to human or animal life.

2. The presence of improperly built or improperly maintained septic tanks, water closets, or privies.

3. The keeping of diseased animals which are dangerous to human health, unless such animals are kept in accordance with a current state or federal disease control program.

4. The presence of unsanitary places where animals are slaughtered, which may give rise to diseases which are harmful to human or animal life.

Fla. Stat. § 823.14(4).  The RTFA defines "farm operation" as "all conditions or activities . . . which occur on a farm in connection with the production of farm . . . products and includes, but is not limited to, . . . the generation of noise, odors, dust, and fumes; . . . the application of chemical fertilizers, conditioners, insecticides, pesticides, and herbicides."  Fla. Stat. § 823.14(3)(b).

Defendants maintain that sugarcane burning falls squarely within the RTFA: it is a generally accepted agricultural management practice, as evidenced by the fact that it is statutorily permitted and regulated by the Florida Forest Service, and there are no allegations that preharvest burning was a nuisance to anyone at the time these farm operations commenced.  Plaintiffs argue that their claims fall under the exception for "dangerous waste materials, or gases which are

harmful to human or animal life"; that sugarcane burning is not an acceptable agricultural practice; and even if the Act applied, it would only bar Counts IV and V.

Contrary to Plaintiffs' arguments, Defendants' preharvest burning does not fall within the exceptions to the Act. As Defendants maintain, the legislative history of the RTFA (Senate Staff Analysis and Economic Impact Statement [DE 109-2]) indicates that the exceptions in paragraph (4) of the Act are about sanitary conditions.   Further, the language of the exceptions is all about sanitary issues – waste, garbage, disease, etc. The legislative history also refers to Chapter 386 of the Florida Statutes, which addresses sanitary nuisances.  In the discussion of amendments to the Act, it notes: "Provisions of chapter 386, F.S., alluded to in paragraph (4) of [the act] which creates a public nuisance *for sanitary* reasons are specifically enumerated in this committee substitute." (Senate Staff Analysis and Economic Impact Statement at 3 & 6 (emphasis added).) Unlike the RTFA, section 386.041 includes in its list "*air pollutants*, gases, and noisome odors which are harmful to human life or animal life."  Fla. Stat. § 386.041(1)(a) (emphasis added).  Thus, the omission of this term from the RTFA indicates that it was purposefully excluded when portions of chapter 386 were incorporated into the RTFA.  *See Headley v. City of Miami*, 215 So. 3d 1, 9 (Fla. 2017) (stating that under the principle of *expressio unius, est exclusio alterius*, the mention of one thing implies the exclusion of another).

Again, contrary to Plaintiffs' argument, preharvest burning is an acceptable agricultural practice.  First, while not explicitly pled, the Amended Complaint implies the practice has been going on for decades. Second, Plaintiffs' Amended Complaint pleads that the practice is regulated by the Florida Forest Service. (Am. Compl. ¶ 47.) The fact that Plaintiffs have pled that there are better harvesting practices does not make preharvest burning an unacceptable agricultural practice. Additionally, the Court does not have to take as true Plaintiffs conclusory facts alleging that

preharvest burning is not an acceptable practice. Thus, the RTFA applies and, at a minimum, the Act bars Counts IV and V.[5]

Defendants argue that the RTFA bars all of Plaintiffs' claims, not just the nuisance and trespass claims, because all the claims are essentially nuisance claims. Defendants rely on cases from other state courts in which the state courts were interpreting their own state's right to farm acts. First, these cases are not binding on the Court. Second, the claims in these cases were usually nuisance claims relabeled as trespass claims. *See Himsel v. Himsel*, 122 N.E.3d 935, 945 (Ind. Ct. App. 2019) (finding that pleading trespass was just an artful attempt to avoid the Indiana RTFA); *Ehler v. LVDVD, L.C.*, 319 S.W.3d 817, 823-24 (Tex. Ct. App. 2010) (finding that trespass claim based on same facts as nuisance claim was barred by Texas RTFA); *Rancho Viejo LLC v. Tres Amigos Viejos LLC*, 123 Cal. Rptr. 2d 479, 488 (Cal. Ct. App. 2002) (holding that "a plaintiff cannot avoid the immunity provided by the [right to farm] statute by simply recharacterizing or relabeling the conduct in the guise of trespass to bring it outside the ambit of the statute.").

