# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

WILLIAM ARMSTRONG, GLORIA ATKINS,
JAMES BROOKS, CLOVER COFFIE, DEBRA
JONES, SHANTE LEGRAND, DONALD                   Case No. 19-cv-80730-RS
MCLEAN, ROBERT REIMBOLD, ELIJAH
SMITH, and LINDA WELCHER, each individually      CLASS ACTION
and on behalf of all others similarly situated;

       Plaintiffs,                                  Hon. Rodney Smith

vs.

UNITED STATES SUGAR CORPORATION,
a Delaware corporation; SUGAR CANE
GROWERS COOPERATIVE OF FLORIDA,
a Florida not for profit corporation; FLORIDA
CRYSTALS CORPORATION, a Delaware
corporation; OKEELANTA CORPORATION,
a Delaware corporation; OSCEOLA FARMS CO.,
a Florida corporation; SUGARLAND HARVESTING
CO., a Florida not for profit corporation;
TRUCANE SUGAR CORPORATION,
a Florida corporation; INDEPENDENT
HARVESTING, INC., a Florida corporation; and
J & J AG PRODUCTS, INC., a Florida corporation;

       Defendants

_____

**MOTION OF DEFENDANTS UNITED STATES SUGAR CORPORATION,
INDEPENDENT HARVESTING, INC., SUGARLAND HARVESTING CO., SUGAR
CANE GROWERS COOPERATIVE OF FLORIDA, TRUCANE SUGAR
CORPORATION, AND J & J AG PRODUCTS, INC.
TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT AND
SUPPORTING MEMORANDUM OF LAW**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................... 1

BACKGROUND ................................................................................................... 3

ARGUMENT ....................................................................................................... 4

I.    Plaintiffs Have Not Cured The Article III Standing Deficiencies. .................................... 4

    A.    Plaintiffs Have Not Plausibly Traced Cane Ash To Each Defendant.................... 5

    B.    Plaintiffs Have Not Adequately Alleged The Actual Presence Of Injurious Or Any Other Level Of Particulate Matter And Other Pollutants, Let Alone Plausibly Traced Those Pollutants To Each Defendant. ........................... 8

II.    The SAC Fails To State A Battery Claim. ........................................................ 12

    A.    The RTFA Bars Plaintiffs' Battery Claim. ......................................... 13

    B.    Plaintiffs Do Not Allege The Requisite Intent To State A Claim For Battery. ............................................................................................. 14

CONCLUSION ................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adinolfe v. United Techs. Corp.*,
    768 F.3d 1161 (11th Cir. 2014) ............................................................8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...........................................................................4, 11

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...........................................................................4, 11

*Bishop v. Hybud Equip. Corp.*,
    536 N.E.2d 694 (Ohio Ct. App. 1988)...................................................13

*Bryant v. Avado Brands, Inc.*,
    187 F.3d 1271 (11th Cir. 1999) ..............................................................9

*Campos v. I.N.S.*,
    32 F. Supp. 2d 1337 (S.D. Fla. 1998) ...................................................11

*Chorak v. Naughton*,
    409 So. 2d 35 (Fla. Dist. Ct. App. 1981) ..............................................14

*City of Miami v. Sanders*,
    672 So. 2d 46 (Fla. Dist. Ct. App. 1996) ..............................................14

*Coffie v. Florida Crystals Corp.*,
    2020 WL 2739724 (S.D. Fla. May 8, 2020) ................................. *passim*

*First Nationwide Bank v. Gelt Funding Corp.*,
    27 F.3d 763 (2d Cir. 1994)....................................................................11

*Hoyte v. Stauffer Chem. Co.*,
    2002 WL 31892830 (Fla. Cir. Ct. Nov. 2, 2002)...................................14

*Johnson v. Paynesville Farmers Union Co-op Oil Co.*,
    817 N.W.2d 693 (Minn. 2012)..............................................................13

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)...........................................................................4, 8

*Major v. Astrazeneca, Inc.*,
    2006 WL 2640622 (N.D.N.Y. Sept. 13, 2006) .....................................15

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Nebraska v. EPA*,
    331 F.3d 995 (D.C. Cir. 2003)...............................................................................9

*In re Oil Spill by the Oil Rig Deepwater Horizon*,
    2011 WL 4575696 (E.D. La. Oct. 4, 2011) .......................................................15

*Pope v. City of Clearwater*,
    138 F.R.D. 141 (M.D. Fla. 1991)...........................................................................5

*Prior v. White*,
    80 So. 347 (Fla. 1938).........................................................................................14

*Rubinstein v. Keshet Inter Vivos Trust*,
    2018 WL 8899230 (S.D. Fla. Oct. 17, 2018).........................................................9

*Shamblin v. Obama for Am.*,
    2015 WL 1754628 (M.D. Fla. Apr. 17, 2015).........................................................5

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016).............................................................................................4

