# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| WILLIAM ARMSTRONG, GLORIA ATKINS, JAMES BROOKS, CLOVER COFFIE, DEBRA JONES, SHANTE LEGRAND, DONALD MCLEAN, ROBERT REIMBOLD, ELIJAH SMITH, and LINDA WELCHER, each individually and on behalf of all others similarly situated; | Case No. 19-cv-80730-RS<br><br>CLASS ACTION<br><br>Hon. Rodney Smith |
| Plaintiffs, | |
| vs. | |
| UNITED STATES SUGAR CORPORATION, a Delaware corporation; SUGAR CANE GROWERS COOPERATIVE OF FLORIDA, a Florida not for profit corporation; FLORIDA CRYSTALS CORPORATION, a Delaware corporation; OKEELANTA CORPORATION, a Delaware corporation; OSCEOLA FARMS CO., a Florida corporation; SUGARLAND HARVESTING CO., a Florida not for profit corporation; TRUCANE SUGAR CORPORATION, a Florida corporation; INDEPENDENT HARVESTING, INC., a Florida corporation; and J & J AG PRODUCTS, INC., a Florida corporation; | |
| Defendants | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................................ 1

ARGUMENT ....................................................................................................................................... 1

I. PLAINTIFFS HAVE NOT CURED THE ARTICLE III STANDING DEFICIENCIES OR OTHERWISE STATED PLAUSIBLE CLAIMS AGAINST EACH DEFENDANT .................................................................................................... 1

    A. Plaintiffs Have Not Plausibly Traced Visible Ash To Each Defendant ................ 1

    B. Plaintiffs Have Not Adequately Alleged The Actual Presence Of Injurious Or Any Other Level Of Particulate Matter And Other Constituents, Let Alone Plausibly Traced Those Constituents To Each Defendant ......................... 2

II. THE TAC FAILS TO STATE A TAKINGS/SECTION 1983 CLAIM ........................... 5

    A. There Is No State Action ......................................................................................... 5

    B. Plaintiffs Fail To State A Takings Claim ............................................................... 6

    C. Plaintiffs Cannot Seek Injunctive Relief For Alleged Takings ............................. 7

III. THE TAC FAILS TO STATE A BATTERY CLAIM ...................................................... 7

    A. The RTFA Bars Plaintiffs' Battery Claim .............................................................. 7

    B. Plaintiffs Do Not Allege The Requisite Intent To State A Claim For Battery .................................................................................................................... 8

IV. THE TAC FAILS TO STATE A MEDICAL MONITORING CLAIM ........................... 9

CONCLUSION .................................................................................................................................... 9

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Blum v. Yaretsky*,
   457 U.S. 991 (1982) ..................................................................................................5

*Butler v. Union Carbide Corp.*,
   712 S.E.2d 537 (Ga. Ct. App. 2011) ........................................................................4

*Campos v. I.N.S.*,
   32 F. Supp. 2d 1337 (S.D. Fla. 1998) .......................................................................3

*Coffie v. Florida Crystals Corp.*,
   460 F. Supp. 3d 1297 (S.D. Fla. 2020) ..........................................................1, 2, 5, 7

*Coleman v. Union Carbide Corp.*,
   2013 WL 54618554 (S.D.W.V. Sept. 30, 2013) .......................................................9

*Comardelle v. Pa. Gen. Ins. Co.*,
   76 F. Supp. 3d 628 (E.D. La. 2015) .........................................................................4

*In re E.I. du Pont de Nemours & Co. Personal Injury Litigation*,
   2015 WL 4092866 (S.D. Ohio July 6, 2015) ...........................................................8

*Flo-Sun, Inc. v. Kirk*,
   783 So. 2d 1029 (Fla. 2001) .....................................................................................7

*Focus on the Family v. Pinellas Suncoast Transit. Auth.*,
   344 F.3d 1263 (11th Cir. 2003) ............................................................................5, 6

*Jackson v. Metro. Edison Co.*,
   419 U.S. 345 (1974) ..................................................................................................6

*John R. Sand & Gravel Co. v. United States*,
   457 F.3d 1345 (Fed. Cir. 2006) ................................................................................6

*Knick v. Township of Scott, Pa.*,
   139 S. Ct. 2162 (2019) .............................................................................................7

*Krik v. Crane Co.*,
   76 F. Supp. 3d 747 (N.D. Ill. 2014) .........................................................................4

*Loretto v. Teleprompter Manhattan CATV Corp.*,
   458 U.S. 419 (1982) ..................................................................................................6

*Major v. Astrazeneca, Inc.*,
   2006 WL 2640622 (N.D.N.Y. Sept. 13, 2006) ................................................................. 8

