UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-80730-CIV-SMITH

CLOVER COFFIE, et al.,

        Plaintiffs,

vs.

FLORIDA CRYSTALS CORPORATION, *et al.*,

        Defendants.
_____/

## ORDER GRANTING IN PART DEFENDANTS' MOTIONS TO DISMISS

This matter is before the Court on Defendants'[1] Motion to Dismiss Plaintiffs' Third Amended Class Action Complaint [DE 153], Defendants Florida Crystals Corporation, Osceola Farms Co., Okeelanta Corporation, and Sugar Cane Growers Cooperative of Florida's (jointly, "Florida Crystals") Motion to Dismiss Plaintiffs' Third Amended Complaint [DE 154], Plaintiffs' Opposition to Defendants' Motions to Dismiss Third Amended Complaint [DE 155], Defendants' Reply in Support of their Motion to Dismiss Plaintiffs' Third Amended Class Action Complaint [DE 156], and Defendants Florida Crystals Corporation, Osceola Farms Co., Okeelanta Corporation, and Sugar Cane Growers Cooperative of Florida's Reply in Support of Motion to Dismiss Plaintiffs' Third Amended Complaint [DE 157]. Plaintiffs' Third Amended Class Action Complaint ("TAC") [DE 152], brought pursuant to the Class Action Fairness Act of 2005, seeks damages, medical monitoring, and injunctive relief on behalf of Plaintiffs and three putative classes for damages caused by Defendants' preharvest sugarcane burning. For the reasons set forth

---

[1] The term "Defendants" refers to all Defendants.

below, Florida Crystal's Motion is denied and Defendants' Motion is granted as to Count III for violation of 42 U.S.C. § 1983 and Count V for battery.

I.   **THE THIRD AMENDED COMPLAINT**[2]

*Preharvest Burning*

Defendants farm sugarcane on approximately 400,000 acres in the areas south and southeast of Lake Okeechobee and around the towns of Belle Glade, South Bay, Pahokee/Canal Point, Clewiston, Moore Haven, and Indiantown (the "Hazard Zone").[3] (TAC ¶¶ 1, 4.) Defendants use a method for harvesting sugarcane that burns off the outer leaves of the sugarcane prior to harvesting. (*Id.* at ¶¶ 1, 115.) The preharvest burns generally occur during the six- to eight-month period beginning in October and ending between March and May. (*Id.* at ¶ 116.) The burns are done on 40- to 80-acre tracts of land at a time and are regulated by the Florida Forest Service ("FFS"), through the issuance of burn permits. (*Id.* at ¶ 119.) On some days during burn season, the FFS may approve as many as 60 burn permits. (*Id.* at ¶ 116.)

Prior to a burn, a Defendant must apply for and receive a burn permit from the FFS. (*Id.*) The day before a burn event, the Defendant must notify the FFS of the location and date of the planned burn and then the FSS either grants or denies approval, based on anticipated meteorological conditions and other factors. (*Id.*) The FSS approves or denies permits based on wind conditions. (*Id.* at ¶ 120.) Under current regulations promulgated by the State of Florida, the FFS denies permits if winds are projected to blow toward eastern Palm Beach County and eastern Martin County but issues permits when the winds blow toward the Hazard Zone. (*Id.* at ¶ 121.)

---

[2] Plaintiffs' filed a Second Amended Complaint and then sought leave to file a Third Amended Complaint to correct errors in their air modeling calculations.
[3] The "Hazard Zone" is more fully described in the TAC at paragraph 23.

The smoke from preharvest burning is toxic, containing a wide range of pollutants, including particulate matter, dioxins, polycyclic aromatic hydrocarbons ("PAHs"), volatile organic compounds ("VOCs"), carbon monoxide, sulfur oxides, nitrogen oxides, ammonia, elemental carbon, and organic carbon. (*Id.* at ¶ 7.) Many of these pollutants are designated as "hazardous substances" under both federal and Florida law. (*Id.* at ¶ 134.)

