# Composite Exhibit B

**SHOOK**
HARDY & BACON

Mark D. Anstoetter

2555 Grand Blvd.
Kansas City, Missouri 64108
**t** 816.474.6550
**f** 816.421.5547
manstoetter@shb.com

December 31, 2021

**By Electronic Mail Only**:

Matthew T. Moore
THE BERMAN LAW GROUP
P.O. BOX 272789
Boca Raton, FL 33427
Email: mmoore@thebermanlawgroup.com

*RE:  Coffie, et al. v. United States Sugar Corp., et al.*

Dear Matthew:

I write to address certain deficiencies in Plaintiffs Clover Coffie, Debra Jones, Donald McLean, Elijah Smith, Gloria Atkins, James Brooks, Linda Wilcher, Robert Reimbold, Shante Legrand, and William Armstrong (collectively, "Plaintiffs") responses to Okeelanta Corporation's First Interrogatories, U.S. Sugar Corporation's First Interrogatories, and Defendants' First Requests for Production.  We reserve the right to raise further issues with Plaintiffs' discovery responses.

## I.    GENERAL DEFICIENCIES

Plaintiffs have wholly failed in their responses to comply with the Federal Rules of Civil Procedure.  For example, Plaintiffs object to every discovery request, but have failed to indicate whether Plaintiffs are withholding documents based on their objections.  As such, Plaintiffs' responses categorically violate Rule 34(b)(2)(C), which requires that Plaintiffs state whether any documents are being withheld subject to objections.  Listing out "general objections" and then stating any response is "subject to" those objections is improper, exposes the responding party and counsel to potential sanctions, and provides opposing counsel and the Court with no clue as to what is actually being produced or withheld.  Please amend these deficient responses to comply with Rule 34.  *See, e.g., Fischer v. Forrest*, No. 14-CV-1304, 2017 WL 773694 (S.D.N.Y. 2017).

Relatedly, Plaintiffs' boilerplate privilege objections do not comply with Rule 26(b)(5) or Rule 34(b)(2)(C).  Simply stated, boilerplate and meritless objections are no longer justified or permitted, and can no longer exist in the twenty-first century world of ESI.

Plaintiffs also object to several Requests and Interrogatories as "not reasonably calculated to lead to the discovery of admissible [documents or] information." *See* Pls.' General Objection No. 1 (incorporated by reference into Pls.' Responses to Requests) and Pls.' General Objection No. 4 (incorporated by

**SHOOK**
HARDY & BACON

reference into Pls.' Responses to Interrogatories).  These objections are improper, including because the 2015 amendments deleted the "reasonably calculated" language from Rule 26(b)(1).  *See* Order Setting Discovery Procedure, ECF No. 174 ("The Court directs all parties and their counsel to read Chief Justice John Roberts' 2015 Year-End Report on the Federal Judiciary, in which he discusses the importance of the December 1, 2015 Amendments to the Federal Rules of Civil Procedure."); *see also In re Bard IVC Filters Prod. Liab. Litig.*, 317 F.R.D. 562, 564 (D. Ariz. 2016) ("The 2015 amendments thus eliminated the 'reasonably calculated' phrase as a definition for the scope of permissible discovery. Despite this clear change, many courts [and lawyers] continue to use the phrase. Old habits die hard.... The test going forward is whether evidence is 'relevant to any party's claim or defense,' not whether it is 'reasonably calculated to lead to admissible evidence.'") (internal citations omitted).  Please withdraw these objections.

Plaintiffs also object to several Requests as overbroad as to scope.  *See, e.g.*, Pls.' Responses to Request Nos. 2-4, 6-7, 16, 19 and 21, General Objection No. 6, and Pls.' Responses to Okeelanta's Interrogatory Nos. 2-3.  But, Plaintiffs can hardly complain about the time and scope of the discovery, as Plaintiffs' claims for medical monitoring damages places squarely at issue the entire health history of each Plaintiff (Request Nos. 2-4, 6-7; Okeelanta's medical monitoring Interrogatory Nos. 2-3), while Request Nos. 16 and 19 are reasonably limited to the time period from when each Plaintiff purchased their property until present.  Similarly, Request No. 21 is limited to those documents which Plaintiffs allege support their property damage claims.  Please withdraw these objections.

## II.    REQUESTS FOR PRODUCTION

- **Request Nos. 22, 25-31 (Wilcher, Jones, Brooks, Atkins, Armstrong); Nos. 15, 18-24 (Coffie, McLean, Reimbold, Smith); Nos. 9, 12-18 (Legrand)**

   Plaintiffs have failed to identify and produce documents and communications related to simulations, input and output data, modeling, calculations, monitoring or risk assessments presented as allegations in the Third Amended Complaint ("TAC").  Notably, these items are referenced throughout the TAC (*e.g.* ¶¶ 13-14, 153, 157-58, 160, 162, 170, 184, 214, 235 and 239 as well as Figures 31 and 32) as well as Plaintiffs' response to Defendants' Motion to Dismiss the TAC— which also references non-publicly-available data.  *See* Plaintiffs' Opposition to Defendants Motion to Dismiss the TAC, ECF No. 155 at 9 (citing TAC ¶¶ 148-151 and Horsak Decl. (ECF No. 143-1) at ¶¶ 39-42 and stating "input files represent more than 657 trillion data points");

**SHOOK**
HARDY & BACON

*see also* ECF No. 143-1 at ¶¶ 39-42 (discussing AERMOD air dispersion modeling, input and output data).

December 31, 2021
Page 3

Plaintiffs' claim that these Requests are premature or somehow fall outside the scope of expert discovery (without any citation in support) are baseless. Plaintiffs cannot use this information as both a sword and a shield—a sword where Plaintiffs base the allegations in their TAC on air modeling results, while simultaneously attempting to hide behind a shield of "privilege" to prevent an opposing party from effectively challenging the air modeling results presented in their TAC. *Bingham v. Baycare Health Sys.*, 8:14-CV-73-T-23JSS, 2016 WL 5106946, at \*2 (M.D. Fla. Sept. 20, 2016).