That is not the case here. For example, Plaintiffs' negligence claim includes allegations that Defendants' employees were negligent in the manner in which they conducted preharvest burning; thus, the negligence claim is not based solely on the nuisance aspect of preharvest burning. Plaintiffs also allege a statutory claim under section 376.313(3), a strict liability claim based on ultrahazardous activity, a medical monitoring claim, and a claim for injunctive relief. These are not merely relabeled nuisance claims. Therefore, the Court declines to find that the RTFA bars all of Plaintiffs' claims.

### C.    Primary Jurisdiction Doctrine

---

[5] As stated earlier, Plaintiffs concede that if the RTFA applies, it would bar Counts IV and V.

U.S. Sugar moves to dismiss Plaintiffs' claim for injunctive relief, Count VII, pursuant to the primary jurisdiction doctrine. Florida Crystals argues that all of Plaintiffs' claims are barred by the primary jurisdiction doctrine. All Defendants rely primarily upon *Flo-Sun, Inc. v. Kirk*, 783 So. 2d 1029, 1036–37 (Fla. 2001). Plaintiffs respond that *Kirk* does not apply to their claims.

> The Florida Supreme Court has described the doctrine of primary jurisdiction:

> The doctrine of primary jurisdiction dictates that when a party seeks to invoke the original jurisdiction of a trial court by asserting an issue which is beyond the ordinary experience of judges and juries, but within an administrative agency's special competence, the court should refrain from exercising its jurisdiction over that issue until such time as the issue has been ruled upon by the agency. . . . The doctrine of primary jurisdiction enables a court to have the benefit of an agency's experience and expertise in matters with which the court is not as familiar, protects the integrity of the regulatory scheme administered by the agency, and promotes consistency and uniformity in areas of public policy. . . . It is also important to note that the application of the doctrine of primary jurisdiction is a matter of deference, policy and comity, not subject matter jurisdiction.

*Kirk*, 783 So. 2d at 1036–38 (footnote and citations omitted). The Florida Supreme Court went on to set out five exceptions to the application of the doctrine: (1) the complaint demonstrates some compelling reason why the Florida Administrative Procedure Act ("FAPA") does not avail the complainants in their grievance against the agency; or (2) the complaint alleges a lack of general authority in the agency and, if it is shown, that the FAPA has no remedy for it; or (3) illegal conduct by the agency is shown and, if that is the case, that the FAPA cannot remedy that illegality; or (4) agency ignorance of the law, the facts, or public good is shown and, if any of that is the case, that the FAPA provides no remedy; or (5) a claim is made that the agency ignores or refuses to recognize related or substantial interests and refuses to afford a hearing or otherwise refuses to recognize that the complainants' grievance is cognizable administratively. *Id*. at 1038.

The *Kirk* plaintiffs, including a former governor of Florida who brought the action "individually and in the name of the State of Florida," pled a nuisance action, pursuant to section

60.05, Florida Statutes, against the defendants, including some of the instant Defendants, seeking damages and to enjoin the nuisance causing conduct. (*Kirk* Compl. [DE 84-1].)[6] The conduct at issue included introducing toxins and pollutants into the environment via chemical fertilizers and harvesting crops in a manner which includes the use of intentionally set fires which release smoke and other particulate matter into the air.[7] (*Id.*) As a result of the defendants' actions, plaintiffs alleged they had suffered a diminution in value of property, respiratory distress, and skin lesions. (*Id.*) The *Kirk* court held that despite the availability of a public nuisance action, the doctrine of primary jurisdiction counseled in favor of having an administrative agency address the issues raised. *Kirk*, 783 So. 2d at 1041. In a footnote, the *Kirk* court did note that "although [plaintiffs'] claims under a public nuisance theory were barred, [plaintiffs] were not precluded from bringing an individual, private right of action for personal injury or property damage allegedly resulting from [defendants'] activities." *Kirk*, 783 So. 2d at 1033 n.2.

Plaintiffs argue that *Kirk* does not apply because it involved a public nuisance claim, while Plaintiffs have brought a private nuisance claim. In support, Plaintiff relies on *Sher v. Raytheon Co.*, No. 8:08-CV-889-T-26TGW, 2008 WL 2756570 (M.D. Fla. July 14, 2008)[8] and *Lombardozzi*

---

[6] Florida Crystals has attached a copy of the Second Amended Complaint in *Kirk*. This Court may take judicial notice of the pleadings in *Kirk*. *See* Fed. R. Evid. 201(b); *Horne v. Potter,* 392 F. App'x 800, 802 (11th Cir. 2010) (noting that a district court may take judicial notice of pleadings and orders in a prior case without converting a motion to dismiss into a motion for summary judgment because the pleadings and orders were public records that were not subject to reasonable dispute).