*Stewart v. Bureaus Inv. Grp. #1, LLC*,
    24 F. Supp. 3d 1142 (M.D. Ala. 2014) ...................................................................5

*Town of Chester, N.Y. v. Laroe Estates, Inc.*,
    137 S. Ct. 1645 (2017)..............................................................................................4

**Statutes, Rules and Regulations**

42 U.S.C. § 1983.............................................................................................................1

40 C.F.R. Part 50, App. N, § 1.0(c) ..............................................................................9

40 C.F.R. Part 50, App. N, § 4.2 ...................................................................................9

40 C.F.R. Part 51, App. W, § 1.0(b) ............................................................................11

40 C.F.R. Part 51, App. W, § 4.1(c) ..............................................................................8

40 C.F.R. Part 51, App. W, § 4.2(a) ..............................................................................8

Fed. R. Civ. P. 8 ..............................................................................................................1

Fed. R. Civ. P. 12(b)(1)...................................................................................................1

Fed. R. Civ. P. 12(b)(6)................................................................................................1, 4

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

Fla. Stat. § 376.313 ...................................................................................................3, 13

Fla. Stat. § 590.125 ........................................................................................................3

Fla. Stat. § 823.14 ................................................................................................. *passim*

Fla. Admin. Code § 5I.2.006.........................................................................................3

Defendants United States Sugar Corporation ("U.S. Sugar"), Independent Harvesting, Inc. ("Independent"), Sugarland Harvesting Co. ("Sugarland"), Sugar Cane Growers Cooperative of Florida (the "Cooperative"), Trucane Sugar Corporation ("Trucane"), and J & J Ag Products, Inc. ("J & J") move to dismiss Plaintiffs' Second Amended Class Action Complaint ("SAC") pursuant to Fed. R. Civ. P. 8, 12(b)(1), and 12(b)(6). The above-named Defendants have worked diligently with other defendants to comply with the Court's July 1, 2020 briefing order (Dkt. 134) and join Parts I (pleading), II (air modeling), IV (takings), and V (medical monitoring) of Defendant Florida Crystals Corporation's Motion to Dismiss. We set out here our position on other issues.

## INTRODUCTION

The Court previously dismissed Plaintiffs' First Amended Complaint ("FAC") because Plaintiffs' allegations against the entire sugar industry across all of an approximately 675-square mile area were far too generic to plausibly trace their alleged injuries to each Defendant, as Article III standing requires. *Coffie v. Florida Crystals Corp.*, 2020 WL 2739724, at *3-4 (S.D. Fla. May 8, 2020). The Court allowed Plaintiffs an opportunity to amend to attempt to cure the standing deficiencies, subject to Rule 11. *Id.* at *4, 11. Plaintiffs responded by filing the SAC, which attempts to address standing by using air modeling without any actual air quality data. The SAC also adds two new claims, for taking property without just compensation under 42 U.S.C. § 1983 and for battery (along with a new battery class). The Court did not grant Plaintiffs leave to amend to add new claims. The SAC should again be dismissed. The SAC still does not plausibly allege sufficient factual matter to establish Article III standing and the new claims fail.

Plaintiffs still lack Article III standing. The most concrete and particularized injury alleged in the SAC involves cane ash falling on Plaintiffs' properties and vehicles, but—contrary to the direction issued by the Court—the SAC makes no attempt to trace cane ash to each Defendant. Plaintiffs also claim that they were injured by smaller, invisible particulate matter and other

1

pollutants that allegedly cause respiratory issues and increase the risk of developing lung cancer. But the SAC offers no *actual* air quality data showing that injurious or any other levels of particulate matter or other pollutants even exist in the putative class area. The SAC instead relies on "preliminary" air models, generated by using unspecified inputs, that first attempt to *project* concentrations of pollutants at hypothetical "receptors" located throughout the putative class area and then attempt to trace those *projected* pollutants to each Defendant.

The model results are demonstrably implausible. Remarkably, the models and the SAC entirely ignore actual, publicly-available air monitoring data from within the putative class area collected by the Palm Beach County Health Department ("PBCHD") that are orders of magnitude *below* Plaintiffs' projections and below the very U.S. National Ambient Air Quality Standards ("NAAQS") that Plaintiffs invoke. Further showing their implausibility, Plaintiffs' models project air quality that is comparable to or far worse than air quality in the vicinity of significantly larger emission events like the Mount St. Helens' volcanic eruption and the recent massive Camp Fire in California. In short, Plaintiffs offer an unexplained model that spits out pure fiction—a conclusory set of numbers with no plausible basis—and does not come close to curing the standing defects the Court found in Plaintiffs' prior complaint. Even at the pleading stage, Plaintiffs' "preliminary" air models do not plausibly meet the elements of Article III standing.