*Powell v. Tosh*,
   2011 WL 1674957 (W.D. Ky. May 3, 2011) ..................................................................... 8

*Powell v. Tosh*,
   929 F. Supp. 2d 691 (W.D. Ky. 2013), *vacated in part on reconsideration*,
   2013 WL 1878934 (W.D. Ky. May 3, 2013) ..................................................................... 8

*Rayburn v. Hogue*,
   241 F.3d 1341 (11th Cir. 2001) ..................................................................................... 5, 6

*Rose v. Braciszewski*,
   2009 WL 3276431 (Mich. Ct. App. Oct. 13, 2009) ........................................................... 8

*Shaw v. Brown & Williamson Tobacco Corp.*,
   973 F. Supp. 539 (D. Md. 1997) ....................................................................................... 8

*Smith v. Ford Motor Co.*,
   2013 WL 214378 (D. Utah Jan. 18, 2013) ........................................................................ 4

*United States v. Dickinson*,
   331 U.S. 745 (1947) ......................................................................................................... 6

*Willis v. Univ. Health Servs.*,
   993 F.2d 837 (11th Cir. 1993) ......................................................................................... 6

**Statutes & Regulations**

40 C.F.R. Part 51, App. W, §§ 4.1(c), 4.2(a) ............................................................................. 3

40 C.F.R. Part 51, App. W, § 8 .................................................................................................. 3

Fla. Stat. § 590.125 .................................................................................................................... 4

Fla. Admin. Code § 5I.2.006 ...................................................................................................... 4

**Other Authorities**

Fed. R. Civ. P. 11 ................................................................................................................... 1, 5

Fla. Dep't of Agriculture, Prescribed Fire in Florida
   https://www.fdacs.gov/Forest-Wildfire/Wildland-Fire/Prescribed-Fire .......................... 7

## INTRODUCTION

Plaintiffs still have not addressed the glaring deficiencies in the TAC that prevent Plaintiffs from establishing Article III standing and stating plausible claims. Despite the Court's directive, the TAC does not "show[] that each of the Plaintiffs has been harmed by all of the Defendants." *Coffie v. Florida Crystals Corp.*, 460 F. Supp. 3d 1297, 1305 (S.D. Fla. 2020).[1] Plaintiffs have all but given up on tracing visible ash to each or any Defendant. For invisible particulate matter and other constituents, Plaintiffs rely on fundamentally flawed preliminary air modeling. Plaintiffs now allege 1/60th of the alleged impacts after correcting an "input error" in their models in the SAC. But even the sharply reduced modeling results are contradicted by actual, publicly-available monitoring data confirming that air quality in the putative class area is safe. The sharply reduced modeling results, even on their face, also do not identify any violations of regulatory standards or otherwise unsafe levels of particulate matter and other constituents. And the hypothetical receptors are not tied to Plaintiffs and their properties and therefore cannot establish that Plaintiffs were injured by each or any Defendant. Plaintiffs also have not addressed fatal flaws in their takings, battery, and medical monitoring claims. The TAC should be dismissed.

## ARGUMENT

### I. Plaintiffs Have Not Cured The Article III Standing Deficiencies Or Otherwise Stated Plausible Claims Against Each Defendant.

Whether analyzed under Article III standing or basic pleading requirements (e.g., *Iqbal* and *Twombly*), the TAC is fundamentally deficient. Plaintiffs' attempt to sue an entire industry across a 675-square-mile area does not state viable claims against each or any Defendant.

#### A. Plaintiffs Have Not Plausibly Traced Visible Ash To Each Defendant.

Plaintiffs do not dispute that the TAC makes no attempt to trace visible ash to each or any Defendant; Plaintiffs' air modeling does not address visible ash. MTD Br. at 7-8. Plaintiffs' only response is that invisible particulate matter can also cause property damage. Pls. Opp. at 7-8. But as Plaintiffs recognize, visible ash and invisible particulate matter are separate issues. *See e.g.,* TAC ¶ 16. Plaintiffs' failure to trace visible ash to each or any Defendant requires that their claims

---

[1] Rule 11 requires that allegations in a complaint have evidentiary support or likely will have evidentiary support after reasonable opportunity to investigate. Fed. R. Civ. P. 11(b)(3). Despite Plaintiffs having ample opportunity to investigate, the TAC continues to set forth hypothetical and counterfactual creations. This fails to satisfy the Court's directive that Plaintiffs trace their alleged injuries to each Defendant, subject to Rule 11. *Coffie*, 460 F. Supp. 3d at 1305, 1314.

based on visible ash should be dismissed.