The burning also causes soot and ash, called "black snow," to fall on the homes, cars, and other property of residents in the Hazard Zone. (*Id.* at ¶ 7.) The FFS projects that the smoke can travel up to twenty-six miles from each burn. (*Id.* at ¶ 11.) Preliminary air dispersion modeling conducted by Plaintiffs demonstrates that byproducts of burning conducted by each Defendant impacts receptors, points of impact overlaid on a grid, in all communities in the class area and that Defendants' burning cumulatively exceeds air quality standards for serval hazardous or carcinogenic pollutants at many points modeled in these communities. (*Id.* at ¶ 12.)

The particles emitted by a burn are harmful to people and property because particulate matter itself is harmful and can infiltrate the lungs and other pollutants can attach onto particulate matter and migrate onto people and property. (*Id.* at ¶ 131.) Because of pre-harvest burning, the pesticides, fungicides, and herbicides used by Defendants also migrate as part of the black snow. (*Id.* at ¶ 133.)

Each Defendant was aware that emissions from its burning contained toxic chemicals and pollutants, was aware of the impact on the Hazard Zone, and nevertheless proceeded to burn despite knowledge of safe alternatives. (*Id.* at ¶ 135.) Each Defendant was aware that the smoke from its burns travels for miles and invades the lands and properties of each named Plaintiff, each resident of the affected communities, and members of the proposed classes. (*Id.*)

The burning makes residents and field workers sick. (*Id.* at ¶ 17.) Research has linked

exposure to pre-harvest sugarcane burning to a variety of health issues, including respiratory diseases, cancer, kidney disease, and poor infant health outcomes. (*Id.*)  The high amounts of certain particulate matter puts Plaintiffs at a higher risk of developing lung cancer. (*Id.* at ¶¶ 18, 180.)

### *Plaintiffs' Preliminary Modeling*

Using data from an FFS database, Plaintiffs have used AERMOD, an atmospheric dispersion modeling system developed by the American Meteorological Society and the Environmental Protection Agency ("EPA"), to model the air dispersion of nine pollutant categories for each Defendant's burns. (*Id.* at ¶ 148.)  The nine pollutant categories are: (1) particulate matter; (2) carbon monoxide and carbonyl ("CO"); (3) sulfur oxides ("SOx"); (4) nitrogen oxides ("NOx"); (5) ammonia; (6) VOCs; (7) elemental carbon ("EC"); (8) organic carbon ("OC"); and (9) PAHs. (*Id.* at ¶ 148.)  According to Plaintiffs' modeling, every receptor in every community in the Hazard Zone has been affected by each of Defendants' individual burning. (*Id.* at ¶ 152.)  Every named Plaintiff resides in or around the receptors. (*Id.*)   According to Plaintiffs' air modeling, from 2014 through 2018, Defendants' burns caused particulate matter to exceed National Ambient Air Quality Standards ("NAAQS") at receptors in Belle Glade, Canal Point, Pahokee, and South Bay. (*Id.* at ¶ 153.)  The same model demonstrates that emissions from Defendants' burn events exceeded other federal standards. (*Id.* at ¶ 156.)

In addition to using AERMOD, Plaintiffs also used INPUFF, an alternative model developed by the EPA, to preliminarily model select burns. (*Id.* at ¶ 160.)  Plaintiffs' INPUFF modeling also indicates that each Defendant has individually contributed smoke, particulate matter, and toxic pollutants to the entire Hazard Zone. (*Id.* at ¶ 162.)  Additionally, preliminary sampling of three homes in the Hazard Zone found sugar cane plant residue in attic dust and wipe

samples taken from around the three homes. (*Id.* at ¶ 165.)

### *Plaintiffs*

Plaintiff William Armstrong is a resident of Glades County, Florida, who owns and lives on property in Moore Haven. (*Id.* at ¶ 24.) Between two and three days per week, black snow/ash falls on and damages Armstrong's property and exposes him to hazardous pollutants, causing health problems. (*Id.* at ¶¶ 25, 29.) Plaintiff Gloria Atkins is a resident of Hendry County, Florida, who owns and lives on property in Clewiston. (*Id.* at ¶ 31.) For six to eight months per year, Atkins is exposed to and inhales smoke and particulate matter from Defendants' burns. (*Id.* at ¶ 32.) All Defendants' actions have damaged Atkin's property. (*Id.* at ¶ 36.) Plaintiff James Brooks is a resident of Hendry County, Florida, who resides and owns property in Clewiston near Defendants' sugarcane fields. (*Id.* at ¶ 37.) For six to eight months per year, Brooks is exposed to smoke and particulate matter from Defendants' burns and is denied the normal use and enjoyment of his property. (*Id.* at ¶ 38.) On burn days, still-lit embers rain down from the nearby fields. (*Id.*) Soot and ash accumulate on Brooks' property. (*Id.* at ¶ 40.) All Defendants' actions have damaged Brooks' property. (*Id.* at ¶ 44.)