Likewise, by affirmatively relying on the work of "experts" to support their TAC and opposing Defendants' Motion to Dismiss, Plaintiffs have waived any right to claim any expert witness privilege or protection that may have otherwise existed at this juncture had Plaintiffs not presented the modeling results as the basis for the allegations in their TAC. *See, e.g.*, *Beaton v. SpeedyPC Software*, 13-CV-08389, 2017 WL 11625792, at \*4–5 (N.D. Ill. June 20, 2017) (granting motion to compel discovery regarding expert opinions where party "has affirmatively relied on the opinions of his expert to support his Complaint" and rejecting as "unfair" allowing "a party to use expert testimony as both a sword and a shield"); *Zeiger v. WellPet LLC*, 17-CV-04056-WHO, 2018 WL 3208160, at \*4-5 (N.D. Cal. June 29, 2018) (ordering plaintiff to disclose within seven days "specific results from additional labs or tests" that are referenced in the operative complaint, and noting that, where "plaintiffs explicitly alleged independent lab testing results to overcome [the defendant's] motion to dismiss, they cannot now claim the expert consulting privilege"); *Id.* at \*4 ("Plaintiffs injected the lab results into the litigation and motion to dismiss, [thereby] waiving a privilege").

This is not a typical environmental class action case where class wide air (or groundwater or some other environmental media) impacts are summarily alleged in a Complaint with the alleged class wide impacts later demonstrated through modeling as part of the testifying expert disclosure and expert discovery phase of the case. Plaintiffs chose to affirmatively rely on and reference modeling work and results in support of the allegations in the TAC. Such a choice neither qualifies for testifying expert disclosure protection nor non-disclosed consulting expert protection. Additionally, and because Plaintiffs have already affirmatively referenced and relied on (but haven't produced) modeling work and results to support their TAC, information responsive to these requests should have already been provided as an initial disclosure

**SHOOK**
HARDY & BACON

pursuant to Rule 26(a)(1)(A)(ii) (requiring the initial disclosure of "all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses").

December 31, 2021
Page 4

Further, Plaintiffs' boilerplate objections and responses significantly prejudice Defendants by attempting to hold back the specific modeling data and results until the less than 1 month period between Plaintiffs' (March 28, 2022) and Defendants' (April 22, 2022) class certification expert disclosures. As prior experience indicates, it can take upwards of 6+ months to dissect modeling, which Plaintiffs in this case cite favorably as "a huge, complex effort" that "could well be the largest, most complex air dispersion modeling case currently active in the United States, and perhaps even one of the most extensive efforts during the history of the United States." *See* Horsak Decl., ECF No. 153-1 at ¶ 39. If allowed, Plaintiffs' position on these topics would result in significant, undue prejudice to Defendants particularly under the current scheduling orders (ECF Nos. 172 and 176).

Please withdraw these objections and provide supplemental responses.

- **Request No. 46 (Wilcher, Jones, Brooks, Atkins, Armstrong)**;
  **Request No. 39 (Coffie, McLean, Reimbold, Smith)**

  Plaintiffs have failed to identify and produce documents evidencing Plaintiffs' allegations that pesticides, fungicides, and herbicides migrated as a result of Defendants' actions, as alleged in ¶ 133 of the TAC. As discussed above, Plaintiffs have waived their right to claim an expert witness privilege at this juncture. Accordingly, Defendants request that Plaintiffs withdraw their objection and provide supplemental responses.

- **Request Nos. 11-13, 17-18, 21 (Wilcher, Jones, Brooks, Atkins, Armstrong); Request Nos. 4-6, 10-11, 14 (Coffie, McLean, Reimbold, Smith)**

  Plaintiffs have failed to identify and produce documents and communications related to the financing, valuation, appraisal, assessment, purchase, rental or sale of specific properties referred to within the TAC. Plaintiffs' unsupported position that documents and communications responsive to these Requests are irrelevant to any of the issues in this case is baseless. Such information is clearly within the scope of permissible discovery under Rule 26(b)(1) and is relevant to a host of issues including whether the complained-of conduct is having any impact on property within the putative class area. These property-

SHOOK
HARDY & BACON

related requests are relevant even in the absence of a diminution in value claim.

December 31, 2021
Page 5

Moreover, Plaintiffs' unsupported objections go, at most, to the admissibility of such information at trial, which is not a valid basis for avoiding discovery, as "[i]nformation within [the] scope of discovery need not be admissible in evidence to be discoverable" under Rule 26. Please withdraw these objections and provide supplemental responses.

- **Request Nos. 2-8 (Wilcher, Jones, Brooks, Atkins, Armstrong, Legrand)**

  Plaintiffs have failed to identify and produce documents and communications related to the medical or psychological examination, evaluation, testing, diagnosis, care, treatment, therapy or counselling—including insurance information—for each Plaintiff with a medical monitoring claim.  These claims place squarely at issue Plaintiffs' various health histories. *See, e.g.*, *Fiorentino v. Cabot Oil & Gas Corp.*, 3:09-CV-2284, 2011 WL 5239068, at *8 (M.D. Pa. Nov. 1, 2011) ("[T]he medical records of those Plaintiffs who asserted claims for medical monitoring are relevant to Plaintiffs' claims as well as Defendants' defense, and are therefore discoverable pursuant to Rule 26(b)."). Please withdraw your objections and provide supplemental responses.