[7] While the second amended complaint alleges these activities, the *Kirk* court did not explicitly mention preharvest burning.

[8] On the same day, the *Sher* court similarly decided a companion case, *Swartout v. Raytheon Co.*, No. 808-CV-890-T-26EAJ, 2008 WL 2756577 (M.D. Fla. July 14, 2008), which sought damages for negligence, strict liability pursuant to section 376.205, Florida Statutes, strict liability for abnormally hazardous activity, private nuisance, trespass, and medical monitoring.

*v. Taminco US Inc.*, No. 3:15CV533/MCR/EMT,  2016 WL 4483856 (N.D. Fla. Aug. 24, 2016).

In both of those cases, the district courts denied application of the primary jurisdiction doctrine to

claims for private nuisance and negligence.  In *Sher* it also declined to apply the doctrine to claims

for trespass and medical monitoring,  among others.  In *Lambardozzi*, the court declined to apply

the primary jurisdiction doctrine to damages claims because the Florida Department of

Environmental Protection ("FDEP") "has no authority to vindicate individual property rights . . .

and it cannot provide Plaintiffs with any form of monetary relief."  2016 WL 4483856, at *2.  It

further found that "[t]he questions that predominate Plaintiffs' damages claims are within the

conventional experience of judges and juries, and do not require the expertise and specialized

knowledge of the FDEP to resolve."  *Id.*  Similarly,  in *Sher*, the court declined to apply the primary

jurisdiction doctrine because the plaintiffs sought "damages for the loss of use and decrease in

property value caused by the contaminants, not the general enforcement of the state's pollution

laws in the form of an adjudication  of a public  nuisance."  *Sher*, 2008 WL 2756570,  at *3.

U.S. Sugar argues that Plaintiffs' claim for injunctive relief is barred by the primary

jurisdiction  doctrine and *Kirk*, while Florida Crystals argues that all of Plaintiffs' claims are barred

under the primary jurisdiction  doctrine and *Kirk*.  Florida Crystals argues that all of the claims

relate to preharvest burning  which, as Plaintiffs allege in the Amended Complaint, is regulated by

the Florida Forest Service.  Further, air quality in Florida is monitored and regulated by the FDEP,

which sets standards for air quality pursuant to sections 403.804 and 403.8055, Florida Statutes.

Florida Crystals maintains that Plaintiffs have failed to allege that they have complied with the

FAPA and that Florida law does not allow claims like those presented here to bypass administrative

remedies.  Additionally, Florida Crystals argues, Plaintiffs have not alleged a "compelling reason"

for finding  those remedies inadequate.

This Court agrees with the reasoning in *Sher* and *Lambardozzi*. Plaintiffs' claims for negligence, strict liability for ultrahazardous activity, strict liability for violation of section 376.313, and medical monitoring are not barred by the primary jurisdiction doctrine.[9] None of these claims are beyond the ordinary experience of judges and juries. The negligence and strict liability claims are basic tort claims well within the ordinary experience of the Court. Additionally, it does not appear that the administrative process would enable Plaintiffs to recover damages. Further, as alleged, these claims do not fall within the "special competence" of the Florida Forest Service or the FDEP. While one might argue that Plaintiff's claim under section 376.313 does fall within the special competence of the FDEP, the statute explicitly provides for a private cause of action, without requiring a plaintiff to first pursue administrative remedies. Additionally, because it is a strict liability statute, applying the statute does not require any "special competence." Consequently, Counts I, II, III, and VI are not barred by the primary jurisdiction doctrine.[10]

Finally, both groups of Defendants argue that the primary jurisdiction doctrine bars Plaintiffs' claims for injunctive relief, by which Plaintiffs seek to enjoin "[a]ll future pre-harvest burning with the Affected Area." (Am. Compl. ¶ 189.) U.S. Sugar argues section 590.02(1)(a), Florida Statutes, gives the Florida Forest Service "exclusive authority to require and issue authorizations for . . . agricultural . . . burning." Plaintiffs make two arguments in response: (1) this is not a claim to enjoin the Florida Forest Service from issuing the burn permits; it is a claim to stop Defendants from seeking them and (2) Plaintiffs' claims are based on private nuisance and

---

[9] Because the Court already found that Counts IV and V are barred by the RTFA, it need not address whether they are also barred by the primary jurisdiction doctrine.