Even if Plaintiffs could establish Article III standing, their new battery claim fails as a matter of law. Plaintiffs' battery claim is just a variation on the nuisance and trespass claims that the Court already dismissed under Florida's Right to Farm Act ("RTFA"), Fla. Stat. § 823.14. The SAC also cannot allege that Defendants acted with the requisite intent to harm Plaintiffs when they performed sugarcane burns under permits duly-issued by the Florida Forest Service.

## BACKGROUND

Plaintiffs again challenge the practice of pre-harvest sugarcane burning, which is a safe, century-old method of harvesting that is strictly regulated and performed under permits issued daily by the Forest Service. Fla. Stat. § 590.125; Fla. Admin. Code § 5I.2.006. As the Court acknowledged, "preharvest burning is an acceptable agricultural practice"—even if Plaintiffs might prefer another method. *Coffie*, 2020 WL 2739724, at *5.

Compared to the FAC, the SAC adds seven new Plaintiffs to the prior three for a total of ten. SAC ¶¶ 24-76.[1] Plaintiffs now seek to represent a "Battery Class" in addition to a "Property Owner Class" and a "Medical Monitoring Class." *Id.* ¶¶ 199-201. The SAC addresses the same putative class area as before consisting of approximately 675-square miles in and around the towns of Belle Glade, South Bay, Pahokee, Clewiston, Moore Haven, Canal Point, and Indiantown. *Id.* ¶¶ 4, 23 & Fig. 11. The only change there is that Plaintiffs have revised their label for the putative class area from the "Affected Area" to the "Hazard Zone." *Id.* ¶ 23.

In addition to dismissing the FAC for lack of Article III standing (*Coffie*, 2020 WL 2739724, at *3-4), the Court previously dismissed Plaintiffs' claims for nuisance and trespass with prejudice under the RTFA (*id.* at *4-6), dismissed Plaintiffs' ultrahazardous activity claim with prejudice (*id.* at *9-10), and dismissed Plaintiffs' medical monitoring claim without prejudice with leave to amend. *Id.* at *10-11. The Court allowed Plaintiffs' claims for negligence and strict liability under Fla. Stat. § 376.313 to proceed if Plaintiffs could cure the Article III standing deficiencies, and Plaintiffs re-assert those claims here. SAC ¶¶ 212-26. The SAC also attempts to

---

[1] The SAC originally added an eleventh Plaintiff, R. Butts, Inc., the only Plaintiff that would have been a business as opposed to an individual resident. SAC ¶¶45-47. R. Butts, Inc., however, decided not to pursue this lawsuit and dropped its claim. Dkt. 136.

replead the medical monitoring claim (*id.* ¶¶ 237-249) and, as noted above, adds new section 1983/takings and battery claims. *Id.* ¶¶ 227-236, 250-54.

## ARGUMENT

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility" only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Courts insist upon "'specificity in pleading' … to avoid the potentially enormous expense of discovery in cases with no 'reasonably founded hope'" of success. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558-59 (2007).

## I.   Plaintiffs Have Not Cured The Article III Standing Deficiencies.

Article III standing requires that "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). The injury must be "concrete and particularized" and "'actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan*, 504 U.S. at 560-61. At the pleading stage, a "'plaintiff must clearly allege facts demonstrating each element'" of Article III standing. *Coffie*, 2020 WL 2739724, at *3 (quoting *Spokeo*, 136 S. Ct. at 1547). Moreover, "'standing is not dispensed in gross.' To the contrary, 'a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief sought.'" *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017) (internal citations omitted).

While Plaintiffs need not prove proximate causation at this stage, as the Court found, they "must still show that the injuries they allege are fairly traceable to each Defendant." *Coffie*, 2020 WL 2739724, at *3; *see Spokeo*, 136 S. Ct. at 1547 n.6 ("That a suit may be a class action … adds

4

nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong."); *Stewart v. Bureaus Inv. Grp. #1, LLC*, 24 F. Supp. 3d 1142, 1154 (M.D. Ala. 2014) (in a multi-defendant class action, "the class representative herself must have Article III standing to sue each named defendant"); *Shamblin v. Obama for Am.*, 2015 WL 1754628, at *4 (M.D. Fla. Apr. 17, 2015) ("'The plaintiff's standing to bring an action against each defendant named in the Complaint must be established independently of [Rule] 23.'"); *Pope v. City of Clearwater*, 138 F.R.D. 141, 145 (M.D. Fla. 1991) ("'The plaintiff must establish his personal standing to sue each defendant….'").

Although the SAC repeatedly conflates them, Plaintiffs raise two distinct purported consequences of sugarcane burning: (i) cane ash residue that allegedly falls on properties and vehicles (which Plaintiffs tendentiously label "black snow") (SAC ¶ 7); and (ii) the emission of small, invisible particulate matter and other pollutants attached thereto that allegedly cause respiratory issues and increase the risk of developing lung cancer. *Id.* ¶¶ 16, 18, 134, 137, 142. As shown below, the SAC does not even attempt to trace cane ash residue to each Defendant. And as to particulate matter and other pollutants, the SAC does not adequately allege a concrete and particularized injury (e.g., that injurious levels of particulate matter or other pollutants actually exist), nor does it plausibly trace Plaintiffs' alleged injuries to each Defendant.