> **B. Plaintiffs Have Not Adequately Alleged The Actual Presence Of Injurious Or Any Other Level Of Particulate Matter And Other Constituents, Let Alone Plausibly Traced Those Constituents To Each Defendant.**

Plaintiffs' claims related to invisible particulate matter and other constituents fare no better. Plaintiffs' revised modeling is still contradicted by actual, publicly-available data confirming that the putative class area meets air quality standards and even on its face does not allege injurious levels of particulate matter and other constituents. MTD Br. at 2-6, 9-12. The TAC also fails to tie hypothetical "receptors" used in the modeling to Plaintiffs and their properties and therefore does not adequately allege that Plaintiffs were harmed by each or any Defendant, as the Court directed. *Id.* at 10; *Coffie*, 460 F. Supp. 3d at 1305.[2]

*First*, Plaintiffs' attacks on the actual, publicly-available air monitoring data lack merit. Data from the FDEP monitoring station in Belle Glade show that contrary to Plaintiffs' preliminary air modeling, even the highest single-day 24-hour $PM_{2.5}$ concentrations in Belle Glade were all well below 35 μg/m$^3$. MTD Br. at 4-5. Plaintiffs assert that the station has a "problematic" past (Pls. Opp. at 4), but Plaintiffs ignore the reason the FDEP found it "problematic"—$PM_{2.5}$ levels measured at the station were ***biased high*** (by approximately 2.4 μg/m$^3$, on average). MTD Br. at 5 n.5 & Ex. D at 33-37. Thus, if anything, the monitoring station ***overstates*** daily $PM_{2.5}$ levels, which are all still below 35 μg/m$^3$. Plaintiffs also attempt to write off the monitoring station as a single location that somehow is not representative. Pls. Opp. at 5. That attempt is contrary to Plaintiffs' allegation that particulate matter and other constituents from each Defendant's burning reaches "every nook and cranny" of the putative class area. TAC ¶ 158. Plaintiffs offer no plausible explanation for the DEP monitoring station being the lone exception.

Belle Glade is not the only FDEP monitoring station that shows that the area meets air quality standards. MTD Br. at 5-6. Plaintiffs attempt to discount other stations bordering the putative class area as purportedly beyond the reach of typical burn events. Pls. Opp. at 6 n.6. Yet that is not what the TAC alleges. The FDEP monitoring station in Royal Palm Beach is within the

---

[2] Plaintiffs' use of the term "receptor" is misleading. A receptor suggests that something is being received, but nothing is received at the "receptors"—they are just hypothetical points plotted on a map by Plaintiffs and their experts without actually measuring air quality. Thus, although Plaintiffs refer to "modeling data" (Pl. Opp. at 12), Plaintiffs do not use air quality measurements in their models; they simply plug in predicted values (which do not match the actual practice of cane burning) and their model produces hypothetical *results*—not actual *data*.

2

Case 9:19-cv-80730-RS   Document 156   Entered on FLSD Docket 12/16/2020   Page 7 of 18

airshed modeled by Plaintiffs. MTD Br. at 5. And the TAC alleges that "the harm from Defendants' conduct extends well beyond the class area" and that "***all receptors*** analyzed [in the airshed] were affected by particulate matter from Defendants' burning." TAC ¶¶ 14-15 (emphasis added). Actual data again refutes Plaintiffs' modeling. Like the Belle Glade monitor readings, daily 24-hour $PM_{2.5}$ measurements at Royal Palm Beach were also all well below 35 μg/m$^3$. MTD Br. at 5. The air quality in Belle Glade is consistently comparable to or cleaner than the air quality at monitoring stations bordering the putative class area. MTD Br. at 5-6. The actual data refutes Plaintiffs' claims that residents in the putative class area (including Belle Glade) are exposed to higher levels of particulate matter and other constituents than residents of other areas of the State.

Plaintiffs insist that AERMOD is a "well-recognized" tool that has withstood *Daubert* challenges. Pls. Opp. at 3. Plaintiffs miss the point. AERMOD may well be reliable if used correctly, but any model is only as good as its inputs and assumptions. *See, e.g.,* 40 C.F.R. Part 51, App. W, § 8. The TAC provides no details on the inputs and assumptions behind Plaintiffs' black box models which are contradicted by publicly-available data, and is therefore insufficient to state a plausible claim. The same models were admittedly off by a factor of 60 due to one error that has already been discovered and still generate results that are inconsistent with real-world data. None of the cases cited by Plaintiffs (Pls. Opp. at 3-4) allowed parties to rely on AERMOD modeling that failed to account for and was contrary to publicly-available air monitoring data. *See, e.g., Campos v. I.N.S.*, 32 F. Supp. 2d 1337 (S.D. Fla. 1998) (the court "need not accept factual claims" "which run counter to facts of which the court can take judicial notice"). Moreover, Plaintiffs attempt to model air quality over a 130 km by 100 km grid (TAC ¶¶ 149-50), ignoring U.S. EPA guidance that AERMOD is appropriate only for distances of 50 km or less and is "unreliable" if used for greater distances. *See* 40 C.F.R. Part 51, App. W, §§ 4.1(c), 4.2(a).