Plaintiff Coffie is a resident of Palm Beach County, Florida, who owns and resides at property in Belle Glade, Florida. (*Id.* at ¶ 45.) For six to eight months per year, Coffie is exposed to and inhales smoke and particulate matter from Defendants' burns and is denied the normal use and enjoyment of his property. (*Id.* at ¶ 46.) Ash accumulates on Coffie's property during burn season. (*Id.* at ¶ 47.) Defendants' actions have damaged Coffie's property. (*Id.* at ¶ 48.) Plaintiff Jones is a resident of Palm Beach County, Florida. (*Id.* at ¶ 49.) Jones owns and resides at real property located in Pahokee, Florida. (*Id.*) During burn season, Jones is exposed to and smells smoke on her property every day and ash falls on her property several days a week. (*Id.* at ¶ 50.)

5

During burn season, Jones experiences breathing problems and itchy eyes and she sneezes and coughs often. (*Id.*) Ash, smoke, and particulate matter caused damage to Jones' property. (*Id.* at ¶ 52.) Black snow regularly falls on Jones' property. (*Id.* at ¶ 53.) Jones has been and will continue to be exposed to hazardous and dangerous pollutants from the burning and is concerned about developing cancer. (*Id.* at ¶ 54.) All Defendants' conduct has damaged Jones' property and has caused or contributed to Jones' loss of use and enjoyment of her property. (*Id.* at ¶ 55.) Plaintiff Legrand resides at property in Belle Glade, Florida. (*Id.* at ¶ 56.) During burn season, the smoke from the burning inundates the area in and around Legrand's apartment building. (*Id.* at ¶ 57.)

Plaintiff Mclean is a resident of Palm Beach County, Florida, who owns and resides at real property in South Bay, Florida. (*Id.* at ¶ 60.) During burn season, ash and smoke intrude on Mclean's property almost every day. (*Id.* at ¶61.) As a result, Mclean is exposed to and inhales smoke and particulate matter from Defendants' burns and is denied the normal use and enjoyment of his property. (*Id.*) Defendants' conduct has damaged Mclean's property and has contributed to or caused Mclean's loss of use and enjoyment of his property. (*Id.*) Plaintiff Reimbold is a resident of Glades County, Florida, who resides at and owns real property in Moore Haven, Florida. (*Id.* at ¶ 63.) For six to eight months per year, Reimbold is exposed to and inhales smoke and particulate matter from Defendants' burns. (*Id.* at ¶ 64.) During burn season, ash from the burns falls on Reimbold's property three to four times per week. (*Id.*) All Defendants' conduct has damaged Reimbold's property and has caused or contributed to his loss of use and enjoyment of the property. (*Id.* at ¶ 66.)

Plaintiff Smith is a resident of Hendry County, Florida, who owns and resides at property in Clewiston, Florida. (*Id.* at ¶ 67.) Smith owns two other pieces of property in Clewiston. (*Id.*)

For six to eight months per year, Smith is exposed to and inhales smoke and particulate matter from Defendants' burns. (*Id.* at ¶ 68.) As a result, Smith is denied the normal use and enjoyment of his property. (*Id.*) All Defendants' conduct has damaged Smith's property and has caused or contributed to Smith's loss of use and enjoyment of his property. (*Id.* at ¶ 69.) Plaintiff Wilcher is a resident of Palm Beach County, Florida. (*Id.* at ¶ 70.) She owns and resides at real property in South Bay, Florida. (*Id.*) For six to eight months per year, Wilcher is exposed to and inhales smoke and particulate matter from Defendants' burns. (*Id.* at ¶ 71.) Almost everyday during burn season, Wilcher smells smoke from Defendants' burns and ash rains down on her property. (*Id.*) Wilcher has been and will continue to be exposed to hazardous and dangerous pollutants from the burning, which have harmed her health. (*Id.* at ¶ 72.) All Defendants' conduct has damaged Wilcher's property and has caused or contributed to Wilcher's loss of use and enjoyment of her property. (*Id.* at ¶ 73.)