**III.    INTERROGATORIES**

The following are examples of Interrogatory Responses that are incomplete, and must be supplemented:

- **Clover Coffie and Shante Legrand Interrogatory Responses:** In response to U.S. Sugar's and Okeelanta's Interrogatories, Plaintiffs Coffie and Legrand provide no meaningful response and repeatedly state that "Plaintiff intends to supplement [his/her] response."  This is particularly concerning given the extension of time granted to Plaintiffs in order to provide substantive responses.  In accordance with Rules 33 and 26, Defendants request that Plaintiffs Coffie and Legrand provide meaningful and timely responses to Defendants' Interrogatories.

- **Okeelanta Interrogatory Nos. 11-12 (Jones, Atkins, Brooks, Armstrong) and Nos. 3-4 (Coffee, McLean, Reimbold, Smith):** Okeelanta's Interrogatory Nos. 11 [and 3, *see supra*] request that Plaintiffs state whether Plaintiff or someone acting on any Plaintiff's behalf performed air monitoring or testing in or around the Glades Agricultural Area (including on the property which the Plaintiff refers

**SHOOK**
HARDY & BACON

in the TAC). If such monitoring or testing took place, Plaintiffs were asked to provide additional information related to said monitoring or testing. Similarly, Okeelanta's Interrogatory Nos. 12 [and 4, *see supra*] request that Plaintiffs state whether any sampling or monitoring was performed at any property Plaintiff owns. If so, Plaintiffs were asked to provide additional information related to said sampling or monitoring.

December 31, 2021
Page 6

In response to Okeelanta's Interrogatory Nos. 11 [and 3, *see supra*] and 12 [and 4], Plaintiffs state, subject to their objections, that they "will disclose any sampling and testing done at [Plaintiffs'] home, pursuant to a protocol for exchanging such information to be agreed upon by the parties." Plaintiffs' responses, however, fail to identify where, when, and what sampling has taken place. In accordance with Rule 33, Defendants request that Plaintiffs supplement their responses and respond separately and fully in writing to Okeelanta's Interrogatory Nos. 11 and 12.

Additionally, there is no need for a protocol to respond to an interrogatory asking about the facts of underlying sampling and/or data, and the parties have already entered into a protocol for the exchange of ESI.

- **Linda Wilcher's Interrogatory Responses**: In response to U.S. Sugar's and Okeelanta's Interrogatories, Plaintiffs' counsel notes that counsel recently learned that Plaintiff Wilcher is deceased. Plaintiffs' counsel states that Plaintiff Wilcher "joins in these Objections and Responses at this time to ensure no waiver of rights." If Plaintiff Wilcher is deceased, Defendants request that Plaintiffs' counsel substitute an authorized representative of her estate or dismiss her claims.

- **Okeelanta Interrogatory No. 1 (Jones, Armstrong)**: Plaintiffs' responses are incomplete. Please provide the names and addresses of various companies identified in Plaintiffs' responses, as well as Plaintiffs' employment title(s) and describe the nature of Plaintiffs' employments at each location.

- **Okeelanta Interrogatory Nos. 2-3 (Jones, Atkins, Brooks, Armstrong)**: Plaintiffs' responses are incomplete. Plaintiffs' medical monitoring claims place at issue Plaintiffs' health histories. Please provide a supplemental response consistent with the original request.

- **Okeelanta Interrogatory No. 2 (McLean, Smith, Reimbold); Okeelanta Interrogatory No. 5 (Armstrong)**: Please identify

SHOOK
HARDY & BACON

each of the "neighbors" referenced in Plaintiffs' responses by name, as
well as their relationship to each Plaintiff.  Please also supplement this
response to identify the relationship, if any, between each Plaintiff and
Steve Laporte.

December 31, 2021
Page 7

- **Okeelanta Interrogatory No. 4 (Atkins, Brooks, Armstrong):**
Plaintiffs state, "Yes.  I know people in the affected area who have or
had lung cancer."  Please identify these individuals consistent with the
term "identify" included in the "Definitions" of Okeelanta Corp.'s First
Interrogatories to Plaintiffs, and identify the full name, present
address and telephone number, or last known contact information for
each person responsive to this request.  Plaintiffs' objections that this
Interrogatory would require that Plaintiffs somehow violate HIPPA is
improper, as Plaintiffs are not covered entities under HIPPA.

- **Okeelanta Interrogatory No. 5 (Atkins):** Please provide the full
name, present address and telephone number or last known contact
information for each person identified in response to this request.  For
example, Plaintiff identifies a neighbor named "Anne" but has failed to
provide any additional information as required by the defined term
"identify" included in the "Definitions" of Okeelanta Corp.'s First
Interrogatories to Plaintiff.

- **Okeelanta Interrogatory No. 6 (Atkins):** Please 'identify' the
doctor who treated Plaintiff for lung infection by including his or her
full name, present address and telephone number, or last known
contact information.

- **Okeelanta Interrogatory No. 6 (Reimbold):** Please provide the
date of the meeting Plaintiff claims to have attended, as well as its
location, and identify each person present that Plaintiff associates
with "Big Sugar."

- **Okeelanta Interrogatory No. 7 (Jones, Atkins, Brooks,
Armstrong):** Plaintiffs' responses do not identify any instances in
which Plaintiffs underwent specialized testing or examination for lung
cancer.  Plaintiffs' attempt to characterize the "purpose and text of
Paragraph 240 of the TAC" is improper.  If Plaintiffs have not
undergone any such testing or examination, please so state in
amended responses.

- **Okeelanta Interrogatory No. 8 (McLean, Smith):** Plaintiffs'
responses are limited to "any government employee, official or

SHOOK
HARDY & BACON

agency." Please confirm whether Plaintiffs have every made any
responsive statement to *any* individual, entity or third party.

December 31, 2021
Page 8

- **Okeelanta Interrogatory No. 8 (Reimbold):** Please identify each
  neighbor identified in Plaintiff's response by including their full name,
  present address and telephone number, or last known contact
  information, consistent with the defined-term term "identify"
  included in the "Definitions" of Okeelanta Corp.'s First Interrogatories
  to Plaintiff.