[10] The U.S. Sugar Defendants essentially concede this conclusion in their papers. *See* U.S. Sugar Reply at 8-9.

other "private damages" claims.  While Plaintiffs argue that the injunctive relief sought is for "private damages" claims, the *Kirk* plaintiffs essentially sought the same relief – an injunction against the growers, not the Florida Forest Service – and the *Kirk* court found that it was appropriate to apply the primary jurisdiction doctrine.  As to Plaintiffs' second argument, U.S. Sugar maintains that despite Plaintiffs' nomenclature, their claims are public nuisance claims.

The Florida Supreme Court has stated "[a] public nuisance violates public rights, subverts public order, decency or morals, or causes inconvenience or damage to the public generally." *Thompson v. State*, 392 So. 2d 1317, 1318 (Fla. 1981) (quoting *Orlando Sports Stadium, Inc. v. State ex rel. Powell*, 262 So. 2d 881, 884 (Fla.1972)); *see also Prior v. White*, 180 So. 347, 355 (Fla. 1938) (stating "[a] private nuisance is anything done to the hurt or annoyance of lands, tenements or hereditaments of another. A common or public nuisance affects the public. It is such an inconvenience or troublesome offense as annoys the whole community, in general, and not merely some particular person. A private nuisance is a private wrong done to an individual and must be redressed by private action.").  Plaintiffs bring this suit on behalf of themselves and two proposed classes, one of which is defined as "[a]ll persons (past or present) who have resided in the Affected Area for at least one pre-harvest sugarcane burn season during the applicable statute of limitations period, including the period following the filing date of this action."  Thus, despite Plaintiffs' labels, the inclusion of all persons who have resided in the Affected Area makes these claims for a public nuisance – a nuisance that causes damage or inconvenience to the public generally.  Moreover, Plaintiffs have actually alleged that the "population of the Affected Area exceeds 40,000 people, and a substantial majority of those people have been affected by

Defendants' wrongful conduct."[11]   (Am. Compl. ¶ 125.)

Thus, this case would appear to be nearly identical to *Kirk* as far as the claim for injunctive relief.   Accordingly, the Court finds it appropriate to dismiss without prejudice Count VII, Plaintiffs' claim for injunctive relief, so that Plaintiffs can avail themselves of the administrative process.

**D.      Section 376.313, Florida Statutes**

Florida Crystals seeks to dismiss Count III for violation of section 376.313(3), Florida Statutes.   Florida Crystals maintains that Plaintiffs have failed to allege that there has been any discharge or pollution covered by section 376.313.   Plaintiffs allege that the "pollutants, pesticides, fungicides and contaminants that are contained in the 'black snow' are a prohibited discharge under § 376.313."   (Am. Compl. ¶ 153.)

Section 376.313(3) states, in part:

> Except as provided in s. 376.3078(3) and (11), nothing contained in ss. 376.30-
> 376.317 prohibits any person from bringing a cause of action in a court of
> competent jurisdiction for all damages resulting from a discharge or other condition
> of pollution covered by ss. 376.30-376.317 and which was not authorized pursuant
> to chapter 403.

Fla. Stat. § 376.313(3).   The statute defines "discharge" as including, but not limited to "any spilling, leaking, seeping, pouring, misapplying, emitting, emptying, releasing, or dumping of any

---

[11] Plaintiffs make some additional arguments based on the allegations in their Amended Complaint (Am Compl. ¶¶ 111-121) about the heavy political influence Defendants and the sugar industry have. While not clear, it appears that Plaintiffs are trying to argue that this influence would make this case fall into one of the exceptions to the primary jurisdiction doctrine.   However, the allegations and arguments are too vague and conclusory to establish that this case actually falls within one of those exceptions.   Second, the agency at issue her is the Florida Forest Service, while Plaintiffs' allegations in the Amended Complaint all address political influence at the national level.   Thus, Plaintiffs have failed to adequately plead, or argue, that the primary jurisdiction doctrine should not apply here.

pollutant or hazardous substance which occurs and which affects lands and the surface and ground waters of the state not regulated by ss. 376.011-376.21." Fla. Stat. § 376.301(13). Under the statute, "hazardous substances" are defined as those substances that are defined as hazardous substances under the federal Comprehensive Environmental Response, Compensation and Liability Act of 1980 (CERCLA). Fla. Stat. § 376.301(21). The term "pollution" is defined as

> the presence on the land or in the waters of the state of pollutants in quantities which are or may be potentially harmful or injurious to human health or welfare, animal or plant life, or property or which may unreasonably interfere with the enjoyment of life or property, including outdoor recreation.