### A.    Plaintiffs Have Not Plausibly Traced Cane Ash To Each Defendant.

The SAC alleges that cane ash "drops like rain from the sky in pieces ¼ to ½ inch thick." SAC ¶ 25. The SAC includes pictures of alleged cane ash accumulating on Plaintiffs' properties and vehicles (*id.* Figs. 6, 12, 13, 21) and alleges that Plaintiffs have been required to wash their properties and vehicles on a regular basis. *Id.* ¶¶ 25-27, 32-34, 38-40, 49-50, 53-56, 64, 67-68, 71, 74. Critically, however, the SAC does nothing to plausibly trace alleged cane ash on Plaintiffs'

properties or vehicles to any particular Defendant, let alone all of them, or to exclude ash from natural wildfires or from governmental burning, which occur regularly.

With respect to cane ash, the SAC largely rehashes the same conclusory allegations from the FAC that Plaintiffs reside "in close proximity to many of Defendants' sugarcane fields" (SAC ¶¶ 31, 37, 48, 52, 63, 66, 70, 73) that the Court already found insufficient. *Coffie*, 2020 WL 2739724, at *2-3. Even when the SAC alleges that a Plaintiff resides "approximately 60 yards away" (SAC ¶ 38) or "blocks away" (*id.* ¶ 49) from "Defendants' sugarcane fields," the SAC is conspicuously silent on *which* Defendants' sugarcane fields Plaintiffs are referencing. Nor does the SAC allege the wind direction on the days those fields were burned.

The SAC includes maps showing the towns in the putative class area and the locations of historical burn events in "close proximity," compiled from Forest Service permit data. SAC ¶ 141 & Figs. 1-2, 22-27. Although the permit data reviewed by Plaintiffs would identify the applicant for each burn permit, the SAC is again conspicuously silent on identifying which Defendant (or other entity) farmed and conducted burns in close proximity to Plaintiffs and their properties. The SAC does not even attempt to provide a Defendant-by-Defendant breakdown. This is important because some Defendants burn more than others (e.g., SAC Fig. 33) and each Defendant's farmland is concentrated in different parts of the putative class area.

The SAC relies heavily on air modeling to attempt to trace Plaintiffs' alleged injuries to each Defendant (SAC ¶¶ 12-15, 150-65), but Plaintiffs' air model does not purport to model the dispersion of cane ash. To the contrary, the SAC alleges that the air model focused on tiny, invisible particulate matter and other pollutants measuring microns in diameter. *Id.* ¶ 151 (identifying pollutant categories included in Plaintiffs' air model, including particulate matter less than 10 microns ($PM_{10}$), 2.5 microns ($PM_{2.5}$), and 0.5 microns ($PM_{0.5}$) in diameter); *see id.* ¶¶ 16,

142-43, 161. For perspective, a micron is one-millionth of a meter, and one inch contains 25,400 microns. Thus, when Plaintiffs allege that cane ash ¼ to ½ of an inch thick fell on their properties (*id.* ¶ 25), they are addressing material that is approximately 6,350 to 12,700 microns thick—material much larger than the smaller, invisible particulate matter that they purported to model, and with entirely different properties. Plaintiffs' models—which we explain below are defective even as to particulate matter—have no relevance whatever to much larger cane ash.

The SAC also includes sample burn maps from the Forest Service depicting daily burns. SAC Fig. 7, 9, 10. While not entirely clear, Plaintiffs appear to allege that the maps depict the distance smoke—not cane ash—can travel, although Plaintiffs appear to suggest that cane ash can travel in the same direction. *Id.* ¶¶ 11, 145. Regardless, the SAC makes no effort to connect burns plotted on the maps to particular Defendants. The SAC does not even attempt to provide a Defendant-by-Defendant breakdown or to trace cane ash to each Defendant.

Finally, the SAC includes pictures of sugarcane burns. Like the cane ash allegations, the SAC does not attempt to attribute the pictures to any particular Defendant at any particular location in the putative class area. Indeed, at least one picture in the SAC was taken in Maui, not Florida. SAC Fig. 19. Other pictures show smoke from sugarcane burns rising up into the otherwise blue sky (as they are designed to do), not impacting adjacent properties. *Id.* Fig. 4, 5, 15, 18. Even a picture purporting to show a burn in close proximity to houses shows smoke rising straight up, away from the houses. *Id.* Fig. 20. Plaintiffs' pictures do not make up for the SAC's failure to trace cane ash to each Defendant. To the contrary, the pictures demonstrate that any smoke is localized, evanescent, and does not uniformly cover the putative class area.