***Second,*** Plaintiffs have not alleged injurious levels of particulate matter or other constituents. To show injury, the TAC focuses on the NAAQS 24-hour $PM_{2.5}$ standard of 35 μg/m$^3$. Plaintiffs now concede that the standard is calculated over 365 days, using the 98th percentile value during a year, averaged over 3 years. Pls. Opp. at 5 n.7. Yet the TAC provides no such calculations; Plaintiffs instead cherry pick the highest projected single-day results in each town and ignore the average. TAC ¶¶ 12, 14, 18, 151, 154-55 & Ex. B. Plaintiffs argue that the 35 μg/m$^3$ standard is still a "benchmark" for assessing injury. Pls. Opp. at 5 n.3. But how can it be? The TAC does not provide the calculations required to apply the NAAQS 24-hour $PM_{2.5}$ standard—

presumably because the standard is not violated even based on Plaintiffs' modeling.

In an attempt to nevertheless allege injury, Plaintiffs retreat to an allegation that there is no *known* safe level of exposure to particulate matter. Pls. Opp. at 10 (citing TAC ¶ 183). Courts have repeatedly rejected similar theories. *See, e.g., Butler v. Union Carbide Corp.*, 712 S.E.2d 537, 551-52 (Ga. Ct. App. 2011) (finding that "[t]he claim that there is no known safe level of exposure does not mean that none exists" and that a theory that any exposure causes injury "is, at most, scientifically grounded speculation"); *see also Comardelle v. Pa. Gen. Ins. Co.*, 76 F. Supp. 3d 628, 634 (E.D. La. 2015); *Krik v. Crane Co.*, 76 F. Supp. 3d 747, 752-53 (N.D. Ill. 2014); *Smith v. Ford Motor Co.*, 2013 WL 214378, at *3 (D. Utah Jan. 18, 2013).

Plaintiffs also cite allegations that injuries can occur at levels below regulatory standards. Pls. Opp. at 10. The TAC discusses studies allegedly showing an increased risk of certain health effects from long-term increases in $PM_{2.5}$ levels of 5 to 10 μg/m$^3$. TAC ¶¶ 132(a), 182. These studies do not help Plaintiffs. Plaintiffs' sharply reduced modeling results project only miniscule increases in annual $PM_{2.5}$ concentrations as a result of sugarcane burning. TAC Ex. B at ECF pp. 8, 20, 32, 44, 56, 68, 80 (alleging maximum annual $PM_{2.5}$ increases of **0.29, 0.95, 0.11, 0.05, 0.14, 0.95, and 0.52 μg/m$^3$** in Belle Glade, Canal Point, Clewiston, Indiantown, Moore Haven, Pahokee, and South Bay, respectively). The alleged contribution by each Defendant is even less. *Id.* The TAC is devoid of any allegations of injury based on such low levels.

Plaintiffs' attempt to liken sugarcane burning to the 2018 Camp Fire in California defies "common sense." Pls. Opp. at 1, 10. As Plaintiffs acknowledge, the Camp Fire was an **uncontrolled** burn of more than 150,000 contiguous acres in 17 days. *Id.* at 1. By contrast, sugarcane burns are tightly regulated and are interspersed throughout the putative class area, involve 40- to 80-acre fields that burn in less than an hour, and are performed over a six- to eight-month burn season. TAC ¶¶ 116, 119; Fla. Stat. § 590.125; Fla. Admin. Code § 5I.2.006.

***Finally,*** Plaintiffs offer no meaningful response to their failure to provide modeling results specific to particular Plaintiffs and their properties. MTD Br. at 10. Instead of modeling alleged impacts at Plaintiffs' addresses and tracing those alleged impacts to each Defendant, Plaintiffs elected to model hypothetical receptors throughout the putative class area. Even then, however, the TAC fails to provide modeling results for the hypothetical receptor(s) closest to each Plaintiff. Rather, the TAC artificially "groups" the thousands of hypothetical receptors by town and cherry picks only the maximum projected results from anywhere within each town. TAC ¶¶ 149-52 &

Ex. B. The TAC therefore fails to allege both the projected exposure actually experienced by each Plaintiff and each Defendant's alleged contribution to the projected exposure.