### *The Causes of Action*

Plaintiffs seek to certify three classes: (1) a property owner class; (2) a medical monitoring class; and (3) a battery class. The TAC alleges five causes of action against all Defendants: (1) negligence on behalf of the property owner class; (2) strict liability pursuant to section 376.313, Florida Statutes on behalf of the property owner class; (3) a violation of 42 U.S.C. § 1983 on behalf of the property owner class; (4) medical monitoring on behalf of the medical monitoring class; and (5) battery on behalf of the battery class. Plaintiffs seek an injunctive against any further burn events as relief for their § 1983 claim, damages for their negligence, battery, and section 376.308 claims, and medical monitoring.

## II. MOTION TO DISMISS STANDARD

The purpose of a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the facial sufficiency of a complaint. *See* Fed. R. Civ. P. 12(b)(6). The rule permits dismissal of a complaint that fails to state a claim upon which relief can be granted. *Id.* It should be read alongside Federal Rule of Civil Procedure 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although a complaint challenged by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff is still obligated to provide the "grounds" for his entitlement to relief, and a "formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

When a complaint is challenged under Rule 12(b)(6), a court will presume that all well-pleaded allegations are true and view the pleadings in the light most favorable to the plaintiff. *American United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1066 (11th Cir. 2007). However, once a court "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," it must determine whether the well-pled facts "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). A complaint can only survive a 12(b)(6) motion to dismiss if it contains factual allegations that are "enough to raise a right to relief above the speculative level, on the assumption that all the [factual] allegations in the complaint are true." *Twombly*, 550 U.S. at 555. However, a well-pled complaint survives a motion to dismiss "even if it strikes a savvy judge that actual proof of these facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* at 556.

## III. DISCUSSION

Defendants seek to dismiss the TAC because Plaintiffs have not cured the standing deficiencies from the Amended Complaint, Plaintiffs fail to state a plausible claim against each Defendant, the TAC fails to state a takings claim under § 1983, and the TAC fails to state a claim for battery. Additionally, in their separate motion, Florida Crystals, pursuant to the primary jurisdiction doctrine, seek to dismiss the TAC.

### A. Standing

Defendants seek to dismiss Plaintiffs' TAC because the Plaintiffs have not adequately alleged Article III standing. According to Defendants, Plaintiffs have not plausibly traced visible ash to each Defendant and Plaintiffs have not adequately alleged the actual presence of particulate matter and other pollutants or plausibly traced those pollutants to each Defendant. Article III standing requires that a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). At the pleading stage, a "plaintiff must clearly allege facts demonstrating each element." *Id.* (internal quotation marks omitted).

First, Defendants argue that Plaintiffs have not alleged facts that plausibly trace visible ash to any Defendant. While the TAC alleges that visible ash lands on Plaintiffs' properties and vehicles, nothing in the TAC discusses from where the visible ash on Plaintiffs' properties comes, other than from the sugarcane burning generally. Further, the Plaintiffs' air modeling does not address visible ash and, given the significant size difference between visible ash and particulate matter, it is not plausible to assume that what is true for smoke and pollutants is also true for the visible ash. Thus, Plaintiffs have failed to adequately allege that they have standing to bring claims

based on harm from the visible ash because they have not alleged which Defendant or Defendants are responsible for the visible ash on any Plaintiffs' property.

Next, Defendants argue that Plaintiffs have not adequately alleged the actual presence of particulate matter and other pollutants at an injurious level on all Plaintiffs' properties. Plaintiffs have, however, submitted and pled data from air modeling that used public data to show that burns by all of Defendants have affected all of the Hazard Zone. Additionally, Plaintiffs allege that preliminary sampling has found sugar cane residue in three houses in the Hazard Zone. Plaintiffs further allege that the particulate matter and other pollutants have caused property damage and health effects. Thus, when considered with the other allegations in the TAC, including the proximity of the burning to Plaintiffs' properties and the air modeling based on publicly available data, Plaintiffs have adequately pled standing as to harm from particulate matter and other pollutants. *See Adinolfe v. United Technologies Corp.*, 768 F.3d 1161 (11th Cir. 2014) (rejecting argument that plaintiffs lacked standing because they had not alleged actual contamination of their properties where plaintiffs alleged that their land was contaminated, alleged a diminution in value of their property, alleged the presence of the contaminants in test wells near their properties, and alleged the migration of the contaminants from the defendant's property to theirs).