- **Okeelanta Interrogatory No. 9 (Jones, Atkins, Brooks,
  Armstrong):** Plaintiffs' medical monitoring claims place at issue the
  health history of immediate family members who have had or
  currently have lung cancer. This Interrogatory seeks relevant
  information such as whether any Plaintiff's family shares a genetic
  predisposition for cancer.

- Please provide written verification of Plaintiffs' Interrogatory
  responses in accordance with Rule 33(b)(5).

Please let us know your availability to meet and confer regarding these issues
sometime during the week of January 4, 2022.

Best regards,

Mark D. Anstoetter (cms)

cc:   All counsel of record

4859-8795-3927 v1



Ted Wojcik
Associate
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 SECOND AVENUE, SUITE 2000
SEATTLE, WA 98101
www.hbsslaw.com
**tedw@hbsslaw.com**

January 6, 2021

*Via Email*

Mark D. Anstoetter
2555 Grand Blvd.
Kansas City, Missouri 64108

     Re:    *Coffie et al. v. United States Sugar Corp. et al.*

Dear Mark,

Plaintiffs write in response your letter regarding Plaintiffs' responses to Defendants' First Requests for Production and Defendant Okeelanta Corporation's First Interrogatories and Defendant U.S. Sugar Corporation's First Interrogatories.

## I.    Specific requests for production

### a.    Request Nos. 22, 25-31 (Wilcher, Jones, Brooks, Atkins, Armstrong); Nos. 15, 18-24 (Coffie, McLean, Reimbold, Smith); Nos. 9, 12-18 (Legrand)

Defendants assert that "Plaintiffs have failed to identify and produce documents and communications related to simulations, input and output data, modeling, calculations, monitoring or risk assessments presented as allegations in the Third Amended Complaint." *See* Dec. 31, 2021 Ltr. at 2-4. This misunderstands Plaintiffs' responses to Request Nos. 22 and 25-31. Plaintiffs intend to produce responsive, non-privileged documents in response to Requests 22 and 25-31, to the extent they were affirmatively relied upon and/or cited in the Third Amended Complaint. For example, Plaintiffs intend to produce responsive, non-privileged expert materials in response to Request for Production Nos. 22 and 25-31, including AERMOD and INPUFF data (RFP Nos. 25, 26) and documents relied upon for the inputs to those models (RFP No. 29).

However, to the extent they seek (1) documents related to expert material or work product not disclosed or cited in the TAC, or (2) privileged work product and communications, Defendants' requests are improper. Furthermore, to the extent these requests seek additional documents related to expert work performed subsequent to the TAC's filing (e.g., additional environmental reports/studies, AERMOD, or INPUFF modeling), these requests are premature: this material

January 6, 2021
Page 2

will be the subject of Plaintiffs' expert reports and/or class certification motion, and will be disclosed consistent with the Federal Rules of Civil Procedure.[1]

Defendants' claim that Plaintiffs have waived "any right to claim *any* expert witness privilege or protection that would have existed at this juncture" (including privileged communications and material subject to work product privilege) is incorrect, and significantly overstates the scope of waiver where a party relies on expert materials in a pleading or motion.  *See* Dec. 31, 2021 Ltr. at 3 (emphasis added).  As the court explained in *Worley v. Avanquest N. Am. Inc.*, No. C 12-04391 WHO (LB), 2013 WL 6576732, at *5 (N.D. Cal. Dec. 13, 2013), a case cited with approval in both the authorities identified by Defendants[2]:

> [C]ourts . . . have allowed a party to discover[] only information related to the expert's statements, findings, or opinions that were put at issue; discovery is not allowed into information or material not put in issue or regarding the contents of any privileged communications. *See Positive Tech.*, 2013 WL 1402337, at *5 (allowing Defendants to depose Plaintiff's expert about "the subject matter of his declaration," but not allowing Defendants to depose him "regarding the contents of any privileged communications with counsel for Plaintiff"); *Sims*, 2006 WL 3826717, at *3 ("The opposing parties may depose each others' experts to question them about the statements in their declarations."); *Hollinger v. Int'l Inc. v. Hollinger Inc.*, 230 F.R.D. at 521–22 (declining to allow discovery into the undisclosed portions of a non-testifying expert's report and to all other documents involving the same subject matter, even where portions of expert's findings had already been disclosed); *Ludwig v. Pilkington N.A., Inc.*, No. 03 C 1086, 2003 WL 22242224, at *3 (N.D. Ill. Sept. 29, 2003) (finding that even if doctrine of waiver applied to Rule 26(b)(4)(B), any waiver is limited to material disclosed and does not apply to undisclosed material).

*Id.* at *5; *see also* Hollinger, 230 F.R.D. at 521–22 (N.D. Ill. 2005) ("The next issue is whether the forfeiture extends to undisclosed portions of the Cook Report and/or all other documents involving the same subject matter as well. Defendants argue that Hollinger has waived any privilege, including the work product privilege, with regard to the Cook Report. Hollinger is not refusing to produce the Cook Report under Rule 26(b)(3).  Defendants cite no case law supporting a waiver argument with respect to Rule 26(b)(4). The rule itself does not address waiver, and the courts have generally held that partial disclosure of a non-testifying expert's

---

[1] Notably, with respect to ongoing expert work, Defendants make similar objections in their responses to Plaintiffs' requests for production.  *See, e.g.*, Def. FCC's Objections and Responses to Pls.' RFP Nos. 10, 28-33; Def. U.S. Sugar's Objections and Responses to Pls.' RFP Nos. 8, 11, 12, 28-33.

[2] *See* Dec. 31, 2021 Ltr. at 3 (citing *Beaton v. SpeedyPC Software*, No. 13-CV-08389, 2017 WL 11625792, at *5 (N.D. Ill. June 20, 2017) and *Zeiger v. WellPet LLC*, No. 17-CV-04056-WHO, 2018 WL 3208160, at *4 (N.D. Cal. June 29, 2018)).