Fla. Stat. § 376.301(37). The term "pollutant" is defined to include "any 'product' as defined in s. 377.19, pesticides, ammonia, chlorine, and derivatives thereof, excluding liquefied petroleum gas." Fla. Stat. 376.301(36). Section 377.19(23) defines "product" as "a commodity made from oil or gas."

Florida Crystals argues that Plaintiffs have failed to allege a discharge of any "pollutant" at levels that are or may be potentially harmful or injurious to human health or welfare. Thus, they maintain that Plaintiffs have failed to state a cause of action. The Amended Complaint alleges that the smoke created by preharvest burning contains numerous "pollutants;" however, the only listed content of the smoke explicitly covered by the definition of "pollutant" is ammonia. Plaintiffs argue that the definition of "pollutant" is broader than the statutorily listed items because it uses the term "includes" before the explicitly listed items. Furthermore, the statute "shall be construed liberally." Fla. Stat. § 376.315. Thus, the Court agrees with Plaintiffs that they have adequately alleged the emission of pollutants.

Florida Crystals also argues that Plaintiffs have failed to allege that that the pollutants have impacted any land or water. While Plaintiffs have not alleged that the pollutants are directly

18

discharged onto land or water, Plaintiffs have alleged that the pollutants in the smoke impact land when the pollutants rain down as "black snow." They have also alleged that "toxic pollutants, including the introduction of noxious smoke replete with benzene and formaldehyde, are discharged, blown through, and deposited onto Plaintiffs' real properties." (Am. Compl. ¶ 56.) This is sufficient to allege a claim under the statute. Consequently, the Motion to Dismiss Count III is denied.

### E.    Ultrahazardous Activity

Defendants move to dismiss Plaintiffs' strict liability claim for ultrahazardous activity. Defendants maintain that Plaintiffs have failed to plead any facts in support of the elements of the cause of action. Further, Defendants argue that because preharvest burning is authorized and regulated by the state, it cannot be deemed ultrahazardous.

To determine whether an activity is ultrahazardous, courts weigh the following factors:

> (1) whether the activity involves a high degree of risk of harm to the property of others; (2) whether the potential harm is likely to be great; (3) whether the risk can be eliminated by the exercise of reasonable care; (4) whether the activity is a matter of common usage; (5) whether the activity is inappropriate to the place where it is conducted; and (6) whether the activity has substantial value to the community.

*Hutchinson v. Capeletti Bros.*, 397 So. 2d 952, 953 (Fla. 4th DCA 1981). Even if the activity has substantial value to the community, if it also involves a high degree of risk of harm to the property of others, it may be appropriate to impose liability. *Id.* at 953-54. However,

> Liability for engaging in such activity, in turn, "is limited to the kind of harm, the possibility of which makes the activity abnormally dangerous," *Restatement (Second) of Torts § 519(2)* (1976); stated differently, "[t]he rule of strict liability ... applies only to harm that is within the scope of the abnormal risk that is the basis of the liability." *Restatement (Second) of Torts* § 519 comment e (1976).

*Great Lakes Dredging & Dock Co. v. Sea Gull Operating Corp.*, 460 So. 2d 510, 513 (Fla. 3d DCA 1984).

Defendants argue that the danger Plaintiffs complain of, the pollution caused by the burning, is not the type of harm that makes burning abnormally dangerous. Plaintiffs respond that fire is often considered an ultrahazardous activity and that they have alleged harm to their property. However, the risk that makes the burning potentially ultrahazardous is the potential spread of the fire. That is not the harm alleged by Plaintiffs. Plaintiffs have alleged property damage in the form of diminished property values due to discoloration of buildings and cars and because the Affected Area has lost out on economic growth opportunities. However, these harms are not the kind of harms that make burning abnormally dangerous. *Compare Great Lakes Dredging*, 460 So. 2d at 513 (finding that excessive noise and resulting economic loss from canceled hotel reservations were entirely outside the abnormal risk of physical harm posed by the defendant's alleged ultrahazardous activity of rock crushing because the abnormal risk created was the potential of the machine to spew out loose rocks, topple over, cause ground tremors, or physically injure persons or property in the area) *with Hutchinson*, 397 So. 2d at 953 (finding that damages to nearby residential property caused by pile driving was within the abnormal risk created by pile driving). Plaintiffs have failed to adequately allege a strict liability claim for ultrahazardous activity.[12] Consequently, Count II is dismissed with prejudice because nothing in the Amended Complaint indicates that Plaintiffs could allege the type of harm that makes burning abnormally dangerous.