**B.    Plaintiffs Have Not Adequately Alleged The Actual Presence Of Injurious Or Any Other Level Of Particulate Matter And Other Pollutants, Let Alone Plausibly Traced Those Pollutants To Each Defendant.**

With respect to the emission of small, invisible particulate matter and other pollutants, the SAC fails to adequately allege an injury that is "concrete and particularized," not "'conjectural' or 'hypothetical.'" *Lujan*, 504 U.S. at 560-61. The SAC does not adequately allege that injurious levels of particulate matter and other pollutants are actually present in the putative class area, nor does it plausibly trace Plaintiffs' alleged injuries to each Defendant.

Importantly, unlike most cases where plaintiffs file suit over alleged contamination, Plaintiffs offer no ***actual*** air monitoring or other data to show the existence of injurious (or any other) concentrations of particulate matter or other pollutants. *See, e.g., Adinolfe v. United Techs. Corp.*, 768 F.3d 1161, 1173 (11th Cir. 2014) (allowing toxic tort claims to survive dismissal where "plaintiffs alleged that they tested for and found contaminants [attributable to defendant] on at least some of [the] properties [at issue], and the plaintiffs' hydrologists and toxicologists verified the presence of these chemicals in [the area] and the plaintiffs' groundwater").

Instead, Plaintiffs rely on "preliminary" models run by an unnamed "expert" in air modeling that attempt to ***project*** ambient air concentrations of pollutants at 3,531 *hypothetical* "receptors" located in and around the putative class area from 2014-18 and then attempt to attribute those pollutants to each Defendant. SAC at 1 & ¶¶ 12-15, 150-65.[2] Plaintiffs' preliminary models are a black box. While the SAC alleges that the models are based on the location of burns as identified in Forest Service records, the SAC provides no details on any of the critically important inputs and assumptions Plaintiffs used or their methodology in making those decisions.

---

[2] Plaintiffs primarily rely on an AERMOD modeling system developed in part by U.S. EPA to model air quality over a 130 km by 100 km grid. SAC ¶¶ 151-52. In doing so, Plaintiffs ignore U.S. EPA guidance that AERMOD models are appropriate only for distances of 50 km or less and are "unreliable" if used for greater distances. *See* 40 C.F.R. Part 51, App. W, §§ 4.1(c), 4.2(a).

Plaintiffs allege that the preliminary models demonstrate to a "high degree of certainty" that each Defendants' burns emitted particulate matter and other pollutants that reached "every nook and cranny" of the putative class area and that Defendants' burning cumulatively exceeds applicable NAAQS. *Id.* ¶¶ 12, 155, 165. The SAC focuses on 24-hour $PM_{2.5}$ concentrations in particular and compares the projected concentrations spit out by Plaintiffs' preliminary models to the NAAQS $PM_{2.5}$ 24-hour standard of 35 $\mu g/m^3$. *Id.* ¶¶ 12, 156-58. Plaintiffs allege that the hypothetical receptors had "spectacularly high" 24-hour $PM_{2.5}$ concentrations in each town—up to 3,934, 9,783, 402, 208, 735, 11,987, and 7,022 $\mu g/m^3$, respectively. *Id.* ¶¶ 18, 158. Further, Plaintiffs allege that over the course of five years, 99.8% of the receptors experienced at least one daily exceedance of the $PM_{2.5}$ 24-hour standard of 35 $\mu g/m^3$. *Id.* ¶ 160 & Fig. 37.[3]

Plaintiffs' "spectacularly high" projections are flatly contradicted by, and do not even attempt to take into account, actual, publicly-available air monitoring data for the putative class area.[4] With respect to 24-hour $PM_{2.5}$ concentrations in Belle Glade, which is right in the middle of the putative class area, Plaintiffs' model projects a range from 63 $\mu g/m^3$ to as high as 3,934 $\mu g/m^3$ from 2014-18 (compared with the NAAQS of 35 $\mu g/m^3$). SAC Ex. B at ECF p. 8 of 77. For many years now, however, the PBCHD has collected air quality data from a real life monitoring station in Belle Glade, the results of which are publicly-available through the Florida Department of

---

[3] By using only the highest single-day projection produced by their model at each hypothetical receptor, Plaintiffs misuse the NAAQS $PM_{2.5}$ 24-hour standard of 35 $\mu g/m^3$. The 24-hour $PM_{2.5}$ standard is a rolling average that must be calculated over 365 days of daily readings using the 98th percentile value during a year, averaged over 3 consecutive years. 40 C.F.R. Part 50, App. N, §§ 1.0(c), 4.2. The SAC does not include any attempt to run those calculations.

[4] The Court may take judicial notice of publicly-available data on a motion to dismiss. *See*, *e.g.*, *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999) (court may take judicial notice of public records); *Rubinstein v. Keshet Inter Vivos Trust*, 2018 WL 8899230, at *4-5 (S.D. Fla. Oct. 17, 2018) (taking judicial notice of records on agency website); *Nebraska v. EPA,* 331 F.3d 995, 998 n.3 (D.C. Cir. 2003) (taking judicial notice of information in EPA database).