Plaintiffs say it would have been "impractical" and "facially absurd" to provide modeling results for each individual burn event. Pls. Opp. at 8. Defendants never suggested they do so. MTD Br. at 10. As the Court held, however, Plaintiffs must "show[] that each of the Plaintiffs has been harmed by all of the Defendants." *Coffie*, 460 F. Supp. 3d at 1305. There are only ten Plaintiffs named in the TAC. It would not have taken an "encyclopedia" or "clog[ged] hard drives" (Pls. Opp. at 8) to provide modeling results for each of them. Plaintiffs provided modeling results for groups of hypothetical receptors for seven towns (TAC Ex. B); they easily could have provided similar results specific to the ten Plaintiffs. They simply chose not to do so.

In sum, the Court allowed Plaintiffs an opportunity to cure the Article III standing deficiencies and otherwise state plausible claims, subject to Rule 11. Plaintiffs failed to do so. For this reason alone, the TAC—Plaintiffs' fourth pleading—should be dismissed with prejudice.

## II. The TAC Fails To State A Takings/Section 1983 Claim.

### A. There Is No State Action.

Plaintiffs have not provided any basis for their extraordinary attempt to treat private parties operating under government permits as state actors. Plaintiffs suggest that it is enough for state action that the Forest Service had "'some affirmative role'" and "'encourage[d]'" Defendants' burns. Pls. Opp. at 14 (citing *Rayburn v. Hogue*, 241 F.3d 1341, 1348 (11th Cir. 2001)). But Plaintiffs ignore U.S. Supreme Court authority that encouragement must be so "significant" that "the choice must in law be deemed to be that of the State." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982); MTD Br. at 13. Plaintiffs' own authority confirms that the "nexus/joint action" test requires "'a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself.'" *Focus on the Family v. Pinellas Suncoast Transit. Auth.*, 344 F.3d 1263, 1277-78 (11th Cir. 2003) (quoting *Blum*, 457 U.S. at 1004). Plaintiffs do not even attempt to meet this standard. Nor can they. Plaintiffs have conceded that the Forest Service provides no such encouragement. ECF 104 at 8 (asserting that pre-harvest burning is not "endorsed" by the State and that the Forest Service "merely provides Defendants the opportunity to request authorization for a burn").

The Eleventh Circuit cases cited by Plaintiffs (at 14) are entirely inapposite. In *Focus on the Family*, 344 F.3d at 1277-79, the court found state action where a public transit authority

5

"contractually required" and "unmistakably directed" a private advertising agency to take the challenged action. It was in that context that the court found they were "'joint participants in the enterprise.'" *Id.* at 1277. In *Rayburn*, 241 F.3d at 1348, the court declined to find state action where State-regulated foster parents engaged in child abuse. The court made clear that "the mere fact that a State regulates a private party is not sufficient to make that party a State actor." *Id.* And in *Willis v. Univ. Health Servs.*, 993 F.2d 837, 840-41 (11th Cir. 1993), the court declined to find state action where a private party operated a hospital under a lease with the public hospital authority.

Plaintiffs argue that in approving burn permits, the Forest Service "plays a decisive role in creating, approving, and enforcing a rule" dictating how Defendants perform burns. Pls. Opp. at 14-15. But that is true in any highly regulated industry. And the case law is clear that operating under government permits and regulations—no matter how onerous—does not convert a private party into a state actor. MTD Br. at 13; *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 357 (1974) (finding no state action by private but heavily regulated utility company).

### B. Plaintiffs Fail To State A Takings Claim.

In addition to lacking the requisite state action, the TAC fails to state a takings claim as a matter of law. This is not a case where a party has been denied use of all or a portion of their land, nor one where exercise of property rights is infringed. Plaintiffs' properties continue to be used for residential purposes. Plaintiffs also fail to claim any property use that predates pre-harvest burning, and thus there can be no interference with any investment-backed expectation of any land use free from nearby agriculture, including the use of pre-harvest burning.

Plaintiffs mistakenly emphasize partial takings cases in an attempt to claim that the migration of pollutants is a physical taking of land. Pls. Opp. at 15-16. In those cases, a portion of land was denied to plaintiffs whether by mandated physical installations as in *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 426 (1982), by fencing off a portion of a property as in *John R. Sand & Gravel Co. v. United States*, 457 F.3d 1345, 1357 (Fed. Cir. 2006) or by flooding that precluded the use of a property as in *United States v. Dickinson*, 331 U.S. 745, 748 (1947). Nothing comparable has allegedly occurred here.