Defendants also contend that the Court should reject Plaintiffs' air modeling because it contradicts publicly available air quality data, showing that the air quality in the putative class area meets air quality standards, including NAAQS. However, Plaintiffs have pled that even low levels of particulate matter can cause adverse health effects and Plaintiffs have alleged property damage. When read as a whole, the allegations in the TAC plead that particulate matter and other pollutants from all of Defendants' burning reaches all areas of the Hazard Zone. Further, Defendants arguments that Plaintiffs' air modeling is contradicted by real world monitoring is an evidentiary

issue best left for summary judgment or trial. Consequently, Plaintiffs have adequately alleged Article III standing.

**B.     Primary Jurisdiction**

Florida Crystals seeks to dismiss Plaintiffs' TAC pursuant to the primary jurisdiction doctrine. Florida Crystals argues that the TAC essentially challenges the regulatory schemes of three different agencies – the Florida Department of Agriculture and Consumer Services, the Florida Department of Environmental Protection ("FDEP"), and the federal Environmental Protection Agency ("EPA"). First, Florida Crystals seeks to dismiss Plaintiffs' claims for injunctive relief based on this Court's prior holding in *Coffie v. Florida Crystals Corp.*, 460 F. Supp. 3d 1297, 1311 (S.D. Fla. 2020), in which the Court dismissed Plaintiffs' claim for injunctive relief based on primary jurisdiction. Despite this prior holding, Plaintiffs once again seeks injunctive relief under a different theory of liability. In that same order, the Court held that Plaintiffs' claims for negligence, violation of section 376.313, Florida Statutes, and medical monitoring are not barred by the primary jurisdiction doctrine. *Id.* at 1310. Despite this, Florida Crystals once again seeks to dismiss Plaintiffs' negligence, section 376.313, Florida Statutes, and medical monitoring claims, as well as Plaintiffs' newly pled battery and § 1983 claims.[4] For the same reasons, the Court previously denied Florida Crystals' motion to dismiss based on primary jurisdiction, the Court denies the new motion.

**C.     Plaintiffs' § 1983 Claim**

Count III of the TAC alleges that the physical invasion of Plaintiffs' properties by both "black snow" and particulate matter violates 42 U.S.C. § 1983, because it amounts to takings

---

[4] Florida Crystals has essentially asked the Court to reconsider its prior ruling regarding the primary jurisdiction doctrine.

without just compensation. Section 1983 prohibits "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" "under color of" state law. 42 U.S.C. § 1983. In order to be state action[5] "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (quoting *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937 (1982)). Defendants seek to dismiss this claim because they are not state actors and, thus, the burning is not done by a state actor. Plaintiffs maintain that because FFS approves each burn permit, which includes establishing the burn's timing, generating burn maps to evaluate the expected results of the burns, and denying permits if winds are projected to blow in certain directions, FFS plays an active role in directing and encouraging the harmful conduct.

According to the Eleventh Circuit, the Supreme Court has set out three primary tests to determine whether state action exists. *Focus on the Fam. v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1277 (11th Cir. 2003). Plaintiffs contend that one of those tests, the nexus/joint action test, is applicable here. The nexus/joint action test applies where "the state has so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in the enterprise." *Id.* (quoting *Willis v. Univ. Health Servs., Inc.*, 993 F.2d 837, 840 (11th Cir. 1993)). Plaintiffs maintain that, because FFS plays a "decisive role in creating, approving, and enforcing a rule . . . that ensures that *only* class members (rather than more affluent Florida residents living to the east) bear the brunt of Defendants' conduct," the nexus/joint action test is satisfied. (Pls.

---

[5] "In cases under § 1983, 'under color' of law has consistently been treated as the same thing as the 'state action' required under the Fourteenth Amendment." *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982) (quoting *United States v. Price*, 383 U.S. 787, 794, n.7 (1966)). Thus, the Court will use these terms interchangeably.