January 6, 2021
Page 3

work product does not waive a party's right to withhold production of the expert's undisclosed work product.").

**b.  Request No. 46 (Wilcher, Jones, Brooks, Atkins, Armstrong); Request No. 39 (Coffie, McLean, Reimbold, Smith)**

Defendants' assertion that "Plaintiffs have waived their right to claim an expert witness privilege at this juncture" is improper with respect to this request.  *See* Dec. 31, 2021 Ltr. at 3.  As noted above, Defendants are entitled to "discover[] only information related to the expert's statements, findings, or opinions that were put at issue" in the TAC.  *Worley*, 2013 WL 6576732, at *5.  Plaintiffs' allegation in paragraph 133 of the TAC that Defendants' "pesticides also migrate as part of the 'black snow'" is not based upon, and thus does not put at issue, any expert statements, findings, or opinions set forth in the TAC; as Plaintiffs expressly note at footnote 74 of the TAC, "Plaintiffs do not have access to information regarding the timing of these products' application or the quantities in which they were applied, and intend to obtain this information through discovery. Thus, emissions resulting from the use of fertilizers, pesticides, and herbicides may be evaluated at a later date."

To the extent Plaintiffs' experts evaluate emissions resulting from the use of fertilizers, pesticides, and herbicides, this testimony will be disclosed in accordance with the Federal Rules of Civil Procedure and orders of the court.  Notwithstanding this, in response to this request, Plaintiffs are willing to produce responsive documents supporting this allegation that are not privileged and do not constitute attorney work product.

**c.  Request Nos. 11-13, 17-18, 21 (Wilcher, Jones, Brooks, Atkins, Armstrong); Request Nos. 4-6, 10-11, 14 (Coffie, McLean, Reimbold, Smith)**

These requests seek an extraordinarily wide range of documents related not only to the financing and valuation, rental, and sale or attempted sale of plaintiffs' properties, but also Plaintiffs' personal finances generally, including such diverse categories of documents as: "mortgage statements" (Request 11) (Wilcher), "home equity lines of credit" (Request 11) (Wilcher), "[d]ocuments . . . relating to any efforts to post . . . property as collateral' " (Request 11) (Wilcher), "listing agreements" (Request 13) (Wilcher), "brokerage contracts" (Request 13) (Wilcher), "[a]ll communication with banks" and "lenders" (Request 17) (Wilcher), and all offers to buy or sell plaintiffs' homes (including *all* "[c]ommunications with prospective purchasers.") (Request 18) (Wilcher). As noted in their responses and objections, however, Plaintiffs do not seek damages for the diminution in value of their homes; consequently, these document requests are irrelevant to whether Defendants' sugarcane burning has (a) harmed class members' health or (b) physically damaged their properties.  These requests are also highly intrusive and, as written, extend well beyond the universe of documents relevant even to the diminution in value of Plaintiffs' properties.

3

January 6, 2021
Page 4

Defendants argue in their letter that these requests are proper "even in the absence of a diminution in value claim" because they are "relevant to a host of issues including whether the complained-of conduct is having any impact on property within the putative class area." *See* Dec. 31, 2021 Ltr. at 4-5. But Defendants do not explain with any specificity how any of the categories of documents sought by these requests – e.g., mortgage statements, communications with banks and lenders – are in fact, or plausibly could be, relevant to the question of whether Defendants' conduct is impacting Plaintiffs' property, nor do they (1) clarify the other "host" of issues to which they are relevant; (2) explain why these voluminous requests, even if relevant, are proportional to the needs of the case; or (3) otherwise seek to clarify or refine these requests.

Furthermore, and consistent with this, Plaintiffs have also made clear that they are willing to meet and confer with Defendants to further understand Request for Production No. 21, which expressly requests "[a]ll Documents supporting [Plaintiffs'] claims for damages" of their property. Specifically, Plaintiffs are willing to produce documents in response to subparts (d), (e), (f), (g), and (h), subject to appropriate limitations on the time period of this request.

### d.   Request Nos. 2-8 (Wilcher, Jones, Brooks, Atkins, Armstrong, Legrand)

Defendants assert that Plaintiffs have "failed to identify and produce documents and communications related to the medical or psychological examination, evaluation, testing, diagnosis, care, treatment, therapy or counselling – including health insurance information – for each Plaintiff with a medical monitoring claim." *See* Dec. 31, 2021 Ltr. at 4-5. But as made clear in their responses and objections to these requests, Plaintiffs are willing to meet and confer with Defendants to reach agreement regarding the scope and time period of Requests 2, 3, 4, 6, 7, and 8.[3]

Nor do Defendants engage with Plaintiffs' more specific objections regarding these requests, or otherwise seek to clarify or refine their focus. Most notably, Defendants' requests are limited in neither time period nor scope, and would extend, as written, to encompass (1) records dating to Plaintiffs' birth; and (2) a wide range of facially irrelevant medical records, including records of births and deliveries, childhood illness, orthopedic conditions, and a host of other conditions irrelevant to toxic exposure. Defendants' request for psychological records (and related documents) in addition to medical records is also facially irrelevant to any issue in this case, and Plaintiffs will not produce any documents or records generated or obtained in connection with any psychological examination, evaluation, testing, diagnosis, care, treatment, therapy, or counseling. Consistent with this, even where compelling the production of medical records,

---

[3] Plaintiffs stand on their objection to Request for Production No. 5, which seeks "all Documents or records referring to or reflecting any disease(s)/health condition(s) of Your immediate family members." While Plaintiffs are willing to produce certain medical records of their own (as explained below), they are not obligated to reveal the health histories of third parties, including family members; producing this information would be unduly burdensome and disproportionate to the needs of the case.