## F.    Medical Monitoring

Finally, Defendants seek to dismiss Plaintiffs' medical monitoring claim, Count VI, for

---

[12] While Defendants also argue that preharvest burns cannot be ultrahazardous because they are permitted and regulated by the State, the Court declines to make such a broad finding. It certainly seems possible that a preharvest burn that spread to a neighboring property might be considered an ultrahazardous activity despite the regulation.

failure to state claim.

In Florida:

> a trial court may use its equitable powers to create and supervise a fund for medical monitoring purposes if the plaintiff proves the following elements:
>
> > (1) exposure greater than normal background levels; (2) to a proven hazardous substance; (3) caused by the defendant's negligence; (4) as a proximate result of the exposure, plaintiff has a significantly increased risk of contracting a serious latent disease; (5) a monitoring procedure exists that makes the early detection of the disease possible; (6) the prescribed monitoring regime is different from that normally recommended in the absence of the exposure; and (7) the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles.

*Petito v. A.H. Robins Co.*, 750 So. 2d 103, 106–07 (Fla. 3d DCA 1999) (quoting *Barnes v. The American Tobacco Co*., 161 F.3d 127, 138–39 (3d Cir.1998)).

Defendants contend that Plaintiffs have failed to allege facts to support several elements of a medical monitoring claim. Specifically, Plaintiffs have failed to allege any exposure that would raise their claim beyond the level of speculation; that Defendants' preharvest burning is the cause of the any significant increase in pollution concentrations; that Defendants' activities create an increased risk of any health condition; that any Plaintiffs have a latent condition requiring monitoring; and that a monitoring procedure exists that is different from that normally recommended and is reasonably necessary under contemporary scientific principles. Plaintiffs respond that they have adequately pled that air quality studies show that particulate matter is 50% higher during burning season than at other times, which is sufficient to show that Plaintiffs have been exposed to greater than normal background levels.

The Court agrees with Plaintiffs that they have sufficiently pled the first three elements of their claim. Plaintiffs have not, however, adequately pled the remaining elements. A review of

the Amended Complaint indicates that Plaintiffs have merely pled the elements of the claim without supporting facts. Plaintiffs have not pled any facts establishing that they have an increased risk of contracting a serious latent disease; that a monitoring procedure exists that makes early detection of the disease possible; that the prescribed monitoring regime is different from that normally recommended in the absence of the exposure; and that the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles. Thus, Plaintiffs have merely pled a formulaic recitation of elements four through seven of their medical monitoring claim. Under *Iqbal* and *Twombly*, this is insufficient. Consequently, Count VI is dismissed without prejudice with leave to replead.

Accordingly, it is

**ORDERED** that Defendants' United States Sugar Corporation, Independent Harvesting, Inc., Sugarland Harvesting Co., Sugar Cane Growers Cooperative of Florida, Trucane Sugar Corporation, King Ranch, Inc. and J & J AG Products, Inc's Motion to Dismiss Plaintiffs' First Amended Class Action Complaint [DE 81] and Defendants Florida Crystals Corporation, Osceola Farms Co., Okeelanta Corporation, and Trucane Sugar Corporation's Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6) [DE 84] are **GRANTED in part and DENIED in part:**

1.    Plaintiffs' Amended Complaint is **DISMISSED** for lack of standing. Plaintiffs are granted leave to replead their standing allegations.

2.    Counts II, IV, and V are **DISMISSED with prejudice.**

3.    Count VI is **DISMISSED without prejudice** with leave to replead.

4.    Count VII is **DISMISSED without prejudice** to permit Plaintiffs to pursue their administrative remedies.

5.    Florida Crystals' Motion [DE 84] is **DENIED** as to Count III.

      6.      Plaintiffs shall file a Second Amended Complaint in accordance with this order by **May 22, 2020.** Plaintiffs and their counsel shall be guided by the dictates of Federal Rule of Civil Procedure 11 in drafting their Second Amended Complaint.

      **DONE and ORDERED** in Fort Lauderdale, Florida, this 8th day of May, 2020.

_____

RODNEY SMITH
UNITED STATES DISTRICT JUDGE

cc:    All Counsel of Record