Environmental Protection ("FDEP"). In contrast to Plaintiffs' **_projected_** PM$_{2.5}$ concentrations "several hundred" times larger than the 35 µg/m$^3$ NAAQS (SAC ¶ 156), **_actual_** readings from the PBCHD monitoring station show that even the highest 24-hour PM$_{2.5}$ concentrations in Belle Glade from 2014-18 were **_all well below 35 µg/m$^3$_**. Ex. A (FDEP, Air Quality Monitoring, Highest Particle Pollution 2.5 Readings by Year, AQS # L099,0008, Belle Glade). In short:

| | **Plaintiffs' _Projected_ Lowest & Highest 24-Hour PM$_{2.5}$ Belle Glade (µg/m$^3$)** | **PBCHD _Actual_ 5 Highest 24-Hour PM$_{2.5}$ Belle Glade (µg/m$^3$)** |
|---|---|---|
| **2014** | Highest – 780<br>Lowest – 99 | 23 (August 18)<br>19.8 (June 10)<br>19.5 (June 24)<br>18.8 (May 24)<br>18.6 (April 3) |
| **2015** | Highest – 1,068<br>Lowest – 77 | 22.9 (July 5)<br>21.7 (March 20)<br>19 (October 31)<br>18.7 (March 19)<br>18.7 (April 26) |
| **2016** | Highest – 3,934<br>Lowest – 81 | 23.7 (March 7)<br>21.2 (April 20)<br>20.5 (April 21)<br>20.1 (May 3)<br>19.3 (November 12) |
| **2017** | Highest – 766<br>Lowest – 131 | 30.1 (May 29)<br>23.7 (October 22)<br>19.9 (January 23)<br>19.9 (September 20)<br>19.9 (September 17) |
| **2018** | Highest – 319<br>Lowest – 63 | 23.7 (March 6)<br>19.2 (March 20)<br>18.9 (August 9)<br>17.7 (August 8)<br>15.4 (July 20) |

Notably, there is no correlation between the highest actual readings recorded by the PBCHD in Belle Glade each year and the sugarcane burning season.[5]

As U.S. EPA has explained, actual air quality data is "particularly useful in assessing the accuracy of model estimates." 40 C.F.R. Part 51, App. W, § 1.0(b). Plaintiffs, however, never even acknowledge, let alone attempt to account for, publicly-available air quality data.

The Court need not credit allegations in the SAC that are shown by publicly-available air quality data to be pure fiction. *See*, *e.g., Campos v. I.N.S.*, 32 F. Supp. 2d 1337, 1343 (S.D. Fla. 1998) (the court "need not accept factual claims" "which run counter to facts of which the court can take judicial notice"). Such allegations fail to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 570. The Court can rely on its "judicial experience and common sense" to conclude that a model so far out of line with actual, official data is insufficiently plausible to establish standing. *Id.* Conclusory numbers that are derived from an unexplained, black-box model and that are contradicted by government-collected, publicly-available data of which Plaintiffs take no account are not facts that must be credited, but are simply implausible conclusions. *Iqbal*, 556 U.S. at 678-80; *see First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 772 (2d Cir. 1994) (affirming dismissal because plaintiffs' "methodology … is so defective, and the conclusions reached so defy logic, that no 'reasonable inferences' can be drawn therefrom," and finding that "[n]o amount of detail can save [plaintiff's] complaint when the detail is based on flawed and unreasonable methodologies that lead to unsupported conclusions").

---

[5] Burn season, Plaintiffs allege, begins in October and runs through March and sometimes as late as May. SAC ¶ 2. The actual 24-hour $PM_{2.5}$ concentrations recorded in Belle Glade were often highest in June, July, August, and September, outside of even the longest burn season alleged by Plaintiffs.

Actual air quality data from plainly larger emission events confirms that Plaintiffs' unexplained projections are make believe. When Mount St. Helens erupted in 1980, air monitoring stations in the paths of the plumes recorded 24-hour total suspended particulates ("TSP") as high as 33,000 µg/m$^3$, "causing almost total darkness at times."[6] Yet according to Plaintiffs' modeling projections, Pahokee experienced similar 24-hour TSP concentrations as high as 27,568 µg/m$^3$ (and 1-hour concentrations as high as 114,501, 4-hour as high as 101,037, and 8-hour as high as 75,797 µg/m$^3$). SAC Ex. B at ECF p. 65 of 77. Another example: the Camp Fire was the deadliest wildfire in California history and burned 150,000 acres in just over two weeks in November 2018. The highest 24-hour $PM_{2.5}$ concentration recorded at air monitoring stations located in the vicinity of the Camp Fire was 411 µg/m$^3$ (Ex. C (U.S. EPA, Monitor Values Report & Air Data Concentration Plot, Chico, California)), far lower than the highest 24-hour $PM_{2.5}$ concentrations projected by Plaintiffs in the putative class area, which again, purportedly reached as high as 11,987 µg/m$^3$—allegedly from burning 40-80 acre tracts of sugarcane. SAC ¶¶ 122, 158. These comparisons show that Plaintiffs' allegations do not cross the line into plausibility.