Nor are cases where pollution renders groundwater unusable applicable. Pls. Opp. at 15-16. In those cases, there was an established use of groundwater that had been prevented by contamination of the water supply. By contrast, in this case, nothing has been installed on any Plaintiffs' property, no obstruction to their use of the property has been imposed, and there is no

6

allegation of any established use predating pre-harvest burning that has been prevented. Alleged migration of atmospheric constituents, from practices that predate Plaintiffs' land use, is not a physical occupation and Plaintiffs cite no case to support such a theory.

      **C.**      **Plaintiffs Cannot Seek Injunctive Relief For Alleged Takings.**

The Court held that Plaintiffs' injunctive relief claims are barred by the primary jurisdiction doctrine. *Coffie*, 460 F. Supp. 3d at 1308-11 (following *Flo-Sun, Inc. v. Kirk*, 783 So. 2d 1029, 1036-37 (Fla. 2001)). Plaintiffs ignore the Court's holding and offer no explanation why they would be allowed to seek the same injunctive relief under the guise of a takings claim. For this reason alone, Plaintiffs' request for injunctive relief should be dismissed.

Apart from *Kirk*, there is also no basis for injunctive relief on a takings claim "[a]s long as an adequate provision for obtaining just compensation exists." *Knick v. Township of Scott, Pa.*, 139 S. Ct. 2162, 2176 (2019). Plaintiffs attempt to rely on an exception to the rule where a taking is executed "solely to confer a private benefit." Pls. Opp. at 16. But that exception cannot apply here. Even if Defendants received a private benefit from pre-harvest burning, the Forest Service's burn program has ample public benefits. *See, e.g.,* Fla. Dep't of Agriculture, Prescribed Fire in Florida (explaining that prescribed burning "reduce[s] hazardous fuel buildups, thus providing increased protection to people, their homes and the forest" from wildfires).[3]

**III.**    **The TAC Fails To State A Battery Claim.**

      **A.**      **The RTFA Bars Plaintiffs' Battery Claim.**

The Court held that the RTFA bars claims that are nothing more than "relabeled" nuisance claims, including the trespass claims in the FAC. *Coffie*, 460 F. Supp. 3d at 1306-08. Plaintiffs argue that trespass and nuisance remedy different harms than battery claims, so the RTFA does not bar their battery claim. Pls. Opp. at 17-18. Not so. The allegations supporting Plaintiffs' battery claim are nearly identical to the trespass and nuisance allegations the Court has already found were barred by the RTFA.[4] Those allegations show that Plaintiffs' battery claim is based on the alleged

---

[3] *Available at* https://www.fdacs.gov/Forest-Wildfire/Wildland-Fire/Prescribed-Fire.

[4] *Compare* TAC ¶ 248 ("Plaintiffs have been exposed without consent to carcinogens, hazardous pollutants, and particulate matter from each Defendant's sugarcane burning.") *with* FAC ¶ 159 ("Defendants, without the consent or authority … of [Plaintiffs] … voluntarily and intentionally caused the toxic and damaging 'black snow' plumes, to enter and contaminate Plaintiffs' and Class Members' homes and properties."); ¶ 164 ("acts and/or omissions of Defendants that cause the toxic and damaging 'black snow' and its many contaminants … to pass through, be deposited on, and to enter and otherwise infiltrate and remain upon [Plaintiffs' property]….").

nuisance aspect of sugarcane burning and is simply a variation of Plaintiffs' failed nuisance and trespass claims. Plaintiffs' battery claim should be dismissed.

### B. Plaintiffs Do Not Allege The Requisite Intent To State A Claim For Battery.

Plaintiffs concede that Florida law requires a showing of intent or "substantial certainty" of harm to state a battery claim. MTD Br. at 16; Pls. Opp. at 18. Yet Plaintiffs point to no allegations in the TAC to show that any Defendant—much less all Defendants—intended or were substantially certain that sugarcane burns would cause a harmful or offensive touching to Plaintiffs. Indeed, as set forth in Part I above, the modeling underlying the TAC does not even project that each Defendant's burning exposed Plaintiffs to injurious levels of particulate matter or other constituents and fails to tie the hypothetical receptors to particular Plaintiffs.