Opp'n to Mot. at 15.) However, "[t]he mere fact that a business is subject to state regulation does not by itself convert its action into that of the State." *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 350 (1974). That is the case even if the regulations are extensive and detailed. *Id.* Thus, for a private party's actions to amount to state action, the private party's actions must be compelled by state law. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 170-71 (1970).

Plaintiffs have failed to allege the existence of any state action to support a claim under § 1983. While FFS's involvement in the permit process and its application and enforcement of state rules and regulations may aid Defendants in causing the harm Plaintiffs allege, FFS does not make the decision whether to burn the sugarcane and does not in any way compel Defendants to burn sugarcane. The decision to burn is entirely that of the Defendants. In fact, as Plaintiffs point out numerous times in the TAC, there are other means of harvesting sugarcane available to Defendants that Defendants refuse to utilize. Because Plaintiffs have failed to allege state action, Count III of the TAC is dismissed.

### D. Battery

Plaintiffs' battery claim alleges that Defendants' sugarcane burning results in harmful and offensive contact with Plaintiffs because Plaintiffs are exposed, without consent, to harmful particulate matter and pollutants and Defendant knew or should have known that this harmful matter would be released and impact residents of the Hazard Zone. Defendants seek to dismiss Plaintiffs' battery claim as barred by Florida's Right to Farm Act ("RTFA"), Fla. Stat. § 823.14, which states that its purpose is to "protect reasonable agricultural activities conducted on farm land from nuisance suits." Fla. Stat. § 823.14(2). The RFTA prohibits nuisance suits based on farm operations that were not a nuisance at the time the farm was established, and which conform to

generally accepted agricultural or management practices. Fla. Stat. § 823.14(4)(a).[6] As Defendants note, the Court previously dismissed Plaintiffs' nuisance and trespass claims as barred by the RTFA. *See Coffie*, 460 F. Supp. 3d at 1307. Defendants argue that the battery claim is "just a variation of Plaintiffs' nuisance and trespass claims," with the only difference being that the battery claim involves contact with persons and the trespass claim involves contact with property. (Mot. at 15.) Defendants also argue that dismissal is proper because Defendants' lacked the requisite intent to batter Plaintiffs.

The Court agrees with Defendants; Plaintiffs' battery claim is essentially another version of Plaintiffs' dismissed nuisance and trespass claims and is barred by the RTFA. Plaintiffs' Amended Complaint [DE 10] alleged a trespass claim, alleging "Defendants, without the consent or authority and against the will of [Plaintiffs] voluntarily and intentionally caused the toxic and damaging 'black snow' plumes, to enter and contaminate Plaintiffs' . . . homes and properties." (Am. Compl. ¶ 159.) Similarly, Plaintiffs' dismissed nuisance claim alleged that Defendants' acts cause damaging "black snow" and contaminants to pass through, be deposited on, enter, and otherwise infiltrate Plaintiffs' properties and that Defendants knew or should have known that their acts and omissions were wrongful. (*Id.* ¶¶ 164-65.) The TAC's battery claim alleges that

---

[6] Although not applicable, it is worth noting that the RTFA was amended during Florida's 2021 legislative session, with an effective date of July 1, 2021. 2021 Fla. Sess. Law Serv. Ch. 2021-7 (C.S.C.S.C.S.S.B. 88) (West). The amended statute states that its purpose is "to protect reasonable agricultural . . . activities conducted on farm land from nuisance suits *and other similar lawsuits*." *Id.* (emphasis added). The statutory revision also includes a new subsection (3)(f), which sets forth a definition for "nuisance:" "'Nuisance' means any interference with reasonable use and enjoyment of land, including, but not limited to, noise, smoke, odors, dust, fumes, particle emissions, or vibration. The term also includes all claims that meet the requirements of this definition, regardless of whether the plaintiff designates those claims as brought in nuisance, negligence, trespass, personal injury, strict liability, or other tort." FL LEGIS 2021-7, 2021 Fla. Sess. Law Serv. Ch. 2021-7 (C.S.C.S.C.S.S.B. 88) (WEST). Thus, it is clear that, going forward, the legislature intends for the RTFA to apply to more than just actual nuisance claims.