January 6, 2021
Page 5

courts recognize similar concerns with proportionality and relevance.  *See, e.g.*, *Sullivan v. Saint-Gobain Performance Plastics Corp.*, 431 F. Supp. 3d 448, 451 (D. Vt. 2019) (production limited to prior 20 years of primary care records, with provision for additional requests where good cause exists).

In response to Request Nos. 2-8, Plaintiffs are willing to produce the following:

- In response to **Request No. 2:** Primary care records for the previous twenty years, provided that Defendants may make additional requests for medical records if these records provide a basis for the belief that other records might contain information about potential exposure to toxins or treatment for lung cancer.  Plaintiffs will provide authorizations for records and the names of relevant providers.

- In response to **Request No. 3:** To the extent they exist, documents sufficient to identify every prescription medication, drug, or pharmaceutical taken for the previous twenty years, excluding medications taken for any psychological condition.

- In response to **Request No. 4:** Primary care records for the previous twenty years, provided that Defendants may make additional requests for medical records if these records provide a basis for the belief that other records might contain information about potential exposure to toxins or treatment for lung cancer.

- In response to **Request No. 6:** To the extent they exist, documents sufficient to identify all insurance companies that have covered Plaintiffs under a policy of health insurance, for the previous twenty years.

- In response to **Request No. 7:**  Primary care records for the previous twenty years, provided that Defendants may make additional requests for medical records if these records provide a basis for the belief that other records might contain information about potential exposure to toxins or treatment for lung cancer.

- In response to **Request No. 8:** documents sufficient to identify all legal claims and lawsuits ever made for any physical injury or medical condition.

## II.      Alleged general deficiencies

### a.   Objections to scope (Request Nos. 2-4, 6-7, 16, 19, 21)[4]

---

[4] Defendants protest Plaintiffs' incorporation of their General Objections in their individual RFP responses.  *See* Dec. 31, 2020 Ltr. at 1.  Plaintiffs note that, in the instances where these objections are invoked, Plaintiffs do not intend to withhold any documents "subject to" their General Objections unless specifically identified.  Furthermore, several Defendants include similar recitations in their responses to Plaintiffs' RFPs.  *See, e.g.*, General Objection 1 to FCC's

January 6, 2021
Page 6

Defendants demand that Plaintiffs withdraw their objections to Request Nos. 2-4, 6-7, 16, 19, and 21 as overbroad.  *See* Dec. 31, 2021 Ltr. at 2.  With respect to RFP Nos. 2-4, 6-7, and 21, Plaintiffs respond to these arguments above.  With respect to RFP Nos. 16 and 19:

> **RFP No. 16**: Defendants seek documents from the date of property purchase through the present "sufficient to identify all individuals who perform or have performed routine maintenance on" Plaintiffs' properties, including the type, frequency, reason, and time period of this maintenance.  In response, Plaintiffs have proposed producing these documents, to the extent they exist, dating back to 2009, or ten years prior to the filing of this suit and several years beyond the applicable statute of limitations.  Defendants do not explain why this limitation is insufficient or why production of documents dating back further in time would be relevant or reasonably proportional.  At issue in this case is whether Plaintiffs' properties were damaged by Defendants' conduct during the statute of limitations period.

> **RFP No. 19:** Defendants seek documents from the date of property purchase through the present "sufficient to identify all individuals who have come to" Plaintiffs' properties "as guests."  As noted in their responses and objections, while Plaintiffs are willing to meet and confer with Defendants to narrow this request, it is irrelevant, overly broad, and unduly burdensome as written.  Not only is this request unlimited in time, but it is also unclear what categories of documents are sought that would identify "guests" (a term that is not defined) to Plaintiffs' properties or the purpose for which the identities of these guests is sought.

## III.    Interrogatories

### a.    Clover Coffie and Shante Legrand Interrogatory Responses

Plaintiffs intend to supplement Mr. Coffie's and Ms. Legrand's interrogatory responses as soon as they are able to do so.

### b.    Okeelanta Interrogatory Nos. 11-12 (Jones, Atkins, Brooks, Armstrong) and Nos. 3-4 (Coffie, McLean, Reimbold, Smith)

To date, none of these Plaintiffs have performed air monitoring or testing on their own behalf. Furthermore, to the extent Plaintiffs' experts conduct this testing or sampling on Plaintiffs' behalf or in the class area generally, Defendants' request is premature.  This information will be disclosed in accordance with the Federal Rules of Civil Procedure and orders of the court.

---

Responses and Objections to Plaintiffs' First RFPs ("Defendant's specific objections to each request are in addition to the objections set forth in this section.  The objections form a part of the response to each request and are set forth here to avoid the duplication of restating them for each response.  The absence of a reference to an objection under this section should not be construed as a waiver of the objection as applied to the specific request.").

January 6, 2021
Page 7

### c.   Okeelanta Interrogatory No. 1 (Jones, Armstrong)

Plaintiffs will supplement their responses with the information requested by Defendants.

### d.   Okeelanta Interrogatory Nos. 2-3 (Jones, Atkins, Brooks, Armstrong)

Defendants' Interrogatories 2-3 request that Plaintiffs identify, without time limitation, *all* "medical conditions, injuries, illnesses, or disabilities" (including the diagnosing professional and date of diagnosis) (Interrogatory No. 2) and *all* healthcare providers *ever* seen, for any purpose (including dates and purpose of visit).  These requests, as currently drafted, are facially overbroad, largely irrelevant, and unduly burdensome; even if Plaintiffs' health histories are relevant to their medical monitoring claim, this request would, as Plaintiffs note in their objections and responses, stretch back for decades and would potentially encompass childhood illnesses, orthopedic injuries, and a host of other conditions that are unlikely to reflect any information regarding toxic exposure, as well as psychological conditions.

As noted above, Plaintiffs propose the production of primary care records for the previous twenty years, provided that Defendants may make additional requests for medical records if these records provide a basis for the belief that other records might contain information about potential exposure to toxins or treatment for lung cancer.