Because Plaintiffs have failed to allege facts sufficient to establish their standing, this Court lacks subject matter jurisdiction over their claims and should dismiss the SAC in its entirety, with prejudice.

## II.    The SAC Fails To State A Battery Claim.

In Count V, the SAC newly alleges a battery claim. Plaintiffs allege that sugarcane burning—an "acceptable agricultural practice" of the sort the RTFA is designed to protect (*Coffie*, 2020 WL 2739724, at *5)—has resulted in "harmful and offensive contact" by allegedly exposing

---

[6] Peter J. Baxter, Roy Ing, Henry Falk & Brian Plikaytis, Mount St. Helens Eruptions: The Acute Respiratory Effects of Volcanic Ash in a North American Community, Archives of Environmental Health: An International Journal, 38:3, at 140 (1983) (Ex. B).

Plaintiffs to pollutants without their consent. SAC ¶ 251. Plaintiffs further allege that Defendants "knew or should have known" that burning would release pollutants and expose Plaintiffs. *Id.* ¶ 252. Plaintiffs' battery claim fails to state a claim and should be dismissed.

### A.     The RTFA Bars Plaintiffs' Battery Claim.

The Court previously dismissed Plaintiffs' nuisance and trespass claims under the RTFA. *Coffie*, 2020 WL 2739724, at *4-6. Although the RTFA on its face applies to nuisance claims, the Court also applied the RTFA to bar Plaintiff's trespass claim because it was little more than a "relabeled" nuisance claim. *Id.* at *5. But the Court declined to apply the RTFA to Plaintiffs' claims for negligence, strict liability under Fla. Stat. § 376.313, and medical monitoring because they were "not based solely on the nuisance aspect of pre-harvest burning." *Id.*

Plaintiffs' battery claim is based on the nuisance aspect of sugarcane burning and is just a variation of Plaintiffs' nuisance and trespass claims. For battery, Plaintiffs allege that burning caused "harmful and offensive contact" and "exposure without consent." SAC ¶ 251. For trespass, Plaintiffs had similarly alleged that burning caused pollutants to "enter and contaminate" their properties and constituted "an unpermitted intrusion." FAC ¶¶ 159-60. The only difference is that Plaintiffs' battery claim involves contact to persons while Plaintiffs' trespass claim involved contact to property. *See, e.g., Bishop v. Hybud Equip. Corp.*, 536 N.E.2d 694, 697 (Ohio Ct. App. 1988) (explaining that at common law, "[t]respass was the remedy for all forcible, direct and immediate injuries, whether occasioned to person or property," and "[t]he present-day intentional tort of battery evolved from the common-law trespass for battery"); *Johnson v. Paynesville Farmers Union Co-op Oil Co.*, 817 N.W.2d 693, 701 n.7 (Minn. 2012) (explaining how the common law tort of trespass split into four types of wrongs, including *trespass vi et armis* or assault or battery).

Like their dismissed trespass claim, Plaintiffs' battery claim has the characteristics of a nuisance: conduct that "either annoys, injures, or endangers the comfort, health, repose or safety of the citizen, or which unlawfully interferes with or tends to obstruct, or in any way renders unsafe and unsecure other persons in life or in the use of their property." *Prior v. White*, 80 So. 347, 355 (Fla. 1938). Plaintiffs should not be allowed to do an end-run around the RTFA by belatedly asserting a battery claim after the Court dismissed their nuisance and trespass claims.

**B.      Plaintiffs Do Not Allege The Requisite Intent To State A Claim For Battery.**

Under Florida law, "[t]o establish a battery, a plaintiff must suffer a harmful or offensive contact, and the tortfeasor must have intended to cause such contact." *Chorak v. Naughton*, 409 So. 2d 35, 39 (Fla. Dist. Ct. App. 1981); *see Hoyte v. Stauffer Chem. Co.*, 2002 WL 31892830 (Fla. Cir. Ct. Nov. 2, 2002) ("'a defendant must do a positive, affirmative act with the intent to cause an offensive contact with the plaintiff [and] the element of intent can only be established if the act is substantially certain to cause the offensive contact'"). The intent requirement is not satisfied where conduct merely "'involves an unreasonable risk of inflicting'" offensive contact. *City of Miami v. Sanders*, 672 So. 2d 46, 47 (Fla. Dist. Ct. App. 1996).