Plaintiffs' authority misses the mark. Unlike in *In re E.I. du Pont de Nemours & Co. Personal Injury Litigation*, Defendants' disagreement with Plaintiffs is not over whether the substantial certainty standard should be applied. *See* 2015 WL 4092866, at *15 (S.D. Ohio July 6, 2015). Rather, Defendants contend that Plaintiffs have simply failed to satisfy this threshold requirement.[5] Similarly, although the court in *Powell v. Tosh*, 2011 WL 1674957 (W.D. Ky. May 3, 2011), initially allowed a battery claim under Kentucky law to proceed based on particulate touching, the court subsequently dismissed the plaintiffs' battery claim. In doing so, the court reasoned: "the record does not indicate any defendant raises hogs or ventilates the barns *with the purpose of releasing odors into the surrounding community*. Although defendants may have knowledge that odors could reach neighboring properties, like the courts in the aforementioned cases, the Court finds such *generalized knowledge is insufficient to satisfy the intent requirement for battery*." *Powell v. Tosh*, 929 F. Supp. 2d 691, 708 (W.D. Ky. 2013) (emphasis added), *vacated in part on reconsideration*, 2013 WL 1878934 (W.D. Ky. May 3, 2013). The TAC does not allege any facts to support a claim that any Defendant intended to batter Plaintiffs when it performed sugarcane burns. Instead, Plaintiffs simply allege Defendants "knew or should have known" that sugarcane burns could expose Plaintiffs to certain constituents. TAC ¶ 249.

---

[5] The *E.I. du Pont* court's further conclusion that a battery claim under Ohio law does not require that "the harm must be directed to a particular plaintiff," 2015 WL 4092866, at *15, is not relevant to Plaintiffs' claim under Florida law. As other jurisdictions have recognized, the substantial certainty standard requires more than generalized knowledge of contact with unspecified individuals. *See, e.g., Major v. Astrazeneca, Inc.*, 2006 WL 2640622, at *21 (N.D.N.Y. Sept. 13, 2006); *Shaw v. Brown & Williamson Tobacco Corp.*, 973 F. Supp. 539, 548 (D. Md. 1997); *Rose v. Braciszewski*, 2009 WL 3276431, at *1 (Mich. Ct. App. Oct. 13, 2009).

8

Plaintiffs argue that anonymous complaints about sugarcane burning have been reported to the Palm Beach County Health Department and the Florida Department of Forestry. TAC ¶¶ 124-126. But generalized complaints about sugarcane burning do not establish a substantial certainty of contact as to any Defendant, much less all Defendants. *See, e.g., Powell*, 929 F. Supp. 2d at 708. Nor is Plaintiffs' conclusory statement that complaints are "passed on directly to the sugarcane industry itself" sufficient, TAC ¶ 126, as Plaintiffs do not indicate which Defendants allegedly received the complaint, or when the complaint was allegedly made. Because Plaintiffs do not plead the intent required by Florida law, the battery claim should be dismissed.

## IV.     The TAC Fails To State A Medical Monitoring Claim.

Plaintiffs do not dispute that they must adequately allege exposure to greater than normal background levels of a proven hazardous substance that increases their risk of contracting a serious latent disease. MTD Br. at 17; *Petito v. A.H. Robins Co., Inc.*, 750 So. 2d 103, 106-07 (Fla. 3d DCA 1999). As shown in Part I.B., Plaintiffs have not done so. Publicly-available air monitoring data confirms that air quality in the putative class area is well within regulatory standards and just as clean as neighboring areas that Plaintiffs contend were not impacted by pre-harvest burns. Plaintiffs' modeling also does not identify unsafe levels of particulate matter or other constituents that would create a significantly increased risk of serious latent disease. Because Plaintiffs have: (1) failed to plausibly allege that any Defendant's agricultural practices are the cause of any significant increase in pollution concentrations (*i.e.,* above general background) or in violation of any air quality standards set by FDEP or U.S. EPA,[6] or (2) that Defendants' conduct caused a greater than normal exposure to any proven hazardous substance, the Court should dismiss Plaintiffs' claim for medical monitoring.

## CONCLUSION

For the foregoing reasons, the Third Amended Complaint—Plaintiffs' fourth attempt to state viable claims—should be dismissed with prejudice.

---

[6] Not only is Plaintiffs' claimed class-wide harm built on defective modeling, the use of AERMOD, a "regulatory-based, not an exposure-based, model" "tells the fact finder in a medical monitoring case very little, if anything, … about whether a class of individuals suffered significant exposure to a proven hazardous substance." *Coleman v. Union Carbide Corp.*, 2013 WL 5461855, at *24 (S.D.W.V. Sept. 30, 2013). The use of AERMOD "is a speculative conglomeration of data that is unreliable on the question of exposure." *Id*. at 25.