Defendants' "burning has resulted in harmful and offensive contact with [Plaintiffs]. Specifically, Plaintiffs have been exposed without consent to carcinogens, hazardous pollutants, and particulate matter from each Defendant's sugarcane burning" and "Defendants knew or should have known that, as a result of their sugarcane burning, these carcinogens, hazardous pollutants, and particulate matter would be released, or were substantially certain to be released, into the air and impact [Plaintiffs]." (TAC ¶¶ 248-49.) For the same reasons, set out in the Court's Order Granting in Part Defendants' Motions to Dismiss, *Coffie*, 460 F. Supp. 3d at 1306-07, the battery claim in the TAC is barred by the RTFA.

Moreover, Plaintiffs' battery claim must also be dismissed because Plaintiffs have not adequately alleged the requisite intent for a battery claim. Under Florida law, "battery consists of the infliction of a harmful or offensive contact upon another with the intent to cause such contact or the apprehension that such contact is imminent." *Paul v. Holbrook*, 696 So. 2d 1311, 1312 (Fla. 5th DCA 1997). The intent necessary for battery is such that a reasonable man would believe that a particular result was substantially certain to follow; however, the appreciation of a risk, short of substantial certainty, is not the equivalent of intent. *Spivey v. Battaglia*, 258 So. 2d 815, 817 (Fla. 1972). Plaintiffs' allegations that Defendants knew or should have known that their sugarcane burning would release pollutants and impact essentially all of the residents of the Hazard Zone are too vague and conclusory to plead intent on the part of each Defendant. Consequently, Count V for battery is dismissed.

### E. Medical Monitoring

Finally, Defendants seek to dismiss Plaintiffs' medical monitoring claim, Count IV, because Plaintiffs have not adequately alleged that they were "'expose[d] to greater than normal background levels' to a proven hazardous substance caused by a defendant's negligence." (Mot.

at 17 (quoting *Petito v. A.H. Robins Co., Inc.*, 750 So. 2d 103, 106-07 (Fla. 3d DCA 1999))). Defendants maintain that Plaintiffs' preliminary air modeling is inconsistent with real world data. Defendants further argue that Plaintiffs "cannot allege that it is Defendants' conduct that caused a greater than normal background level [of hazardous substances] because there are many other sources of fires and other emissions that contribute to background levels." (Mot. at 17.) In Florida, the elements of a medical monitoring claim are:

> (1) exposure greater than normal background levels; (2) to a proven hazardous substance; (3) caused by the defendant's negligence; (4) as a proximate result of the exposure, plaintiff has a significantly increased risk of contracting a serious latent disease; (5) a monitoring procedure exists that makes the early detection of the disease possible; (6) the prescribed monitoring regime is different from that normally recommended in the absence of the exposure; and (7) the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles.

*Petito*, 750 So. 2d at 106–07 (quoting *Barnes v. The American Tobacco Co.*, 161 F.3d 127, 138–39 (3d Cir. 1998)). Thus, Defendants appear to be challenging whether Plaintiffs have adequately pled the first three elements of the claim.

First, the Court notes that it previously found that Plaintiffs had adequately pled the first three elements. *See Coffie*, 460 F. Supp. 3d at 1314. Second, the issues raised by Defendants, Plaintiffs air modeling data versus the available "real-world data" and potential other contributing factors to background levels, are evidentiary issues better addressed at summary judgment or trial. Consequently, Defendants' motion to dismiss the medical monitoring claim, Count IV, is denied.

Accordingly, it is

**ORDERED that:**

1.   Defendants Florida Crystals Corporation, Osceola Farms Co., Okeelanta Corporation, and Sugar Cane Growers Cooperative of Florida's Motion to Dismiss Plaintiffs' Third Amended Complaint [DE 154] is **DENIED.**

2.  Defendants' Motion to Dismiss Plaintiffs' Third Amended Class Action Complaint [DE 153] is **GRANTED in part and DENIED in part.** Counts III and V are **DISMISSED** with prejudice.

3.  Defendants shall file an answer to the Third Amended Complaint by **July 16, 2021.**

4.  The parties shall file an amended Joint Scheduling Report and proposed Scheduling Order, with specific dates, by **August 2, 2021**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 2nd day of July, 2021

RODNEY SMITH
UNITED STATES DISTRICT JUDGE

cc: All counsel of record