### e.   Okeelanta Interrogatory No. 2 (McLean, Smith, Reimbold); Okeelanta Interrogatory No. 5 (Armstrong)

Plaintiffs will supplement their responses with the information requested by Defendants, to the extent Plaintiffs know or possess this information.

### f.   Okeelanta Interrogatory No. 4 (Atkins, Brooks, Armstrong)

While Plaintiffs are willing to produce certain medical records of their own, they are not obligated to reveal the health histories of third parties; producing this information would be unduly burdensome and disproportionate to the needs of the case.

### g.   Okeelanta Interrogatory No. 5 (Atkins)

Plaintiffs will supplement their responses with the information requested by Defendants, to the extent Plaintiffs know or possess this information.

### h.   Okeelanta Interrogatory No. 6 (Atkins)

January 6, 2021
Page 8

Plaintiffs will supplement their responses with the information requested by Defendants, to the extent Plaintiffs know or possess this information.

### i.   Okeelanta Interrogatory No. 6 (Reimbold)

Plaintiffs will supplement their responses with the information requested by Defendants, to the extent Plaintiffs know or possess this information.

### j.   Okeelanta Interrogatory No. 7 (Jones, Atkins, Brooks, Armstrong)

Plaintiffs previously objected to this request because it asked whether Plaintiffs "underwent the specialized testing and examinations referenced in ¶ 240 of the TAC."  However paragraph 240 of the TAC references only the medical monitoring regime Plaintiffs seek as a remedy for their medical monitoring claim.

Plaintiffs construe Defendants' request to ask that they identify all instances in which they have received: (1) annual screening for lung cancer with low-dose computed tomography; (2) annual chemistry, blood county, and urinalysis; and (3) annual history and physical examination by a board-certified internist.  Plaintiffs will supplement their responses with the information requested by Defendants to the extent such information is known or exists.

### k.   Okeelanta Interrogatory No. 8 (McLean, Smith, Reimbold)

As noted in their objections and responses, Defendants' request is overbroad, unduly burdensome, and not proportionate to the needs of the case to the extent that it demands, for every "statement, report, or complaint" to *any* "individual, entity, or third party", that Plaintiffs identify "(a) the name of the individual, entity, or third party to which You made the statement, report, or complaint; (b) the date(s) You made Your statement, report, or complaint; and a description of the manner (e.g., written report, hotline, etc.); and (c) the substance of the statement, report, or complaint (if written or Documented, please produce a copy)."  Plaintiffs object to this interrogatory, which as written would include, for example, any passing remark ever made to a plaintiff's spouse or child about any issues related to burning, which is overbroad and unduly burdensome on its face.  Plaintiffs have therefore limited their responses only to statements made to government employees, officials, or agencies.

### l.   Okeelanta Interrogatory No. 9 (Jones, Atkins, Brooks, Armstrong)

While Plaintiffs are willing to produce certain medical records of their own, they are not obligated to reveal the health histories of third parties, including family members; producing this information would be unduly burdensome and disproportionate to the needs of the case.

January 6, 2021
Page 9

Finally, Plaintiffs were not provided verification forms or affidavits along with Defendants' interrogatories.  Plaintiffs intend to produce verifications.

Sincerely,

/s/ Ted Wojcik

Ted Wojcik
Hagens Berman Sobol Shapiro

/s/ Matthew Moore

Matthew Moore
Berman Law Group

## McLoone, Jennifer (SHB)

| | |
|---|---|
| **From:** | McLoone, Jennifer (SHB) |
| **Sent:** | Monday, January 24, 2022 12:12 PM |
| **To:** | 'mmoore@thebermanlawgroup.com'; 'Ted Wojcik' |
| **Cc:** | Anstoetter, Mark (SHB); 'Mark Ter Molen'; 'Sostrin, Matthew' |
| **Subject:** | RE: Coffie - summary of meet and confer discussion re: Plaintiffs discovery responses |

Ok, understood on those two clarifications. Thanks.

---

**From:** mmoore@thebermanlawgroup.com <mmoore@thebermanlawgroup.com>
**Sent:** Friday, January 21, 2022 4:00 PM
**To:** McLoone, Jennifer (SHB) <JMCLOONE@shb.com>; 'Ted Wojcik' <TedW@hbsslaw.com>
**Cc:** Anstoetter, Mark (SHB) <MANSTOETTER@shb.com>; 'Mark Ter Molen' <mtermolen@mayerbrown.com>; 'Sostrin, Matthew' <MSostrin@mayerbrown.com>
**Subject:** RE: Coffie - summary of meet and confer discussion re: Plaintiffs discovery responses

**EXTERNAL**

Please see comments below.  Thanks and have a good weekend.

**Matthew T. Moore, Esq.**
**Complex Litigation Counsel**
*Admitted in Florida & California*
Direct: (818) 306-2300
Office: (561) 826-5200 ext. 261
mmoore@thebermanlawgroup.com
www.bermanlawgroup.com

---

**From:** McLoone, Jennifer (SHB) <JMCLOONE@shb.com>
**Sent:** Friday, January 21, 2022 11:52 AM
**To:** 'Ted Wojcik' <TedW@hbsslaw.com>; mmoore@thebermanlawgroup.com
**Cc:** Anstoetter, Mark (SHB) <MANSTOETTER@shb.com>; 'Mark Ter Molen' <mtermolen@mayerbrown.com>; 'Sostrin, Matthew' <MSostrin@mayerbrown.com>
**Subject:** Coffie - summary of meet and confer discussion re: Plaintiffs discovery responses

Matt and Ted, thanks for taking the time to speak to us Monday and yesterday.  We believe the following accurately summarizes and outlines our discussion and the positions of Plaintiffs and Defendants with regard to Plaintiffs' discovery responses.