The SAC does not allege any facts to support a claim that each particular Defendant intended to batter Plaintiffs when they performed sugarcane burns—an "acceptable agricultural practice" (*Coffie*, 2020 WL 2739724, at *5)—under permits duly-issued by the Forest Service. Plaintiffs' allegation that Defendants' "knew or should have known" that burns would expose Plaintiffs to pollutants (SAC ¶ 252) is not enough as a matter of law. As discussed above, the SAC does not even allege that Plaintiffs lived in close proximity to burns performed by any particular Defendant. The SAC likewise does not allege any actual air monitoring data that could have somehow put Defendants on notice that their burning was emitting harmful levels of pollutants.

To the contrary, the publicly-available air monitoring data for Belle Glade gathered by the PBCHD consistently showed that local ambient air concentrations were well within NAAQS.

Accordingly, neither each Defendants' subjective intent, nor "substantial certainty" that each Defendants' conduct would cause an offensive touching, are plausibly alleged. The battery claim should be dismissed. *See, e.g., Major v. Astrazeneca, Inc.*, 2006 WL 2640622, *21 (N.D.N.Y. Sept. 13, 2006) (dismissing battery claims and holding that even "[t]he intentional disposal of wastes on someone's property is equivalent to an intentional physical contact with that person only if the disposer knows that the waste will contact that person"); *In re Oil Spill by the Oil Rig Deepwater Horizon*, 2011 WL 4575696, at *11 (E.D. La. Oct. 4, 2011) (allegation that defendants deliberately sprayed chemicals "in the vicinity" of plaintiffs did not state battery claim).

## CONCLUSION

For the foregoing reasons, the Second Amended Complaint should be dismissed with prejudice.

Dated: August 5, 2020                    Respectfully submitted,

By: /s/ Gregor J. Schwinghammer, Jr.
Gregor J. Schwinghammer, Jr.
Florida Bar No. 90158
Brian M. McPherson
Florida Bar No. 735541
GUNSTER, YOAKLEY & STEWART, P.A.
777 South Flagler Drive, Suite 500 East
West Palm Beach, FL 33401
Telephone:  (561) 833-1970
Facsimile:  (561) 655-5677
gschwinghammer@gunster.com
bmcpherson@gunster.com

By: /s/ Eugene K. Pettis
Eugene K. Pettis
Florida Bar No. 508454
HALICZER PETTIS & SCHWAMM, P.A.
100 SE 3rd Avenue
Seventh Floor,

Fort Lauderdale, FL 33394
Telephone: (954) 523-9922
Facsimile:  (954) 522-2512
service@hpslegal.com

Mark Ter Molen
Timothy S. Bishop
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL  60606
Telephone:  (312) 782-0600
Facsimile:  (312) 701-7711
mtermolen@mayerbrown.com
tbishop@mayerbrown.com

*Counsel for Defendants U.S. Sugar Corporation,
Independent Harvesting, Inc., and Sugarland
Harvesting Co.*

By: /s/ Gary K. Hunter
Gary K. Hunter
Florida Bar No. 949779
Gary V. Perko
Florida Bar No. 855898
Mohammad O. Jazil
Florida Bar No. 72556
HOPPING GREEN & SAMS, P.A.
119 S. Monroe Street, Suite 300
Tallahassee, FL 32301
Telephone: (850) 222-7500
Facsimile: (850) 224-8551
garyh@hgslaw.com
garyp@hgslaw.com
mjazil@hgslaw.com

David J. Abbey
Florida Bar No. 228222
Jennifer J. Kennedy
Florida Bar No. 517267
ABBEY, ADAMS, BYELICK & MUELLER,
LLP
3201 U.S. Highway 19 South, 9th Floor
St. Petersburg, Florida 333711
Telephone: (727) 821-2080
Facsimile: (727) 822-3970
dabbey@abbeyadams.com

16

kennedy@abbeyadams.com

*Counsel for Defendant Sugar Cane Growers*
*Cooperative of Florida*

By: /s/ Forrest L. Andrews
Mark A. Hendricks
Florida Bar No. 768146
Forrest L. Andrews
Florida Bar No. 17782
LYDECKER DIAZ
1221 Brickell Avenue, 19th Floor
Miami, Florida 33131
Telephone: (305) 416-3180
Facsimile: (305) 416-3190
mah@lydeckerdiaz.com
fla@lydeckerdiaz.com

*Counsel for Defendant*
*Trucane Sugar Corporation*

By: /s/ Andrew S. Connell, Jr.
Andrew S. Connell, Jr.,
Florida Bar No. 038430
LITCHFIELD CAVO, LLP
600 Corporate Drive Suite 600
Ft. Lauderdale, Florida 33334
Telephone: 954/689-3000
Facsimile: 954/689-3001
connell@litchfieldcavo.com

*Counsel for Defendant J & J Ag Products, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 5th day of August, 2020, I filed the foregoing through the

Court's CM/ECF system, which sent notification to all counsel of record.

<u>/s/ Gregor J. Schwinghammer, Jr.</u>

18