Dated: December 16, 2020                    Respectfully submitted,

By: /s/ Gregor J. Schwinghammer, Jr.
Gregor J. Schwinghammer, Jr.
Florida Bar No. 90158
Brian M. McPherson
Florida Bar No. 735541
GUNSTER, YOAKLEY & STEWART, P.A.
777 South Flagler Drive, Suite 500 East
West Palm Beach, FL 33401
Telephone:  (561) 833-1970
Facsimile:  (561) 655-5677
gschwinghammer@gunster.com
bmcpherson@gunster.com

By: /s/ Eugene K. Pettis
Eugene K. Pettis
Florida Bar No. 508454
HALICZER PETTIS & SCHWAMM, P.A.
100 SE 3rd Avenue
Seventh Floor,
Fort Lauderdale, FL 33394
Telephone: (954) 523-9922
Facsimile:  (954) 522-2512
service@hpslegal.com

Mark Ter Molen
Timothy S. Bishop
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL  60606
Telephone:  (312) 782-0600
Facsimile:  (312) 701-7711
mtermolen@mayerbrown.com
tbishop@mayerbrown.com

*Counsel for Defendants U.S. Sugar Corporation, Independent Harvesting, Inc., and Sugarland Harvesting Co.*

By: /s/ Gary V. Perko
Gary K. Hunter
Florida Bar No. 949779
Gary V. Perko
Florida Bar No. 855898
Mohammad O. Jazil

10

Florida Bar No. 72556
HOPPING GREEN & SAMS, P.A.
119 S. Monroe Street, Suite 300
Tallahassee, FL 32301
Telephone: (850) 222-7500
Facsimile: (850) 224-8551
garyh@hgslaw.com
garyp@hgslaw.com
mjazil@hgslaw.com

David J. Abbey
Florida Bar No. 228222
Jennifer J. Kennedy
Florida Bar No. 517267
ABBEY, ADAMS, BYELICK & MUELLER, LLP
3201 U.S. Highway 19 South, 9th Floor
St. Petersburg, Florida 333711
Telephone: (727) 821-2080
Facsimile: (727) 822-3970
dabbey@abbeyadams.com
kennedy@abbeyadams.com

*Counsel for Defendant Sugar Cane Growers Cooperative of Florida*

By: /s/ Mark D. Anstoetter
Jennifer A. McLoone
Florida Bar No. 29234
SHOOK, HARDY & BACON L.L.P.
Citigroup Center, Suite 3200
201 S. Biscayne Blvd.
Miami, Florida 33131
Ph: (305) 358-5171
Fax: (305) 358-7470
jmcloone@shb.com

Mark D. Anstoetter
David Brent Dwerlkotte
SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, MO 64108
Ph: (816) 474 6550
Fax: (816) 421-5547
manstoetter@shb.com
dbdwerlkotte@shb.com

Joseph P. Klock, Jr.
Florida Bar No. 156678
RASCO KLOCK PEREZ NIETO PL
2555 Ponce de Leon Blvd., Suite 600
Coral Gables, Florida 333134
Ph: (305) 467-711
Fax: (305) 675-7707
jklock@rascoklock.com

David S. Dee
Florida Bar No. 281999
GARDNER, BIST, BOWDEN, BUSH,
DEE, LAVIA & WRIGHT, P.A.
1300 Thomaswood Drive
Tallahassee, Florida 32308
Ph: (850) 385-0070
Fax: (850) 385-5416
ddee@gbwlegal.com

*Counsel for Defendants Florida Crystals Corporation, Osceola Farms Co., and Okeelanta Corporation*

By: /s/ Forrest L. Andrews
Mark A. Hendricks
Florida Bar No. 768146
Forrest L. Andrews
Florida Bar No. 17782
LYDECKER DIAZ
1221 Brickell Avenue, 19th Floor
Miami, Florida 33131
Telephone: (305) 416-3180
Facsimile: (305) 416-3190
mah@lydeckerdiaz.com
fla@lydeckerdiaz.com

*Counsel for Defendant Trucane Sugar Corporation*

By: /s/ Andrew S. Connell, Jr.
Andrew S. Connell, Jr.,
Florida Bar No. 038430
LITCHFIELD CAVO, LLP
600 Corporate Drive Suite 600
Ft. Lauderdale, Florida 33334

12

                                        Telephone: 954/689-3000
                                        Facsimile: 954/689-3001
                                        connell@litchfieldcavo.com

                                        *Counsel for Defendant J & J Ag Products, Inc.*

13

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of December, 2020, I filed the foregoing through the Court's CM/ECF system, which sent notification to all counsel of record.

/s/ Gregor J. Schwinghammer, Jr.