1) <u>Modeling</u> –  In connection with Request Nos. 22, 25-31 (Wilcher, Jones, Brooks, Atkins, Armstrong); Nos. 15, 18-24 (Coffie, McLean, Reimbold, Smith); Nos. 9, 12-18 (Legrand), you agreed to produce the information identified in those requests that you or your experts/consultants possess or control (including all modeling inputs, outputs and all modeling iterations) in connection with the modeling work done through the date of the Third Amended Complaint.

2) <u>Monitoring/sampling/testing</u> (Okeelanta Interrogatory Number 11-12, Jones, Atkins, Brooks, Armstrong; Okeelanta Interrogatory Numbers 2-3 Coffie, McLean, Reimbold, Smith, Legrand)  – you indicated that neither

you, nor your experts, nor your clients have engaged in any monitoring, sampling or testing within the class area, nor are you, your clients or experts in possession of any monitoring, sampling or testing data compiled by a third party (including Purple Air sensor data) in the class area.  You mentioned that you reserve the right to collect such data at some point in the future.  You also confirmed that the named class representatives do not have Purple Air sensors deployed in/on their homes/properties.

We have not confirmed that the named class reps do not have Purple Air sensors deployed, or did or did not in the past – they do not have any through our experts at this time, and we do not believe they do/had through a third party, but do need to confirm.

3)   In connection with Request No. 46 (Wilcher, Jones, Brooks, Atkins, Armstrong) and Request No. 39 (Coffie, McLean, Reimbold, Smith), you confirmed that your allegations regarding the migration of pesticides, herbicides and fungicides do not rely on any expert work conducted.

4)   Property damage – On Monday, we engaged in a discussion regarding the nature of plaintiff's property damage claim to see if we could reach consensus as to what categories of information are relevant and discoverable.  Your discovery responses and written letter indicate that you are not pursuing diminution of property value.  You confirmed that you are not claiming loss of use and enjoyment of property on a class basis.  You described your class wide measure of property damage as "depositions of what comes off the fields – both within and outside of the home".  You also mentioned remediation.  After further discussion, you understood why the information we are seeking may be discoverable even in the absence of a claim for diminution of value or loss of use and enjoyment.

After further discussion yesterday, Plaintiffs agreed to produce responsive information to Nos. 11-13, 17-18, 21 (Wilcher, Jones, Brooks, Atkins, Armstrong); Request Nos. 4-6, 10-11, 14 (Coffie, McLean, Reimbold, Smith) except you asked for a 10 year limitation for these requests and that the reference to communications with banks and lenders in request 17 be limited to "communications with banks and lenders related to the value of property or appraisals."  In response, Defendants noted that given the description of property damage claims that you described as generally relating to remediation of personal and/or real property, it is Defendants' position that they should not be subjected to a 10 year time period as property activities and conditions (e.g. purchases, construction, attempts to sale) could have occurred more than 10 years ago and be relevant to Plaintiffs' real and personal property damage claims.  And that communications should not be limited to lenders related to value of property or appraisals as communications with real estate brokers, agents, appraisers, inspectors, etc. which are relevant to Plaintiffs' property damage claims.  Defendants further noted that if there is a particular burden associated with these requests then Plaintiffs should describe it.  Last evening, you withdrew the requested temporal limitation.

5)   Health-related information of named plaintiffs – you have agreed to supplement Okeelanta interrogatories 2 and 3 (medical conditions and health care providers) (Jones, Atkins, Brooks, Armstrong) to provide responsive information for a period of 20 years and for non-mental health related conditions.  You will likewise provide executed authorizations to us for the collection of medical records from the providers identified (RFP Nos. 2 and 4) , for which you do not object.  If you object to a particular provider, we will take that issue up individually.  The parties are at an impasse as to whether mental health related medical records are relevant.

6)   Identification of individuals within class area known by plaintiffs to have or have had lung cancer - You have agreed to supplement your clients answers to clarify whether each plaintiff has identifiable information about the individuals they claim to know (or know of) in the class area who have been diagnosed with lung cancer. However, you intend to maintain an objection to the disclosure of the identities of non-parties to the extent the identities are known by your client.  To that end, we will seek guidance from the court to compel the production of this information via Okeelanta interrogatory number 4 (Atkins, Brooks, Armstrong).  You were also going to check as to whether the unidentified individuals reside within the putative class area.

7) <u>Plaintiff family medical history</u> - You intend to stand on your objection to identifying family members of plaintiffs who have or have had lung cancer, although you recognize that this same information is likely to be revealed in medical records.  The basis for your objection is confidentiality and we have indicated that we are willing to agree to appropriate safeguards to maintain this information as confidential.  To that end, we will ask the court to compel the production of this information via Okeelanta interrogatory answer number 9 (Jones, Atkins, Brooks, Armstrong), with appropriate safeguards if the court sees fit.

We do not know if a family member's history would appear in a named plaintiff's medical history – (I personally do not remember saying that).  But we are concerned about personal health information and the authority of a plaintiff to discuss the confidential health information of another person, and would like guidance from the court on that.


<u>Timing</u>:  With regard to timing, you are working on the Coffie and LeGrand supplemental responses and the supplemental responses as outlined above.   Given the deadlines we are under pursuant to local rules as well as the overall scheduling order, we intend to file a motion on Monday consistent with local rule 26.1 to raise the open issues/disputes (Paragraphs 4, 5, 6 and 7 above) and to preserve the resolution of any supplemental discovery response and associated production that is inconsistent with the above outline of supplemental responses.

Thanks for engaging in the meet and confer process.   In response to your request to discuss your letter of January 10, 2022 regarding Defendants' respective discovery responses, we will get back to you with a written response and then we can schedule a call to discuss.


Thanks,

Jen


**Jennifer A. McLoone**
*Partner*
Shook, Hardy & Bacon L.L.P.

305.960.6937 | jmcloone@shb.com



CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.